UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| JOEY D. GONZALEZ RAMOS<br>1076 N.W.126 Ct.<br>Miami, FL 33182<br>(305) 720-3114<br>      Plaintiff,<br>vs.<br><br><br>ADR VANTAGE, INC,<br>      Defendant. | Case: 1:18-cv-01690 **JURY**<br>Assigned To : Mehta, Amit P.<br>Assign. Date : 7/18/2018<br>Description: Pro Se Gen. Civil<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff, Joey D. Gonzalez, appearing *pro se*, hereby sues Defendant ADR Vantage, Inc., ("ADR"), for defamation per se, civil conspiracy, invasion of privacy, intentional infliction of emotional distress and injunctive relief and alleges the following:

### JURISDICTION & VENUE

1. This action involves damages in excess of $75,000, exclusive of interest, cost and attorney's fees.

2. Jurisdiction of this Court is proper pursuant to 28 U.S.C § 1332 because ADR is incorporated and headquartered in Washington D.C. and Plaintiff is a citizen of Florida.

3. Venue is proper in this Court in accordance to 28 U.S.C § 1391 because ADR resides in this judicial district. and substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

### PARTIES

4. Plaintiff is a private person and an individual over the age of 18 who is sui juris and resides in Miami-Dade County.



RECEIVED Mail Room JUL 18 2018 Angela D. Caesar, Clerk of Court U.S. District Court, District of Columbia

5. Plaintiff is a veteran of the U.S. Navy and the U.S. Coast Guard. Throughout his military career, Plaintiff earned multiple good conduct medals and other military awards.

6. Plaintiff graduated Magna Cum Laude with a Bachelors in Computer Science. He has a Master degree in Management Information System and has completed approximately 60 credits leading to a Master degree in Telecommunications Engineering.

7. Plaintiff was honorably discharged in 2004. The same year Plaintiff began employment with the U.S. Department of Agriculture, Agricultural Research Service ("USDA ARS"). Plaintiff is a career employee of the USDA.

8. At all material times, Plaintiff occupied the position of the Information Technology Specialist ("IT Specialist"), at the USDA ARS Miami location. Plaintiff is the only IT Specialist at the ARS Miami location.

9. During his tenure at the USDA ARS and until the events here described, Plaintiff had been rated above average in at least 12 of his 14 performance evaluations.

10. At all material times, Plaintiff was the president of the National Federation of Federal Employees ("NFFE") Local 1752.

11. Plaintiff is an attorney licensed to practice law in the State of Florida.

**ADR Vantage, Inc.**

12. ADR is a corporation with its principal place of business in Washington, DC.

13. ADR's president is Dianne Lipsey ("Lipsey").

14. According to its website (http://adrvantage.com/who-we-are/), ADR is a "consulting firm specializing in conflict management, organizational effectiveness and resilience with a 23-year track record of supporting workplaces." ADR's staff and national practitioner network "are among the best practitioners in organizational development, effectiveness and resilience, executive

coaching, conflict management, EEO, employment law, training, and related fields."

15. ADR's customers include the United States Secret Service, the Equal Employment Opportunity Commission and the Federal Bureau of Investigations.

**ADR's Co-Conspirators**

16. Unknown individuals conspired with ADR in a smear campaign to defame Plaintiff in retaliation for Plaintiff's union activities, complaints of discrimination, his representation of employees in union and administrative proceedings, and his cooperation with the USDA's Inspector General in a criminal investigation at the USDA ARS Miami location.

17. In furtherance of the conspiracy, ADR and its co-conspirators made defamatory statements that ADR purported to be captured in its Climate Assessment. To shield its co-conspirator from accountability, ADR classified their statements as "anonymous" in the Climate Assessment.

18. These statements included that Plaintiff has committed fraud, waste and abuse. That Plaintiff is a racist and the source of harassment and hostile working environment occurring at the USDA ARS Miami location.

## GENERAL ALLEGATIONS

19. Between 2011 and the present time, Plaintiff has filed several union grievances and administrative complaints against USDA's employees and supervisors at the ARS USDA Miami Station, on his behalf and on behalf of other USDA's employees. Plaintiff has litigated cases against the USDA before the Merit System Protection Board and the Equal Employment Opportunity Commission on his behalf and behalf of others USDA's employees.

