UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

|  |  |  |
|---|---|---|
| JOEY D. GONZALEZ RAMOS | ) | |
|  | ) | Case No.: 1:18-cv-01690-APM |
| Plaintiff, | ) | JURY TRIAL |
| vs. | ) | |
|  | ) | |
| ADR VANTAGE, INC, | ) | |
| Defendant. | ) | |

**RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

On August 28, 2018, Defendant ADR Vantage, Inc., ("ADR") filed its Motion to Dismiss Plaintiff's complaint [DE 4] and Memorandum of Grounds and Authorities in Support of Motion to Dismiss ("Motion") [DE 4-1]. This is Plaintiff's response.

**Introduction**

It is evident from the Motion, indeed from the inclusion of the survey at issue (which it did not discuss), that ADR's strategy is to shift the Court's focus from its wrongdoing to the false characterization of Plaintiff in ADR's "Climate Assessment" as a criminal and the source of hostile working environment.  It becomes somewhat understandable why ADR has opted for this strategy instead of testing the sufficiency of Plaintiff's Complaint and confining its arguments to the facts and claims contained within its four corners -which it is required to do at this preliminary stage of the litigation. After all, it was successful in its mission to defame Plaintiff before the U.S. Department of Agriculture ("USDA"), and ultimately cause his termination after 14 years of employment.

As part of this strategy, ADR devoted considerable time and energy discussing the contract with the USDA, and including the qualifications of its employees. (Exhibits 1 – 2 in

Motion). The Court should view these discussions and exhibits for what it is: an attempt to inflame the Court and distract it from adjudicating the Motion on its merits. The entire account of the circumstances that led to the USDA hiring ADR and the qualifications of its employees is not only irrelevant to the issue of whether Plaintiffs' allegations in the Complaint conclusively state a claim, but is wholly inappropriate within the context of a 12(b)(6) motion and should be disregarded by this Court outright. See *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (stating that in a motion to dismiss the court must ignore material outside the pleadings); *see also*, Fed. R. Civ. P. 12(b) (when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56").

Plaintiff request that the Court rejects ADR's sensationalistic tactics and focus on the sole issue before this Court: whether Plaintiff's claims warrant dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. As it will be demonstrated below, ADR's Motion should be denied as all of the claims asserted in the Complaint meet this legal threshold.

## Facts

The Complaint alleges that ADR conducted a survey at the USDA's Agricultural Research Station ("ARS") in Miami, Florida ("USDA Miami") purporting to identify factors that contribute "to employee complaints of harassment and hostile working environment and to help the ARS leadership understand the state of concerns within the USDA ARS Miami location and provide recommendations to address them." (Complaint ¶ 26). In return, ADR published the Climate Assessment accusing Plaintiff, identified as the "IT Specialist / Union President", as the source of hostile working environment, dishonest and criminal activity, author of false or

frivolous administrative claims, conspiracy with his then supervisor, threatening and aggressive behavior, racism, etc. (Complaint ¶¶ 34-36).

Despite Plaintiff's twenty-five years of integrous and meritorious performance in the military and the federal civil service, ADR published defamatory statements about him based on the word of anonymous sources These sources are most likely the subjects of a criminal investigation initiated by Plaintiff through the USDA's Inspector General ("IG") prior to the publication. They may also be the responsive management officials named in Plaintiff's complaints before the Equal Employment Opportunity Commission ("EEOC"). (Complaint ¶ 16).

The results of ADR's actions have been devastating for Plaintiff - his reputation ruined, his career wrecked, his emotional life plunged into turmoil, and his health impaired. As expected, ADR's explanations are fundamentally contradictory and unbelievable because they cannot assign **any** plausible motive for Plaintiff to initiate a criminal investigation if he was committing the crimes ADR attributed to him. Equally implausible are ADR's allegations that Plaintiff is the source of hostile working environment while at the same time he survived fourteen years of employment with the USDA and received performance ratings of "superior" or "outstanding" in the overwhelming majority of those years.

Plaintiff worked in the USDA from 2004 to 2018. He was well qualified for his job as a Network Administrator with a Bachelor's in Computer Science and a Master's degree Management Information Systems. Plaintiff had a reputation for honesty and integrity at the USDA and was a consistently an excellent performer, with favorable performance reviews and awards from 2004 to 2017.