20. In October 2016, Plaintiff initiated and cooperated in an investigation by the USDA's

Inspector General ("IG") conducted by special agent Korey Dang ("Dang"). The investigation pertained to violations of Government regulations, and criminal matters, including bribery and fraud allegedly perpetrated by USDA personnel in Miami, Florida and Washington, DC. These employees were under the supervision of Brennan, former South-East Area Director or Jacobs-Young, USDA ARS Director and "acting" USDA Under Secretary.

21. Approximately on November 2016, Hall and Clark became aware of the IG's investigation.

22. On February 2017, Dang disclosed to Hall Plaintiff's participation in the IG's investigation.

**The Climate Assessment**

23. On December 6, 2016, Brennan announced that ADR would be conducting a "Climate Assessment" at the USDA ARS Miami location. According to Brennan the purpose of the Climate Assessment was to allow the USDA to "gain perspective and consider recommendations to create positive change."

24. The cost of the Climate Assessment was $28,796.00.

25. ADR conducted the Climate Assessment between December 13-15, 2016, at the USDA ARS Miami location in 13601 Old Cutler Rd., Miami, FL 33158.

26. According to ADR, the primary purpose of the assessment was to identify factors that contribute "to employee complaints of harassment and hostile working environment and to help the ARS leadership understand the state of concerns within the USDA ARS Miami location and provide recommendations to address them."

27. Goenaga, Hall, and personnel from the USDA's Office of General Counsel

("OGC"), Civil Rights, Labor and Employment Division, such as Stephanie Masker participated in the Climate Assessment. None of these employees were assigned to the USDA ARS Miami location.

28. Raymond Schnell an employee with MARS, Inc. also participated. MARS, Inc. is a private corporation currently collaborating with the USDA in chocolate research.

29. According to ADR a total of 26 employees out of 32 participated in the assessment.

30. Throughout the Climate Assessment, ADR referred to Plaintiff as the "IT Specialist", "Union President" or "NFFE local president" or "IT Specialist/Union President."

31. On May 18, 2017, following ADR's recommendations, Brennan accompanied by an attorney[1] of the USDA OGC's Civil Rights, Labor and Employment Division, Timothy O. Schranck ("Schranck"), visited the USDA ARS Miami location. At the time, Brennan made disparaging comments about Plaintiff's job performance before the attendees. According to Brennan she based her comments in the findings of the Climate Assessment.

32. Prompted by Brennan's comments, Plaintiff requested a copy of the Climate Assessment through the Freedom of Information Act ("FOIA").

**Defamatory Statements in ADR's Climate Assessment**

33. On July 14, 2017 in response to Plaintiff's FOIA request, he obtained a heavily redacted copy of the Climate Assessment. As a result, many of the defamatory statements made by ADR could not be ascertained. Some included:

> The IT Specialist, he is regarded by the Researchers as deficient, unresponsive, and difficult to deal with..... In his union role he is regarded as combative, intentionally disruptive, and uninterested in working out issues he believes need to be challenged. It is widely believed that he is able to influence and manipulate his boss, the AO, and it is that

---

[1] At the time of his visit Schranck was suspended from practicing law.

> relationship that gives him the autonomy to act as he pleases and protects him from accountability.
>
> Employees provided multiple examples of deficiencies that included slow or no response to even urgent requests and an inability and sometimes unwillingness to support their particular IT needs. One research team waited a year for installation of software upgrades and then it was not installed properly. Another complained that he refused to "deal with" operating systems other than Windows, even though many programs are not Windows-based.
>
> Several employees said that the IT Specialist would represent them without their invitation or agreement, filing grievances on their behalf. Some employees noted that he spends a lot of his time behind closed doors with the union steward. Whether or not his actions on behalf of the union or employees have a legitimate basis, employees overwhelming believe he is abusing his role and not helping resolve real concerns at SHRS.
>
> Mostly they complain that the volume of grievances is a huge burden to their work, feels like harassment and that far from improving the working environment, they are making it worse.
>
> The factors most affecting the working environment at [the USDA ARS Miami location] are ..... a host of issues attributable to the performance and conduct of .... the IT Specialist....