Since ADR is attempting to defend a fundamentally false explanation for its conduct, the record is rife with factual disputes that can only be resolved through discovery, or at trial through witness testimony and cross examination. ADR's heightened demands for specificity in Plaintiff's complaint is not appropriate for a motion to dismiss under Rule 12(b)(6) and as such should be rejected in its entirety.

## I.  RULE 12(b)(6) STANDARD

The purpose of a motion to dismiss according to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. The Rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual

allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555.

## Argument

### I. THE COMPLAINT COMPLIES WITH RULE 8(a)

Federal Rule of Civil Procedure 8(a) states that a complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Specific facts are not necessary in a Complaint; instead, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Epos Tech.*, 636 F. Supp.2d 57, 63 (D.D.C. 2009) (quoting *Twombly* at 555).

Thus the Federal Rules embody "notice pleading" and require only a concise statement of the claim, rather than evidentiary facts. ADR's Motion would be appropriate only "where a plaintiff's complaint is 'unintelligab[le] (sic); not where a complaint suffers for 'lack of detail.'" *Epos Tech.*, 636 F. Supp. 2d at 63 (citations omitted). When courts have found that the information sought by the motion is obtainable through discovery, the motion should be denied. See *e.g.*, *Towers Tenant Ass'n v. Towers Ltd. P'ship*, 563 F. Supp. 566, 569 (D.D.C. 1983) (denying motion for a more definite statement because details such as "dates, times, names and places" are "the central object of discovery, and need not be pleaded").

Here Plaintiff's Complaint is not unintelligible or confusing. It complies with Rule 8(a)'s requirement containing a short and plain statement of the claim showing the pleader is entitled to relief. ADR's requests to dismiss all five counts in the Complaint for lack of specificity are meritless and based on a misunderstanding of the Federal Rules of Civil Procedure and the law of defamation.

## II. PLAINTIFF'S CLAIM FOR DEFAMATION IS NOT BARED BY THE STATUTE OF LIMITATIONS

ADR's argument that this action is barred by the District of Columbia's one-year statute of limitation for defamation claims, cannot be appropriately resolved at the motion to dismiss stage and is meritless in any event. ADR's affirmative defense that the statute of limitations has expired depends on its self-serving and factually disputed account that Plaintiff should have known about the publication of the Climate Assessment on February 2017. (Motion at 3). By its own admission ADR's demonstrates that this was impossible; Plaintiff was not a recipient of Lipsey's email sent to the USDA in January and February 2017. (*See* Lipsey's Affd. ¶ 6). Nor could he had obtained a copy of the Climate Assessment otherwise. (See Motion at 3) ("ADR distributed the report to no one else, nor the report was published online.").

Even assuming that ADR could establish that Plaintiff was aware of the content of the Climate Assessment at another date, resolving a statute of limitations defense at the motion to dismiss stage is particularly disfavored by Courts in the D.C. circuit. Courts in this circuit have recognized that "resolution [of this defense] generally requires the development of a record and the adjudication of factual issues." *Malewicz v. City of Amsterdam*, 517 F. Supp. 2d 322, 335 (D.D.C. 2007); see also *Richards v. Mileski*, 662 F.2d 65, 73 n.13 (D.C. Cir. 1981) (citing to "an overwhelming line of authority" rejecting resolution of a statute of limitations defense at the motion to dismiss stage).

Accordingly, this Court simply cannot decide without development of a full factual record whether Plaintiff knew or should have known about ADR's defamatory statements by February 2017. See *Malewicz*, 517 F. Supp. 2d at 336 ("The City may have a complete defense based on the statute of limitations. But because the defense does not appear on the face of the Amended Complaint, the Court must avoid resolving the matter until the record is more

complete."); see also *Firestone v. Firestone*, 316 U.S. App. D.C. 152, 76 F.3d 1205, 1210 (1996) ("a motion to dismiss may be granted on the basis that the action is time-barred only when it appears from the face of the complaint that the relevant statute of limitations bars the action.").

### a. The Statute of Limitations Accrued on October 2017

Though ADR does not acknowledge it anywhere in its motion, courts in D.C. apply the *discovery rule* to determine when the statute of limitation accrues in defamation actions. See *McFadden v. Wash. Metro. Area Transit Auth.*, 949 F. Supp. 2d 214, 221 (D.D.C. 2013) (holding that the discovery rule applies to defamation claims for a publication outside the mass media where it is inherently undiscoverable, because it was published secretly and/or the defendant took steps to prevent the plaintiff from uncovering the statement); see also *Mullin v. Washington Free Weekly*, 785 A.2d 296, 299 (D.C. 2001) ("When the relationship between the fact of injury and the alleged tortious conduct [is] obscure, the D.C. Court of Appeals has applied the so-called *discovery rule*, which provides that the statute of limitations will not run until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing.").