34. On October 20, 2017, in response to a FOIA appeal, Plaintiff received a partially redacted copy of the Climate Assessment. On February 10, 2018, Plaintiff discovered an unredacted copy of the Climate Assessment in a report of investigation for an unrelated matter. These copies contained defamatory statements such as that Plaintiff receives special treatment or is shielded by his supervisor from accountability. It also implied that Plaintiff had intercepted phone and data communications. Other statements include:

> A newly hired employee complained that the IT Specialist was particularly aggressive toward him, used racially charged language and, as a result, the IT Specialist has been Instructed to have no contact with this employee. We heard from another employee that the IT Specialist's aggressiveness toward her when she approached him with an unresolved IT matter made her very uncomfortable.

> [Most employees] believe the AO shares information with the IT Specialist that he should not have access to which later shows up in a complaint or grievance.
>
> Questions of Waste, Fraud, and Abuse, ADR Vantage frequently works with agencies as a confidential neutral and in that capacity, we are obligated to report to the agency what we believe to be evidence of waste, fraud or abuse. We do not know what definition USDA would use for these concepts but the conduct we have heard about from SHRS employees concerning the IT Specialist would raise such a question for us.
>
> Investigate allegations that he has abused his access to data, emails and telephones as well as his conduct toward other employees and consider appropriate disciplinary measures as appropriate.

**Disclosure of Private Matters and Interference with Plaintiff's Right to Redress Complaints of Discriminations by USDA's Personnel**

35. According to ADR's Climate Assessment, "[t]here were also multiple pending EEO complaints and union grievances against various members of the management team, most of which came from a single employee." The term *single employee* refers to Plaintiff.

36. In reference to these EEO complaints and union grievances, the Climate Assessment states;

> Over recent years there have been unusually high numbers of EEO complaints and union grievances from [the USDA ARS Miami location]. ADR Vantage was interested to learn whether and how widely employees share the kind of real or perceived experiences that often lead to EEO complaints. We asked questions about fairness and equality of treatment to help understand what might be behind the specific complaints."
>
> Beyond union grievances, employees describe the IT Specialist and his close association with the AO as interfering with their work. If they challenge him, even without intending to, he will try to use EEO complaints and union grievances, and leverage his relationship with the AO to impose arbitrary rulings that will slow or stop their work
>
> Almost all EEO and union actions over recent years have come from the IT Specialist, acting either on his own behalf or representing other bargaining unit employees.

37. The statements were published by ADR in violation of Plaintiff's privacy interest, and to put at ease the concerns of the USDA's employees named in these complaints and to provide feedback the OGC's Civil Rights, Labor and Employment Division, responsible for litigating Plaintiff's cases. This information was collected to weight in Plaintiff's chances of success in seeking redress in his complaints of discrimination against the USDA and the willingness of witnesses to come cooperate in these investigations.

**Publication or Re-publication of Climate Assessment**

38. According to Lipsey, ADR distributed the Climate Assessment to personnel of the USDA such as Chevon Gibson, Masker and Archie Tucker.

39. Subsequently, a unredacted copy of the Climate Assessment was disclosed by Hall to NFFE on February 17, 2017.

40. The total extent of ADR, its co-conspirators or the USDA's distribution of the Climate Assessment is not yet known to Plaintiff. Plaintiff expect to obtain this information during the course of litigation.

## COUNT I
## DEFAMATION - SLANDER PER SE AND LIBEL PER SE

41. Plaintiff incorporates paragraph 1 through 39 as set forth herein.

42. According to the law in the District of Columbia, defamation claims have four elements; (1) The defendant made a false and defamatory statement concerning plaintiff; (2) the defendant published the statement without privilege to a third party; (3) the defendant's fault amounts at least to negligence; and (4) the statement was actionable as a matter of law irrespective of special harm caused to plaintiff.

43. In the District of Columbia, any written or printed statement who falsely accuses

anyone of committing a crime constitutes defamation per se. See *Raboya v. Shrybman & Associates*, 777 F.Supp.58 (D.D.C. 1991).

44. At all times material, ADR published or republished false verbal and written statements about Plaintiff without privilege to the USDA, NFFE and third persons with negligence or reckless disregard as to the truth or falsity of these statements.