Applying the discovery rule to the foregoing facts, it is indisputable the statute of limitation did not accrue until October 2017. Plaintiff attempted to obtain a copy of the Climate Assessment from the USDA in April 2017 through a Freedom of Information Act ("FOIA") request. In response, the USDA produced a heavily redacted copy. It was not until October 20, 2017, and in response to Plaintiff's FOIA appeal he was able to obtain a viable copy of the Climate Assessment. The sworn declaration[1] of Janice Boarman, an employee of the USDA FOIA's office, included here as Exhibit A, supports Plaintiff's timeline:

---

[1] Boarman declaration on behalf of the USDA was included by the defendant in the case styled *Joey D. Gonzalez v. U.S. Department of Agriculture*, case no. 1:17-cv-24171−CMA, previously before the Southern District of Florida. Plaintiff moved to strike Boarman's declaration alleging that she did not have the expertise to determine the applied redactions, but did not dispute the timeline.

1. On or about April 15, 2017, Plaintiff submitted a FOIA request to ARS (herein the "Climate Assessment FOIA Request") seeking [the results of the Climate Assessment].

2. On July 14, 2017, ARS provided Plaintiff a response the Climate Assessment FOIA Request…. the copy …. he was provided contained **redactions made pursuant to FOIA Exemption 6 and FOIA Exemption 5**.

3. On or about September 13, 2017, Plaintiff filed an administrative appeal to ARS's response to the Climate Assessment FOIA Request…. Plaintiff's administrative appeal raised only one issue: the Climate Assessment Report provided to him in the July 14, 2017 response should have been provided to him **without any redactions**.

4. On October 20, 2017, ARS provided Plaintiff a response to his Administrative Appeal of ARS's Response to the Climate Assessment FOIA Request…. In its appeal response, ARS granted Plaintiff's appeal in part, and denied his appeal in part. *Id.* at p. 1. Specifically, ARS **withdrew all Exemption 5 redactions** to the Climate Assessment Report. *Id.* Further, regarding **Exemption 6**, ARS **withdrew certain**, **but not all, redactions.**

A comparison between the responses Plaintiff received on July 14, 2017 (Exhibit B), and on October 20, 2017 (Exhibit C), demonstrate that the latest response provided the basis for this complaint. A non-inclusive table comparing the redactions of each iteration, included here as Exhibit D, demonstrates that the actionable statements in ADR's survey were disclosed to Plaintiff in October 20, 2017.

### b.  The Statute of Limitations Should Be Tolled

Not only would this Court have to decide between competing interpretations of the dates Plaintiff learned of the defamatory statements in question, it would have to decide whether the statute of limitations should be equitably tolled, "which also involves the consideration of facts." *Malewicz*, 517 F. Supp. 2d at 336.

Plaintiff's Complaint is also timely because any applicable statute of limitation should be equitably tolled. The Supreme Court has held that limitations periods are customarily subject to equitable tolling, "unless tolling would be 'inconsistent with the text of the relevant statute.'" *Young v. United States*, 535 U.S. 43, 49 (2002); see also *Chung v. DOJ*, 333 F.3d 273, 278 (D.C.

Cir. 2003) (holding that the statute of limitations may be equitably tolled "when the plaintiff despite all due diligence … is unable to obtain vital information bearing on the existence of his claim.").

Here, the Complaint alleges that Plaintiff did not obtain vital information about ADR's defamatory statements at least until October 20, 2017. (Complaint ¶ 34). Plaintiff's claims should also be equitably tolled because he still unable to obtain vital information concerning his claims - including the identity of the purported anonymous author(s) of the statements in the Climate Assessment about Plaintiff (*Id*. ¶ ¶ 16-18), and the extend of the publication.  The facts and the evidence here included support that Plaintiff actively and diligently pursued a viable copy of the Climate Assessment.  Plaintiff should not be penalized for the time it took him to obtain it through FOIA.