45. ADR identified Plaintiff as the subject of its defamatory statements, such that a reasonable reader, listener or viewer would understand that the defamatory statements refer to Plaintiff.

46. ADR's false statements attributed to Plaintiff conduct and conditions incompatible with the proper exercise of his trade, profession or business. Such as that the Plaintiff is the cause of harassment, hostile working environment at the Miami ARS location. That Plaintiff is the cause of crimes such as waste, fraud and abuse.

47. ADR knew or should have known that Plaintiff's activities as a union president and his activities or obligations as an employee of the USDA are not related to each other. Despite of this, ADR referred to Plaintiff as the "IT Specialist" and the "Union President" interchangeably and in conjunction to give the appearance that they are the same titles or carry the same responsibilities.

48. ADR knew or should have known that the statements it published came from the same persons Plaintiff had filed union's grievances, discriminations complaints or were the subjects of the investigation by the USDA's Inspector General.

49. As a result of ADR's slanderous, libelous and defamatory statements Plaintiff has been damaged because these statements subject Plaintiff to hatred, distrust, ridicule, contempt and disgrace.

50. ADR's false defamatory statements caused Plaintiff's removal from his position as president of Local 1752, his suspension from employment and salary for two weeks, and the placement of Plaintiff in a Performance Improvement Plan ("PIP") leading up to his dismissal from the USDA.

51. ADR's publication or republication had and continue to have a defamatory effect because they adversely affect Plaintiff's reputation and impeach Plaintiff's honesty, integrity, virtues, morals, standing in the community, and will expose Plaintiff to diminished income in the practice of his trade, business or profession and are likely to have significant and long-lasting public and professional consequences.

52. All the above consequences were foreseeable to ADR and its co-conspirators at the time ADR's publications were made.

53. Plaintiff is entitled to punitive damages in this case as the above defamatory statements were made maliciously, willfully, wantonly, and with a reckless disregard for the truth. The primary purpose in making the above statements was to indulge ill will, hostility and to harm the Plaintiff. The statements were designed to destroy the reputation of Plaintiff for ADR's pecuniary gain and furtherance of its conspiracy at the unjust expense of Plaintiff's reputation.

## COUNT II
## CIVIL CONSPIRACY

54. Plaintiff incorporates paragraphs 1 through 39 as set forth herein.

55. The elements of Civil Conspiracy in the District of Columbia are: (1) an agreement between two or more persons; (2) to participate in an unlawful act or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties of the agreement; (2) pursuant to, and in furtherance of the common scheme. *Weishapl v.*

*Sowers*, 771 A.2d 1014, 1023 (D.C. 2001).

56. Defendant and unknown participants agreed and conspired to defame Plaintiff knowingly and with malice stating untrue defamatory statements to third parties both verbally and in written form. These statements include that Plaintiff is the cause of harassment, hostile working environment at the ARS Miami location; that Plaintiff is the cause of the violation of law or regulation by some USDA employees; that Plaintiff is a racist and that Plaintiff is responsible for the waste, fraud and abuse occurring at the ARS Miami location.

57. In furtherance of the conspiracy set forth above, ADR and the unknown participants committed the overt acts alleged above, by among other things, participate, made false and defamatory statements and republished a Climate Assessment designed by ADR and its co-conspirators for the purpose of intentionally defame and discredit Plaintiff before the USDA, NFFE and third persons, and impair Plaintiff's present and future employment prospects through an organized campaign of defamation.

58. Plaintiff suffered damages because he was removed as president of Local 1752, suspended from employment and salary for two weeks and placed on a probationary status leading up to his dismissal from the USDA.

59. ADR's publication of these statements had and continue to have a defamatory effect because they adversely affect Plaintiff's reputation and impeach Plaintiff's honesty, integrity, virtues, morals, impair, standing in the community and expose Plaintiff to diminished income in the practice of his trade, business or profession, and are likely to have significant and long-lasting public and professional consequences.