### III. PLAINTIFF STATED A CLAIM FOR DEFAMATION UPON WHICH RELIEF CAN BE GRANTED

ADR urges this Court to dismiss Count I because: (a) "a cursory review shows that there are no defamatory statements [in the survey]"; (b) "nowhere in the report Plaintiff is identified by name"; (c) "ADR was acting as an agent of Plaintiff's employer by contract and enjoyed the same privileges"; and (d) that the Climate Assessment is merely based on the opinions of its purported participants. Finally, ADR claims that (e) punitive damages should not be awarded because there was no "evil intent." (Motion 4-5).

#### a.  The Climate Assessment Defamed Plaintiff

For a statement to be defamatory, "the language must make plaintiff appear odious, infamous and ridiculous. *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984). "A statement is defamatory if it tends to injure [the] plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Id*.   At the time of publication, Plaintiff was the

Page **9** of **19**

IT Specialist and the President of Local 1752. His duties as an IT Specialist and position in the union unquestionably involved dealing with the USDA's employees, and the general public.

By attributing Plaintiff criminal acts, being the source of harassment and hostile working environment at his former workplace, there is no credible way ADR can argue that as a matter of law the defamatory statements contained in its survery did *not* make Plaintiff appear odious or infamous or that his professional standing among his co-workers and other union members was not injured. There is no basis to argue that ADR caused Plaintiff's estimation to be lowered or that he was made to appear as someone to be feared by his co-workers and peers. See *White v. Fraternal Order of Police*, 285 U.S. App. D.C. 273, 909 F.2d 512, 519 (1990) (to prevail on a defamation claim, the language used must, as a matter of law, be reasonably capable of a defamatory interpretation and a jury must find that the language was actually understood by the recipient in that sense. It is no defense that the defendant did not actually intend to convey the defamatory meaning, so long as the defamatory interpretation is a reasonable one).

### b.  Plaintiff Needs Not to Be Identified by Name

In order for a libelous statement to be actionable, the plaintiff must show that it was published "of and concerning" him; that is, the libel must designate the plaintiff in such a way as to let those who knew him understand that he was the person referred to in the libelous publication. *Summerlin v. Washington Star Co.*, 1981 U.S. Dist. LEXIS 18625 *, 7 Media L. Rep. 2460. The person libeled need not be specifically named, but the surrounding circumstances must leave *no doubt* in the reader's mind as to the person's identity. *Id*.

Throughout the Climate Assessment, ADR referred to Plaintiff as the "IT Specialist" the "Union President" or the "IT Specialist/Union President." (*Id*. ¶ 30, 47).  Those that received the Climate Assessment undoubtedly distinguished Plaintiff regardless whether his name was in the

publication. Plaintiff was the **only** IT specialist at the USDA Miami for the last 14 years. Plaintiff was also the only president of Local 1752. (Complaint ¶¶ 8, 10). Plaintiff's titles distinctively identified him to his employer, co-workers and others, there was no need to name him. See *Fetler v. Houghton Mifflin Co.*, 364 F.2d 650, 651 (2d Cir. 1966) ("[T]he question is whether the libel designates the plaintiff in such a way as to let those who knew him understand that he was the person meant. It is not necessary that all the world should understand the libel; it is sufficient if those who knew the plaintiff can make out that he is the person meant.").

### c. ADR's Defamatory Statements Are Not Privileged

In another attempt to avoid liability, ADR claims that it was acting as an "agent of plaintiff's employer and it enjoyed the same privilege." Although ADR's timid defense does not tell what privilege it is referring to, it is indisputable that the statements about Plaintiff in the Climate Assessment are not privileged. Qualified privilege is a complete defense to defamation, but the defense is lost if plaintiff is able to demonstrate that the allegedly defamatory communication was uttered with malice. *Holland v. Marriott Corp.*, 1984 U.S. Dist. LEXIS 16102 *, 34 Fair Empl. Prac. Cas. (BNA) 1763. See *White*, 285 U.S. App. D.C. 273 (1990) (holding that qualified privilege is lost if the statements were made with knowledge that they were false or with reckless disregard for whether they were false.)

Malice, in the context of a qualified privilege, is the equivalent of bad faith. It is the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will. *Caudle v. Thomason*, 942 F. Supp. 635, 639 (D.D.C. 1996). The existence of malice is question of fact for the jury. *Novecon Ltd. v. Bulgarian-American Enter. Fund*, 338 U.S. App. D.C. 67, 190 F.3d 556, 566 (1999); *Mosrie v. Trussell*, 467 A. 2d 475, 477 (D.C. 1983).