60. All the above consequences were foreseeable to ADR at the time its publication were made.

61. These actions by ADR constituted civil conspiracy.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED")

62. Plaintiff incorporates paragraphs 1 through 39 as set forth herein.

63. To make out a claim for IIED Plaintiff must show that ADR acted (1) in extreme and outrageous manner; (2) which was intentionally or recklessly calculated to cause (3) severe emotional distress. *Green v. Am. Broad Co.*, 647 F.Supp. 1359, 1362 (D.D.C. 1986. Generally, liability has been found when defendant's conduct has been found so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Abourezk v. N.Y. Airlines, Inc.*, 895 F2.d 1456, 1459 (D.C. Cir. 1990).

64. ADR's acts or omissions were so extreme and outrageous as to exceed the bounds of decency. These acts included publishing defamatory and false information about Plaintiff such as that Plaintiff is a racist, is the source of harassment and had committed crimes such as fraud and waste.

65. ADR's acts and omissions, also include recommending that Brennan release the results of the Climate assessment before Plaintiff's co-workers. ADR also recommended that Plaintiff be investigated for disciplinary and criminal acts it knew or should have known Plaintiff had not committed. ADR intended to cause disturbance in the emotional tranquility of Plaintiff, so acute that harmful physical consequences might result, and were such that a reasonable person would find that they are reasonably likely to cause disturbance in the emotional tranquility of Plaintiff so acute and harmful physical consequence might result.

## COUNT IV
## INVASION OF PRIVACY
### Public Disclosure of Private Facts

66. Plaintiff incorporates paragraphs 1 through 39 as set forth herein.

67. In the District of Columbia, the elements of invasion of privacy are; (1) publication; (2) of private facts; (3) in which the public has no legitimate concerns; and (4) the publication of which would cause suffering, shame, or humiliation to a person of ordinary sensibilities.

68. The Climate Assessment identified Plaintiff as the source of multiple complaints of discrimination.

69. According to the Climate Assessment, Plaintiff was disciplined for the use of "racially charged language" towards a co-worker."

70. Plaintiff has a subjective expectation over his privacy regarding the matters discussed above in the Climate Assessment.

71. Such expectation of privacy is recognized by society at large as reasonable.

72. These statements in the Climate Assessment would not be available to the public or even employees of the USDA through the Freedom of Information Act ("FOIA").

73. The public has not legitimate concern in learning Plaintiff's discrimination complaints or that he was subjected to discipline by the USDA.

74. Plaintiff was injured as a direct and proximate result of ADR's conduct because its publication caused shame and humiliation to Plaintiff.

75. ADR's actions constituted an invasion of Plaintiff's privacy thus satisfying the elements of the tort of publication of private facts.

## COUNT V
## PERMANENT INJUNCTIVE RELIEF

76. Plaintiff incorporates paragraph 1 through 39 as set forth herein

77. This is an action for injunctive relief.

78. Through its past and present defamatory, libelous, slanderous, and/or disparaging statements regarding Plaintiff, ADRs have injured and continue to cause Plaintiff irreparable damage.

79. The injuries to Plaintiff include, but are not limited to, impairment of reputation, standing among his employer, and lost profits.

80. Plaintiff has no adequate remedy at law and cannot remedy the injuries caused by ADR and will suffer irreparable damage in the absence of an injunction.

81. The harm Plaintiff can suffer in the absence of an injunction would exceed the harm ADR will suffer. The public's interest would not e disserved

### Prayer For Relief

Wherefore, Plaintiff prays for judgment against ADR for damages and costs incident to this matter as follows:

i. require ADR to release the name of the participants in the IT Assessment;

ii. award Plaintiff all compensatory damages including consequential, nominal and incidental damages as a result of ADR's actions;

iii. award Plaintiff punitive damages;

iv. award Plaintiff prejudgment and post judgment interest;

v. require ADR to make a public retraction of the false statements;

vi. grant preliminary and permanent injunctive relief to prevent ADR to continue making or publishing further defamatory remarks of Plaintiff;

vii. grant such further relief this court deems just and proper.

**Prayer For Jury Trial**

Plaintiff hereby demands trial by jury on all issues so triable as a matter of right.

Joey D. Gonzalez Ramos
Florida Bar No. 127554
P.O. Box 145073, Coral Gables, FL 33114-5073
Telephone: 305-720-3114 / Fax: 305-676-8998
E-service: joey.gonzalez@jdg-lawoffice.com
Pro Se