ADR based its recommendations about Plaintiff in statements which it cannot confirm are true. (See Motion at 4) ("[t]here is no assertion as to whether or not the views of the employees are true"). Further, in the instant case, none of the elements of a qualified privilege are present. First, on its face, the Climate Assessment reeks of bad faith. It accuses Plaintiff of criminal, dishonest and infamous activity, all without one iota of proof. Second, neither the USDA's official in receipt of the Climate Assessment or NFFE had a "corresponding interest" in receiving these unsupported criminal accusations. Third, ADR's claim that the USDA's Office of General Counsel ("OGC") had a "legal obligation" to assess the "work environment of the workplace" (Motion at 5), is meritless.  OGC's mission is to "provide legal services and legal oversight required by the Secretary of Agriculture and USDA to achieve the Department's mission and deliver programs and services to the American People." https://www.usda.gov/our-agency/staff-offices/office-general-counsel-ogc.

Fourth, the USDA's IG had no ongoing or contemplated investigation involving Plaintiff at any time.  To the contrary, it was Plaintiff who initiated and cooperated with a criminal investigation of the *anonymous sources* of the Climate Assessment. (Complaint ¶ 20). Moreover, there is no allegation in the Motion that OGC or the IG had any interest at all in Plaintiff.  Fifth, ADR was not contracted by the USDA to conduct a criminal investigation. Finally, it should be emphasized that even if there is any doubt that a qualified privilege might apply to these circumstances, whether the privilege was abused by ADR's malice is a question of fact, which cannot be dismissed under Rule 12(b)(6). *Caudle*, 942 F. Supp. 635 at 640.

### d. The *Opinions* in the Climate Assessment Are Not Protected

"Expressions of opinion are entitled to constitutional protection unless they imply the existence of undisclosed defamatory facts as the basis of the opinion." *Myers v. Plan Takoma,*

*Inc., et al.*, 572 A.2d 44, 47 (D.C. 1983). In *Myers*, the District of Columbia Court of Appeals explained the test for determining whether a statement is constitutionally protected as an opinion based on disclosed facts:

> Even where it appears that the words, in context, are merely a statement of opinion, **the court must also determine whether the opinion could be said to imply undisclosed defamatory facts**. In addition, the court must consider whether the allegedly defamatory words are susceptible to proof of their truth or falsity. Statements that cannot readily be proven true or false are, of course, more likely to be viewed as statements of opinion, not fact. Finally, the court must consider the context in which the document containing the allegedly defamatory reference is published. Myers, 572 A.2d at 47 (emphasis added).

As expected, ADR attempts to downplay its defamatory statements claiming that they are based on mere opinions. ADR ignores that based on those *opinions* it recommended that Plaintiff be investigated and disciplined for abusing access to "data, email and telephones, as well as his conduct towards other employees." And accused Plaintiff of fraud abuse and waste, which in the context of public service imply factual allegations of official malfeasance. These statements are sufficient to prove a claim for defamation. See *Ollman v. Evans*, 242 U.S. App. D.C. 301, 750 F.2d 970, 980 (1984) (D.C. courts have not hesitated to hold accusations of criminal conduct as statements laden with factual content that may support an action for defamation).

Even disregarding the appropriate application in a motion to dismiss, the conclusion that the participant's statements are opinion and not fact does not automatically wrap ADR's statement in the mantle of the First Amendment's "opinion privilege." The Court is required to consider "whether the opinion implies the existence of undisclosed facts as the basis for the opinion. If the opinion implied factual assertions...then it should not receive the benefit of the First Amendment protection as an opinion." *Id.* at 984.

### e. Punitive Damages Were Sufficiently Pled

ADR alleges that there is no basis for an award of punitive damages because it "was merely fulfilling the contract requirements [with the USDA] and there was no ill will or evil intent."

Not only ADR cited to no authority, its argument is entirely pointless. The federal courts apply the notice pleading standard encompassed by Rule 8(a), which requires only that Plaintiff make a "short and plain statement of the claim" to give the Defendant notice of claims and the grounds upon which it rests. Plaintiff has done that. A motion to dismiss is simply not the appropriate avenue to challenge Plaintiff's claim for damages. ADR's arguments are contradicted by existing case law addressing Rule 8(a)(3). *See* Seven Words, L.L.C. v. Network Solutions, 260 F.3d 1089, 1098 (9th Cir. 2001) ("a simply request 'for damages would satisfy the notice requirement . . ."); *see also* Goldsmith v. City of Atmore, 996 F.2d 1155, 1159 (11th Cir.1993) (recognizing "any concise statement identifying the remedies and the parties against whom relief is sought will be sufficient.")

### IV. PLAINTIFF HAS STATED CLAIMS UPON WHICH RELIEF CAN BE GRANTED IN THE REMAINING COUNTS

The rest of ADR's Motion is equally flawed. It is a reiteration of its contract with the USDA and a series of statements assuring this Court that it has committed no wrong. See for example:

> "The whole purpose of the contract was to assess and report on the work environment." (Motion at 4).

> "ADR was merely fulfilling the contract requirements and there was no ill will or evil intent." (*Id*. at 5).

> "In the present case, ADR was merely reported its findings from interviews of the

employees to the USDA General Counsel's office, ARS Management and as always required for government contract deliverables, to the Contracting Officer's Representative (COR). There is no agreement to perform an unlawful act." (*Id*. at 6).

"ADR merely issued its report to USDA General Counsel's representative, ARS Management and as a contract deliverable to the Contract Officer in the person of the COR and had no further involvement in this matter. Its work is completed." (*Id*. at 8).

### a. Civil Conspiracy

ADR claims that Count II fails to state a claim for civil conspiracy because it alleges *some sort of conspiracy* with unknown persons. (*Id.* at 5-6). To make out a prima facie case for civil conspiracy in the District of Columbia, a plaintiff must properly allege: (1) an agreement between two or more entities, (2) to participate in an unlawful purpose, and (3) an overt act in furtherance of that agreement." *Cadet v. Draper & Goldberg, PLLC*, 2007 U.S. Dist. LEXIS 72504 *, 2007 WL 2893418.

ADR's defense leaves much to be desired, indeed a lot for Plaintiff and perhaps this Court to guess. As set out in Section A of this response, *supra,* Plaintiff has sufficiently pled a claim of defamation per se. Plaintiff has incorporated those allegations into the conspiracy count by reference and has further alleged the possible identity and role of ADR's co-conspirators, (Complaint ¶¶ 16, 27, 31 and 37), and their overt act; creating the Climate Assessment to discredit and defame Plaintiff in retaliation for initiating a criminal investigation and participation in administrative complaints.

In a civil conspiracy claim it is uniformly recognized that a tort by one is a tort by all. Defendants' suggestion that no viable civil conspiracy claim exists because Plaintiff did not name ADR's co-conspirators is simply not the law. First, according to ADR, the comments in its publication came from USDA's employees. Second, at this stage in the litigation, it is impossible

for Plaintiff to name these co-conspirators because their identity remains withheld by ADR. And third, any unlawful overt act committed by either Defendant in furtherance of the conspiracy is all that is required as a predicate for a civil conspiracy claim. See *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983) ("It is not necessary . . . for a plaintiff to allege or prove that each member of the conspiracy committed some independent unlawful act in furtherance of the agreement, only that one or more of them committed such an act and that harm ensued to the plaintiff as a result.").

### b. IIED

ADR claims that Count III fails to state a cause of action for IIED because its reporting and recommendations on the requested finding were silent on the employment status of Plaintiff and do not rise to extreme and outrageous conduct. (Motion at 7). Certainly, ADR ignores its own publication. Throughout its 20-page Climate Assessment, Plaintiff's titles, "IT Specialist" and "Union President" are repeated 44 times, all in reference to Plaintiff's employment or his performance as the union president. Despite his stellar ratings with the USDA, there is not a single positive comment about him.

To establish a claim for intentional infliction of emotional distress a plaintiff must allege that: (1) the defendants' conduct was extreme and outrageous; (2) the plaintiff suffered severe emotional distress; and (3) the defendants knew that the severe emotional distress was certain or substantially certain to result from their conduct. *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013).

ADR challenges the sufficiency of the Complaint regarding the first prong. The decision often cited for the standards testing a cause of action for IIED in the District of Columbia is *Homan v. Goyal*, 711 A.2d 812, 817 (D.C. 1998), which in turn cites the Restatement 2d of

Torts § 46. *Homan* and the Restatement make clear that the essence of the claim for IIED is behavior that would lead a reasonable person to exclaim, "Outrageous!" *Id*.

The "outrageous quotient" is exacerbated when the offending party is in a position of authority or has a power to affect the interests of the one in distress. Restatement 2d of Torts, § 46, comment f; see also *Webb v. Hyman*, 861 F. Supp. 1094, 1102 (D.D.C. 1994) (The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him [or her] actual or apparent authority over the other, or power to affect his (or her) interests). (internal citations and quotations omitted).

The facts as alleged in the Complaint certainly pass this test. ADR acted as an enabler for some USDA's supervisors, and provided the means and protection under the guise of anonymity for their retaliatory conduct against Plaintiff.  By any measure, ADR and its co-conspirators acted outrageously and with wanton disregard for Plaintiff's reputation and his employment. Their objective was to intimidate, ridicule and silence Plaintiff, and ultimately cause his dismissal and destroy his chances of obtaining future employment.  A reasonable person would not be expected to endure the conduct Plaintiff was subjected. This Court should reject ADR's efforts to avoid justice and the day of reckoning.

### c. Invasion of Privacy

Count IV in the Complaint alleges that ADR disclosed private facts about Plaintiff. Citing instead the elements for invasion of privacy *false light*, ADR claims that this count fails because its publication was privileged and because there was no publication. (Motion at 7).

In the District of Columbia, the elements of invasion of privacy for public disclosure of private facts are; "(1) publicity, (2) absent any waiver or privilege, (3) given to private facts (4) in which the public has no legitimate concern (5) and which would be highly offensive to a

reasonable person of ordinary sensibilities." *Wolf v. Regardie*, 553 A.2d 1213, 1220 (D.C. Ct. App. 1989).

Each element has been alleged here. First, ADR published the Climate Assessment to USDA's employees, Chevon Gibson ("Gibson"), Tucker and Masker, (Complaint ¶ 38). Subsequently it was republished to NFFE by Hall, the USDA's Labor Relations Officer. As to the second prong, Plaintiff did not consent to the publication. *Id*. Neither the Gibson, Masker or NFFE had a legitimate interest in knowing that Plaintiff has filed complaints with the EEOC or that he was disciplined, as neither are directly involved in Plaintiff's employment. (*Id*. ¶ 72). Finally, Plaintiff alleged that the number of EEO complaints he has filed and whether he has been disciplined are private facts and that public disclosure of this information would be deemed outrageous and highly offensive to a reasonable person of ordinary sensibilities. To wit, ADR published these facts to put at ease the concerns of USDA's employees named in Plaintiff complaints and criminal investigation and to provide feedback to OGC regarding his chances of succeeding in his EEO complaints. (*Id*. ¶ 37).

### d.  Injunctive Relief

Finally, ADR urges dismissal of Count V claiming that there is an adequate remedy at law. Again, at this stage of litigation Plaintiff is only required to make a short and plain statement of the claim to put Defendant on notice upon which the Complaint rests. Plaintiff has done that in Count V.

### Conclusion

ADR brutally and deliberately wrecked Plaintiff's career, his financial well-being, his future, and his reputation on the flimsiest of pretexts. A candid assessment of the facts makes it impossible to believe that the defamatory statements in ADR's Climate Assessment are

privileged, based on opinion, or that ADR, bolstered by its co-conspirator's self-serving statements, did not act with malice. Plaintiff's 14-year spotless career in the USDA offer no justification for the actions of ADR. Plaintiff seeks only to recover what has been wrongfully taken from him - not merely his income, but even more importantly his good name and his future.

Plaintiff's complaint fully complies with the pleading requirements of Federal Rules of Civil Procedure 12(b)(6) and 8(a), and provides ADR fair notice of the charges against it and the grounds thereof. Thus the complaint states a claim upon which relief can be granted in all five counts. For all these reasons, ADR's Motion should be denied.

Joey D. Gonzalez Ramos
Florida Bar No. 127554
P.O. Box 145073, Coral Gables, FL 33114-5073
Telephone: 305-720-3114 / Fax: 305-676-8998
E-service: joey@joeygonzalezlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above document was filed through CM/ECF and served via email this September 26, 2018, on all counsel or parties of record on the Service List:

Service List

Anthony D. Dwyer
DC Bar: 415575
Law Office of Anthony D. Dwyer
6230 Old Dobbin Lane
Suite 190
Columbia, MD 21045
240-512-2199
*Attorney for Defendant*

/s/ Joey D. Gonzalez Ramos
Joey D. Gonzalez Ramos
Florida Bar No. 127554
