## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JOEY D. GONZALEZ RAMOS,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Case No.: 18-cv-01690 (APM)** |
| | : | |
| **ADR VANTAGE, INC.,** | : | **Assigned To: Amit P. Mehta** |
| | : | |
| **Defendant.** | : | |

### DEFENDANT, ADR VANTAGE, INC.'S
### OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

COMES NOW the Defendant, ADR VANTAGE, INC. (hereinafter "ADR"), by and through its counsel, John J. Murphy, Esq., and Walker, Murphy & Nelson, LLP, and, pursuant to the Federal Rules of Civil Procedure, hereby files this Opposition to Plaintiff's Motion to Compel, and in opposition thereto states as follows.

### INTRODUCTION

This case arises from Plaintiff's claims of defamation and other various torts in connection with a Climate Assessment Report ADR was contractually obligated to prepare for the United States Department of Agriculture (hereinafter "USDA"). *See, generally Complaint.* More specifically, in November 2016, the USDA issued a Request for Work (#115505) seeking proposals meeting a specific "Statement of Work" from contractors like ADR to perform a formal Climate Assessment. *See, Statement of Work, attached hereto as* **Exhibit 1.** The USDA's Statement of Work expressly required that the contractor awarded the contract offer USDA employees mechanisms for sharing candid feedback including, but not limited to, "methods that protect anonymity." *See, Id. at § III (1)(b).* Equally as important, the Statement of Work directed that "[a]ll records, files, documents, and work papers associated with this work shall be the property of the Federal government." *See, Id., at § VIII.*

1

ADR was awarded the contract for the USDA Climate Assessment and completed that project in February 2017, culminating in a formal Climate Assessment Report which is the subject of the instant litigation. *See, generally, Complaint.* In performance of its contractual obligation, ADR interviewed USDA employees who were promised anonymity when providing candid feedback. *See, ECF 30-2 (Declaration of Archie Tucker). See, also, ECF 26-3 (Declaration of Dr. Raymond Schnell). See, also, ECF 28-1 (Declaration And Claim Of Deliberative Process Privilege).* In connection with the instant litigation, the USDA maintains that much, if not all, of the communications between ADR and USDA prior to the completion of the February 2017 Climate Assessment Report is subject to that agency's deliberative process privilege and/or the attorney-client privilege. *See, ECF 30-2. See, also, USDA Privilege Log, attached hereto as* **Exhibit 2.**[1] *See, also, ECF 28* (Notice of Third Party Dr. Raymond Schnell's Supplemental Response). At least within the context of Plaintiff's attempt to depose Dr. Schnell, this Court has agreed that the deliberative process privilege applies to at least certain aspects of the case, hence Defendant ADR has remained diligent in protecting all applicable privileges. *See ECF 29.*

## DISCOVERY DISPUTE

During the course of discovery, Plaintiff has requested, *inter alia*, a complete copy of ADR's file in connection with its Climate Assessment Report including, but not limited to, the identities of the individuals interviewed at the USDA and emails between ADR and USDA officials. Plaintiff is trying to obtain this information through discovery in the case at bar, in part, because Plaintiff's prior attempts to obtain this information through FOIA litigation proved unsuccessful. *See, Order granting Summary Judgment In Favor Of USDA in Case No. 17-24171-CIV-ALTONAGA/Goodman, attached hereto as* **Exhibit 3.** Mindful of both its discovery obligations under the Federal Rules of Civil Procedure, as well as its contractual obligation to the USDA as set forth above, this Defendant filed Answers to Interrogatories and a Response to Request for Production of Documents which, for identification purposes only, identifies three

---

[1] USDA recently provided redacted documents that correspond to the attached privilege log. Counsel for ADR is reviewing the redacted documents and anticipates producing them to the Plaintiff shortly.

categories of documentation responsive to Plaintiff's discovery requests which pose a significant concern for the defense.   They are: (1) documentation identifying the names of the USDA employees who participated in ADR's climate assessment with the expectation of anonymity; (2) responses which those anonymous USDA employees provided during the interview process; and (3) communications between ADR employees and USDA officials regarding the climate assessment, along with working drafts of documents.   Conversely, ADR has produced the following contents of its file which it does not believe to be confidential:

- **USDA Statement of Work**
- **ADR's Proposal**
- **USDA's Acceptance of Proposal**
- **2014 Anti-Harassment / Anti-Bullying Policy Statement**
- **2014 Diversity / Equal Employment Opportunity Policy Statement**
- **2014 Sexual Harassment Policy Statement**
- **2015 SEA Diversity/Equal Employment Opportunity Policy Statement**
- **2015 SEA Anti-Harassment/Anti-Bullying Policy Statement**
- **USDA Anti-Harassment Policy Statement**
- **2016 Federal Employee Viewpoint Survey**
- **USDA Civil Rights Policy Statement**
- **USDA Announcement of ADR Climate Assessment**
- **USDA Miami Office Organizational Chart**
- **ADR's Questionnaire for the USDA**
- **ADR Climate Assessment Report**[2]

Stated alternatively, the defense has tried to balance its discovery obligations with its own contractual obligations to the USDA and its asserted privileges.   Plaintiff remains dissatisfied, however, and has filed the subject Motion to Compel necessitating judicial intervention.   *See, ECF 25.*[3]

---

[2]    While the actual Climate Assessment Report may itself be confidential and clearly the property of the USDA, as set forth in Plaintiff's FOIA litigation a redacted copy was produced by the USDA and Plaintiff was able to obtain an unredacted copy via an EEOC claim he has apparently filed against one or more USDA officials. *See, Exhibit 3 at p. 5.*

[3]    The USDA recently filed a Motion to Intervene so as to be heard on the subject of this discovery dispute. *See, ECF 30.* ADR respectfully submits that the USDA should be given an opportunity to fully brief its claimed privileges before Plaintiff's Motion to Compel is ruled upon.

**LEGAL ARGUMENT**

As set forth *infra,* ADR respectfully submits that the Plaintiff's Motion to Compel should be denied considering the clear privileges that apply.

1. ***Legal Standard***

Federal Rule of Civil Procedure 26 allows for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Fed. R. Civ. P. 26(b)(1).* As this is the Plaintiff's Motion to Compel, the Plaintiff bears the burden of establishing that his Motion to Compel should be granted. *See, e.g., Guantanamera Cigar Co. v. Corporation Habanos, S.A.,* 263 F.R.D. 1, 7 (D.D.C.2009) (when the opposing party has answered the movant's interrogatories, the party moving to compel discovery has the burden of showing that the opposing party's responses are incomplete).

2. ***Plaintiff's Discovery Would Force ADR To Breach Its Contractual Obligations & Seeks Privileged Information.***

It is undisputed that when the USDA contracted ADR to perform the subject climate assessment, the Statement of Work provided that anonymity for USDA employees was to be offered and ADR's work product was to be the property of the USDA. *See, Exhibit 1.* It is equally undisputed that Plaintiff's discovery seeks to have ADR disclose USDA's property and, with that disclosure, destroy the anonymity which was a cornerstone of the climate assessment. *See, ECF 30-2 (Declaration of Archie Tucker).* The USDA, understandably, has requested that ADR maintain all applicable privileges. *See, Exhibit 2. See, also, ECF 26-3 (Declaration of Dr.*

4

*Raymond Schnell*).   *See, also, ECF 28-1 (Declaration And Claim Of Deliberative Process Privilege).*   The competing interests of the USDA and the Plaintiff have placed Defendant ADR in an untenable position requiring the intervention of this Court.

It is noteworthy that the USDA secured summary judgment in the FOIA action brought against it by the Plaintiff in a separate lawsuit. *See, Exhibit 3.*   Normally, FOIA disclosures are broader that civil discovery. *See, e.g., North v. Walsh,* 881 F.2d 1088, 279 U.S. App.D.C. 373 (1989) (observing "a party's desire to use information obtained under the FOIA in subsequent litigation is not a basis for denying an otherwise legitimate FOIA request. Indeed, there are situations in which FOIA will permit access to information that would not be available through discovery.") *Id. 881 F.2d at 1096* (internal citations omitted).   Having been unsuccessful in his FOIA case, it strikes the defense that Plaintiff is attempting to accomplish through discovery in this litigation that which he was unsuccessful doing in the United States District Court for the Southern District of Florida.

FOIA aside, as set forth *supra,* the USDA is claiming that the information sought by the Plaintiff is subject to the deliberative process privilege. *See, Exhibit 2.*   Clearly, there is merit to the USDA's claim given this Court's recent Order with respect to the deposition of Dr. Raymond Schnell.   *See, ECF 29.*   Moreover, Defendant has already produced all non-privileged documentation during the course of discovery in this case. In fact, it is undisputed that the Plaintiff is in possession of ADR's unredacted Climate Assessment Report summarizing ADR's findings. The names of the actual USDA employees who provided responses summarized by ADR is, therefore, not critical to Plaintiff's claims. Moreover, insofar as Plaintiff's entire case is premised on ADR's alleged "publication" of defamatory materials, there is no allegation that ADR gave the

report to anyone other than the USDA which paid for and was the owner of said report.[4]  In fact, *none* of the information the USDA is claiming to be privileged has anything to do with the publication of the subject Climate Assessment Report.  Moreover, the defense is aware that the Plaintiff is currently litigating his claim against the USDA for monetary damages before the United States of America's Merit Protections Board, Docket No. AT-1221-17-0503-W1.  Thus, to the extent Plaintiff seeks to obtain property belonging to the USDA, he should do so through his litigation directly against the USDA.

In his Motion to Compel, Plaintiff cites to *Carter v. High Country Mercantile, Inc.,* 2009 U.S. Dist. LEXIS 65619 (W.D. Mo. 2009) as presenting an "almost similar scenario." *ECF 25 at p. 7*.  While *Carter* is materially different than the case at bar because in that case *the USDA did not claim a privilege in that case***,** ADR agrees that *Carter* is instructive for a very different reason. The *Carter* Court began its analysis with *United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951) and observed:

> The proper scope of Touhy regulations is to prohibit employees of agencies from responding to subpoenas and other discovery requests until appropriate individuals have granted permission for them to do so. This allows the agency to decide whether a privilege should be asserted.
>
> \*       \*       \*       \*       \*
>
> In allowing the agency to bear the ultimate responsibility for compliance, Congress has effectively protected the individual from being held in contempt.  This prevents individuals from waiving the agency's valid privileges and protects them from punishment for allowing the agency to decide how best to proceed.

---

[4]     Indeed, Plaintiff's claims of "civil conspiracies" and intentional wrongdoing against ADR are suspect on its face.  ADR is a small, reputable, woman owned business in the District of Columbia. *See, http://adrvantage.com/*  Nowhere in Plaintiff's Complaint is it alleged that ADR knew of the Plaintiff or had any reason whatsoever to intentionally harm him in any way.  Nor is it alleged that during ADR's brief two (2) month contract with the USDA it had any knowledge of Plaintiff's longstanding acrimonious history with the USDA.

In the case at bar, the USDA has asserted a privilege over information sought by the Plaintiff in the instant litigation.  As set forth *supra*, ADR is a custodian of the USDA's property subject to that claimed privilege.  ADR seeks nothing more than precisely what *Touhy* affords; to avoid waiving the USDA's claimed privilege and being held harmless until the agency (or this Court) decides how best to proceed.

More relevant to the issue presented to this Court is the case of *Westchester General Hosp., Inc. v. Department of Health & Human Services, Center for Medicare & Medicaid Services*, 770 F.Supp.2d 1286 (S.D. Fl. 2011).  In that case, DHHS denied a plaintiff's request to depose an auditor who was employed by a contractor for the agency.  Applying the familiar *Touhy* analysis, that federal court found that DHHS' decision to preclude its contractor's employee from testifying at deposition was not arbitrary or capricious.  Specifically, it was noted in that case that:

> The parties agree that, despite her direct status as an employee of an outside contractor for the Department, Paul qualifies as a Department "employee" for summary judgment purposes under the applicable Touhy regulations. *Id. at fn. 6.*

In the case at bar, Plaintiff is not seeking to compel testimony by a government contractor but, rather, seeking to compel the government contractor to produce documents that are the property of the United States.[5]  It should go without saying that if a contractor cannot divulge privileged information during a deposition, a contractor cannot divulge privileged information in

---

[5]     Plaintiff has requested dates to depose ADR's employees who participated in the Climate Assessment Report, so the same issue is likely to repeat itself at deposition baring definitive direction from this Court.

response to written discovery requests. Moreover, to date, the defense has not found any case law distinguishing a government contractor from the government itself for purposes of producing privileged government documents, nor has Plaintiff cited any such case law.

Also relevant is the doctrine of derivative sovereign immunity which federal courts have construed to exist following the Supreme Court's decision in *Yearsley v. W.A. Ross Const. Co.* 309 U.S. 18 (1940). *See, e.g., McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1343 (11th Cir.2007) (observing *Yearsley* created the so-called "doctrine of derivative sovereign immunity."). To claim such immunity, a private contractor generally must show that (1) it "was working pursuant to the authorization and direction of the federal government," and (2) "the acts of which the plaintiff complained fell within the scope of those government directives." *In re World Trade Center Disaster Site Litig.*, 521 F.3d 169, 196 (2d Cir.2008) (citing Yearsley, 309 U.S. at 20–21, 60 S.Ct. 413). *Accord, Myers v. United States*, 323 F.2d 580, 583 (9th Cir.1963) ("To the extent that the work performed by [the federal contractor defendant] was done under its contract with the Bureau of Public Lands, and in conformity with the terms of said contract, no liability can be imposed upon it for any damages claimed to have been suffered by the appellants.") (*citing Yearsley*, 309 U.S. at 18, 60 S.Ct. 413).   In the case at bar, it is undisputed that Defendant ADR was doing precisely what it was asked to do by the USDA – conduct a climate assessment.  Thus, it should go without saying that if a government contractor like ADR can enjoy derivative sovereign immunity, then the derivative process privilege should also apply.

## **CONCLUSION**

In sum, and for all of the foregoing reasons, Defendant ADR's file is the property of the United States of America. The United States of America has asserted the attorney-client privilege and deliberative process privilege over much of the information sought by the Plaintiff in the case

at bar. ADR has, in turn, asserted that privilege as well and sought to protect confidentiality as required by its contractual agreement with the USDA. Accordingly, for all of these reasons, Plaintiff's Motion to Compel should be denied.

Respectfully submitted,

WALKER, MURPHY & NELSON, LLP

/S/ John J. Murphy
_____
John Murphy, Esq. (Bar #14407)
9210 Corporate Boulevard, Suite 320
Rockville, Maryland 20850
(301)-519-9150 (Office)
(301) 519-9152 (Fax)
jmurphy@walkermurphy.com

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Opposition to Motion to Compel was electronically mailed and/or mailed on the ___13th___ day of May 2019 to:

Joey D. Gonzalez Ramos, Esq.
P.O. Box 145073
Coral Gables, FL 33114-5073
E-service: joey.gonzalez@jdg-lawoffice.com
*Pro Se Plaintiff*

/S/ John J. Murphy
_____
John J. Murphy, Esq.

# EXHIBIT 1

# Subtropical Horticulture Research Station Organizational Climate Assessment Statement of Work

Administrative & Financial Management
Agricultural Research Service
United States Department of Agriculture

## I. Background:

The United States Department of Agriculture (USDA), Agricultural Research Service (ARS), conducts research to develop and transfer solutions to agricultural problems of high national priority and provide information access and dissemination to:

- ensure high-quality, safe food, and other agricultural products;
- assess the nutritional needs of Americans;
- sustain a competitive agricultural economy;
- enhance the natural resource base and the environment and provide economic opportunities for rural citizens, communities, and society as a whole.

ARS is comprised of Headquarters Staff Offices, Field Operations divided into geographic areas and locations, and Administrative and Financial Management (AFM).

The work outlined in this statement of work is being requested to support the agency in conducting a comprehensive employee climate assessment of the Subtropical Horticulture Research Station (SHRS), which is located in Miami, Florida. The SHRS is responsible for supporting the agricultural industries in the southern areas of the United States by providing environmentally sound research on: (1) the genetics of tropical and subtropical fruit and ornamental crops; (2) the interdiction and control/eradication of exotic plant insect pests. Additionally, it's worthy to note that some employees at the location are represented by the National Federation of Federal Employees, Local Chapter 1752.

## II. Purpose and Scope:

The purpose of this contract is for the ARS to obtain consultative support in conducting a thorough employee climate assessment of the SHRS. This assessment will require the vendor to conduct roughly 40 interviews of persons located in Miami, Florida and/or the Washington metropolitan area.

## III. Requirements:

The Contractors shall conduct the following type of support in this assessment:

1. **Organizational Climate Assessment**
   a. Conduct candid interviews of all employees in Miami and employees outside of the Miami, as determined
   b. Offer alternative mechanisms for sharing feedback, such as, methods that protect anonymity, as well as, accommodation for employees unable to interview in person

    c.  Ensure interviews capture information on Employee Relation and Labor Relation issues at the location to assist with understanding the history and background of climate issues
    d.  Identify the role of the Union at the Miami location
    e.  Provide an objective analysis on the challenges at the Miami location, specifically address concerns of hostile work environment
    f.  Develop and provide recommendations on ways to improve/resolve the challenges
    g.  Provide a report that is specific as to the challenges that can be relied upon for further action by the Agency.

## IV. Period of Performance

November 25, 2016 – January 13, 2017

## V. Location

USDA, ARS, Subtropical Horticulture Research Station
13601 Old Cutler Road
Miami, FL 33158

## VI. Mandatory Staff Requirements:

The contractor's staff must possess the following qualifications in order to be acceptable to perform the work of this project:

    i.  Knowledge and understanding of Federal employee & labor relations, employee misconduct and EEO;
    j.  Experience in conducting organizational and/or employee climate surveys;
    k.  Must be a citizen of the United States; and
    l.  Standard security clearances may be required for contractor staff. The specifics of the clearance may differ.

## VII. Deliverables:

The contractor shall provide a comprehensive report outlining the issues identified and categorized from the assessment interviews; recommendations for mitigation; and a proposal for an attainable way forward. All interviews must be completed by December 30, 2016. The final report shall be submitted no later than January 13, 2017.

## VIII. Additional Requirements / Notices

All records, files, documents, and work papers associated with this work shall be the property of the Federal government. In addition, all materials developed or customized to meet USDA requirements shall be the property of the Federal government. USDA will be authorized to make copies of any non-commercial, non-copyrighted material for use, without notification to the vendor. At the time of record disposition or contract transition, the vendor shall box, label and deliver all records, files, documents, materials and work papers to the COR or a location identified by the COR.

Contractor is responsible for protecting Personally Identifiable Information (PII) in accordance with the all applicable Federal, Departmental and Agency statuses, regulations, and policies. PII is – any information about an individual maintained by an agency, including (1) any information that can be used to distinguish or trace an individual's identity, such as name, social security number, date and place of birth, mother's maiden name, or biometric records, and (2) any other information that is linked or linkable to an individual, such as medical, educational, financial, and employment information. Contractor staff may be required to complete and return a non-disclosure and/or confidentiality agreement.

### IX. Government Furnished Property / Equipment

The USDA may provide space, access to computers, computer setup / maintenance, USDA standard applications and software for computers, LAN, internet access, parking, and electronic mail service necessary to perform the requirements of this SOW as approved by the COR.

### X. Travel

Travel may be required. All travel shall be conducted in accordance with the Federal Travel Regulations. Travel shall not be calculated based on the location of the contractor's staff home, but by the business address of the company.

# EXHIBIT 2

**USDA Privilege Log**

*Joey D. Gonzalez Ramos v. ADR Vantage, Inc.*

**Case No. 18-cv-01690 (APM)**

| | |
|---|---|
| Key: | ACP (Attorney Client Privilege) |
| | DPP (Deliberative Process Privilege) |
| | Defendant-ADR (ADR Vantage, Inc.) |
| | USDA-ARS (U.S. Department of Agriculture, Agricultural Research Service) |
| | SHRS (USDA-ARS Subtropical Horticultural Research Station) |
| | USDA-OGC (U.S. Department of Agriculture, Office of the General Counsel) |
| | OGC-Attorney Masker (USDA-OGC Senior Attorney Stephanie Masker) |

| Description of Document | Privilege | Privileged Information | Basis for Application of Privilege | Bates Nos. (prefix ADR_USDA) |
|---|---|---|---|---|
| Working drafts of the Climate Assessment Report containing markups and editorial comments made by USDA-ARS and OGC Attorney Masker that were provided to Defendant-ADR | DPP ACP | Withheld in full: the entire drafts of the Climate Assessment Report, including but not limited to the specific edits and comments made by USDA-ARS and USDA-OGC. | Deliberative Process Privilege<br>The working drafts are deliberative because they consist of opinions, assessments, and recommendations as to what information the final Climate Assessment Report should include, and as such reflect the personal opinions of the individuals who drafted the Climate Assessment Report, as well as those that provided the comments and edits.<br><br>The working drafts are pre-decisional because they precede both the final draft of the Climate Assessment Report as well as decision-making by USDA-ARS leadership on how to address the work environment at SHRS.<br><br>The release of the information could have a chilling effect on the discussions between USDA-ARS management and employees in the future, | 0451-0513 |

1

| Description of Document | Privilege | Privileged Information | Basis for Application of Privilege | Bates Nos. (prefix ADR_USDA) |
|---|---|---|---|---|
| | | | discouraging a frank and open dialogue between management and USDA employees.  The release of the information could also have a chilling effect on discussions between USDA employees and entities in a consultation relationship with USDA.<br><br>Attorney-Client Privilege<br>The working drafts of the Climate Assessment Report were provided to OGC-Attorney Masker in confidence by Defendant-ADR so that Masker could provide legal assistance as counsel for USDA-ARS.  OGC-Attorney Masker reviewed the drafts and, within the drafts, provided edits and comments reflecting her legal advice.  OGC Attorney Masker's edits and comments, contained within the drafts, were provided to Defendant-ADR in confidence in its capacity as a consultant/contractor of USDA-ARS. | |
| Working drafts of the questionnaire Defendant-ADR prepared in conjunction with conducting the Climate Assessment, containing markups and editorial comments made by USDA-ARS and OGC-Attorney Masker that were | DPP ACP | Withheld in full: the entire draft of the questionnaire as well as the specific edits and comments made by USDA-ARS and USDA-OGC. | Deliberative Process Privilege<br>The draft version of the of the questionnaire is deliberative because it consists of opinions, assessments, and recommendations as to what questions Defendant-ADR would ask of USDA employees.  Further, the questionnaire was being used in conjunction with the Climate Assessment which, in and of itself is a decision-making tool for USDA-ARS leadership to enable USDA-ARS leadership to identify factors contributing to employee complaints of harassment and a hostile | 0447-0450 |

| Description of Document | Privilege | Privileged Information | Basis for Application of Privilege | Bates Nos. (prefix ADR_USDA) |
|---|---|---|---|---|
| provided to Defendant-ADR | | | work environment at SHRS, and to help USDA-ARS leadership understand the state of concerns held by SRHS employees including what improvements could be made, and obtain recommendations in conjunction with their decision-making on how to address the work environment at SHRS.<br><br>The draft questionnaire is pre-decisional because it precedes both the questions asked of interviewees during the Climate Assessment, as well as decision-making by USDA-ARS leadership on how to address the work environment at SHRS.<br><br>The release of the information could have a chilling effect on the discussions between USDA-ARS management and employees in the future, discouraging a frank and open dialogue between management and USDA employees.  The release of the information could also have a chilling effect on discussions between USDA employees and entities in a consultation relationship with USDA.<br><br>Attorney-Client Privilege<br>The draft of the questionnaire was provided to OGC-Attorney Masker in confidence by Defendant-ADR so that Masker could provide legal assistance as counsel for USDA-ARS. OGC-Attorney Masker reviewed the draft and, within the draft, provided edits and comments reflecting her legal advice.  OGC Attorney Masker's edits and comments, contained within the draft, were provided to Defendant-ADR in | |

| Description of Document | Privilege | Privileged Information | Basis for Application of Privilege | Bates Nos. (prefix ADR_USDA) |
|---|---|---|---|---|
| | | | confidence in its capacity as a consultant/contractor of USDA-ARS. | |
| Internal Excel spreadsheet of Defendant-ADR consisting of USDA employees' responses to questions the asked by Defendant-ADR during the Climate Assessment and the questions Defendant-ADR asked the interviewees | DPP | Withheld in full: the entire spreadsheet consists of the questions asked by Defendant-ADR, the responses provided by the USDA employees to the questions, and information that identifies the USDA employees that were interviewed. | Deliberative Process Privilege<br>Responses from USDA employees contained in the Excel spreadsheet are deliberative in that they consist of opinions and assessments of the work atmosphere at USDA and recommendations on how the work environment could be improved.<br><br>The specific questions contained in the Excel spreadsheet that Defendant-ADR asked during the interviews are deliberative in that they are part of the give and take of the deliberative process. The questions themselves reflect Defendant-ADR's opinion as to areas of concerns to focus on during the Climate Assessment as well as Defendant-ADR's opinion as to what was important to know in order for Defendant-ADR to provide recommendations to USDA-ARS leadership on ways to improve the work environment at SHRS.<br><br>The release of the questions and responses could have a chilling effect on the discussions between USDA-ARS management and employees in the future, discouraging a frank and open dialogue between management, or a contractor hired by management, and employees. The release of the questions and responses could also have a chilling effect on discussions between USDA employees and entities in a consultation relationship with USDA. | 0243-0446 |

| Description of Document | Privilege | Privileged Information | Basis for Application of Privilege | Bates Nos. (prefix ADR_USDA) |
|---|---|---|---|---|
| | | | Disclosure of information within the Excel spreadsheet that identifies interviewees could have a chilling effect on the discussions between USDA-ARS management and USDA employees in the future, discouraging a frank and open dialogue between management and employees.  The release of the information could also have a chilling effect on discussions between USDA employees and entities/persons in a consultation relationship with USDA. | |
| Internal spreadsheet of Defendant-ADR consisting of the names of USDA employees at SHRS to be interviewed by Defendant-ADR in the Climate Assessment and also containing the USDA employees' job titles, work email addresses and work phone numbers of these employees. | DPP | Withheld in full: the spreadsheet consists of the names of USDA employees at SHRS to be interviewed by Defendant-ADR as well as the USDA employees' job titles, work email addresses and work phone numbers of these USDA employees.  Pursuant to the DPP, USDA is withholding information identifying USDA employees interviewed by Defendant-ADR in conjunction with the Climate Assessment and/or USDA employees recommended by USDA | <u>Deliberative Process Privilege</u><br>Disclosure of information identifying USDA employees interviewed by Defendant-ADR in conjunction with the Climate Assessment could have a chilling effect on the discussions between USDA-ARS management and USDA employees in the future, discouraging a frank and open dialogue between management and employees. The release of the information could also have a chilling effect on discussions between USDA employees and entities/persons in a consultation relationship with USDA.  Likewise, the identity of USDA employees at SHRS that Defendant-ADR identified as potential interviewees in the Climate Assessment is also deliberative.  The information consists of Defendant-ADR's opinion as to what USDA employees Defendant-ADR may want to speak with at SHRS in conducting the Climate Assessment.  This opinion is | 0242 |

| Description of Document | Privilege | Privileged Information | Basis for Application of Privilege | Bates Nos. (prefix ADR_USDA) |
|---|---|---|---|---|
| | | to be interviewed by Defendant-ADR. | pre-decisional because it precedes any interviews conducted in conjunction with the Climate Assessment as well as decision-making by USDA-ARS leadership on how to address the work environment at SHRS. The release of the identity, or identifying information, of the potential interviewees could have a chilling effect on the discussions between USDA-ARS management and USDA employees in the future, discouraging a frank and open dialogue between management and employees. The release of the information could also have a chilling effect on discussions between USDA employees and entities/persons in a consultation relationship with USDA. | |
| Email dated Jan. 25, 2017 from ADR Vantage, Inc. President to OGC-Attorney Masker and USDA-ARS Southeast Area Director Archie Tucker, cc: ADR Vantage, Inc. employee Rick Buccheri; Subject: Final Draft | ACP | Produced with redactions: this email is only partially withheld. Pursuant to the ACP, USDA is withholding only questions and information that Defendant-ADR submitted to OGC-Attorney Masker in conjunction with Defendant-ADR seeking legal advice from Masker. | Attorney-Client Privilege Redactions were made to protect communications between OGC-Attorney Masker and Defendant-ADR in conjunction with legal advice Defendant-ADR sought from USDA-OGC Attorney Masker arising directly out of Defendant-ADR working as consultant/contractor of USDA-ARS in conducting the Climate Assessment and preparing the Climate Assessment Report. Defendant-ADR made the communication to USDA-OGC attorney in confidence in its capacity as a consultant/contractor of USDA-ARS. | 0004 |
| Email chain dated Feb. 6, 2017 between ADR Vantage, Inc. President | ACP | Produced with redactions: this email is only partially withheld. Pursuant to the | Attorney-Client Privilege Redactions were made to protect communications between OGC-Attorney Masker and Defendant-ADR | 0019 |

6

| Description of Document | Privilege | Privileged Information | Basis for Application of Privilege | Bates Nos. (prefix ADR_USDA) |
|---|---|---|---|---|
| and OGC-Attorney Masker, cc: USDA-ARS Southeast Area Director Archie Tucker and USDA-OGC Associate General Counsel Tami Trost | | ACP, USDA is withholding only: 1) a question and information that Defendant-ADR submitted to OGC-Attorney Masker in conjunction with Defendant-ADR seeking legal advice from Masker; 2) the subject line of the email because release of the information in the subject line would discloses the legal issue for which Defendant-ADR was seeking to OGC-Attorney Masker's legal advice; and 3) Masker's responsive legal advice to Defendant-ADR | in conjunction with legal advice Defendant-ADR sought from USDA-OGC Attorney Masker arising directly out of Defendant-ADR working as consultant/contractor of USDA-ARS in conducting the Climate Assessment and preparing the Climate Assessment Report.  The communications were made in made confidence in Defendant-ADR's capacity as a consultant/contractor of USDA-ARS. | |
| Emails dated Dec. 8, 2016 through December 21, 2016 exchanged solely between employees of Defendant-ADR and employees of USDA-ARS and/or USDA-OGC | DPP | Produced with redactions: these emails are only partially withheld. Pursuant to the DPP, USDA is withholding only information identifying USDA employees interviewed by Defendant-ADR in conjunction with the | Deliberative Process Privilege<br>Disclosure of information identifying USDA employees interviewed by Defendant-ADR in conjunction with the Climate Assessment could have a chilling effect on the discussions between USDA-ARS management and USDA employees in the future, discouraging a frank and open dialogue between management and employees. The release of the information could also have a chilling effect on discussions between USDA | 0016, 0017, 0030, 0037, 0038, 0039, 0040, 0042, 0043, 0044, 0045, 0046, 0048, 0049, 0050, 0052, 0053, 0054, 0076, 0077, 0079, 0080, 0082, 0084, 086, 0088, 0090, |

7

| Description of Document | Privilege | Privileged Information | Basis for Application of Privilege | Bates Nos. (prefix ADR_USDA) |
|---|---|---|---|---|
| | | Climate Assessment and/or USDA employees recommended by USDA to be interviewed by Defendant-ADR. | employees and entities/persons in a consultation relationship with USDA.<br><br>Likewise, the identity of individuals that USDA recommended be interviewed for the Climate Assessment is also deliberative.  The recommendations are pre-decisional because they precede any interviews conducted in conjunction with the Climate Assessment as well as decision-making by USDA-ARS leadership on how to address the work environment at SHRS.  The release of the identity, or identifying information, of the individuals USDA recommended to be interviewed for the Climate Assessment could have a chilling effect on the discussions between USDA-ARS management and USDA employees in the future, discouraging a frank and open dialogue between management and employees.  The release of the information could also have a chilling effect on discussions between USDA employees and entities/persons in a consultation relationship with USDA. | 0091, 0093, 0097,0098, 0100, 0101, 0103 0104, 0130, 131, 0132, 0134, 0135 0136, 0212, 0213 |
| Internal emails of Defendant-ADR, dated December 8, 2016 through December 30, 2016, exchanged solely among employees of Defendant-ADR | DPP | Produced with redactions: these emails are only partially withheld. Pursuant to the DPP, USDA is withholding only information identifying USDA employees interviewed by Defendant-ADR in | <u>Deliberative Process Privilege</u><br>Disclosure of information identifying USDA employees interviewed by Defendant-ADR in conjunction with the Climate Assessment could have a chilling effect on the discussions between USDA-ARS management and USDA employees in the future, discouraging a frank and open dialogue between management and employees. The release of the information could also have a | 0057, 0062, 0141. 0148, 0149, 0152, 0173, 0188, 0195, 0199, 0202, 0205, 0208, 0216, 0218, 0222, 0223, 0227, 0228, 0238 |

| Description of Document | Privilege | Privileged Information | Basis for Application of Privilege | Bates Nos. (prefix ADR_USDA) |
|---|---|---|---|---|
| | | conjunction with the Climate Assessment and/or USDA employees recommended by USDA to be interviewed by Defendant-ADR. | chilling effect on discussions between USDA employees and entities/persons in a consultation relationship with USDA.<br><br>Likewise, the identity of individuals that USDA recommended be interviewed for the Climate Assessment is also deliberative.  The recommendations are pre-decisional because they precede any interviews conducted in conjunction with the Climate Assessment as well as decision-making by USDA-ARS leadership on how to address the work environment at SHRS.  The release of the identity, or identifying information, of the individuals USDA recommended to be interviewed for the Climate Assessment could have a chilling effect on the discussions between USDA-ARS management and USDA employees in the future, discouraging a frank and open dialogue between management and employees.  The release of the information could also have a chilling effect on discussions between USDA employees and entities/persons in a consultation relationship with USDA. | |

| Description of Document | Privilege | Privileged Information | Basis for Application of Privilege | Bates Nos. (prefix ADR_USDA) |
|---|---|---|---|---|
| Internal emails of Defendant-ADR, dated December 8, 2016, received from automated meeting scheduler mailer@doodle.com containing the identity of USDA employees scheduled to be interviewed by Defendant-ADR in conjunction with Climate Assessment. | DPP | These emails are only partially withheld. Pursuant to the DPP, USDA is withholding only information identifying USDA personnel scheduled to be interviewed by Defendant-ADR in conjunction with Climate Assessment. | Disclosure of information identifying USDA employees interviewed by Defendant-ADR in conjunction with the Climate Assessment could have a chilling effect on the discussions between USDA-ARS management and USDA employees in the future, discouraging a frank and open dialogue between management and employees. The release of the information could also have a chilling effect on discussions between USDA employees and entities/persons in a consultation relationship with USDA. | 0148-0149 |

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-24171-CIV-ALTONAGA/Goodman

JOEY D. GONZALEZ,

     Plaintiff,

v.

U.S. DEPARTMENT OF
AGRICULTURE,

     Defendant.

                         /

## ORDER

**THIS CAUSE** came before the Court on Defendant, the United States Department of
Agriculture's Motion for Summary Judgment [ECF No. 35], submitted contemporaneously with
its Statement of Undisputed Material Facts ("Defendant's SMF") [ECF No. 35-1] on June 19,
2018.  On July 10, 2018, Plaintiff, Joey D. Gonzalez, filed his Response in Opposition[1]
[ECF No. 38] and Statement of Material Facts ("Plaintiff's SMF") [ECF No. 38-13].  On July 25,
2018, the Agency filed a Reply [ECF No. 50], to which Plaintiff filed a Sur-Reply [ECF No. 55].
The Court has carefully considered the briefing and attached exhibits, additional written
submissions, the record, and applicable law.

---

[1] Plaintiff's Response included a "Motion to Strike Defendant's Exhibits." (Resp. 1; *see id.* 1–8).  The
Court denied Plaintiff's Motion to Strike (*see* Order [ECF No. 41]), but considers Plaintiff's arguments in
reviewing the present Motion.

CASE NO. 17-24171-CIV-ALTONAGA/Goodman

## I. BACKGROUND[2]

This is an action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, and the Privacy Act, *see* 5 U.S.C. § 552a, brought by Plaintiff against the Agency, his employer. Plaintiff is an Information Technology ("IT") Specialist at the Subtropical Horticulture Research Station ("SHRS") in the Agency's Agricultural Research Service ("ARS"). (*See* Deposition of Ricardo Goenaga ("Goenaga Deposition") [ECF No. 55-1] 189:14; *see also* Performance Improvement Plan ("PIP") Letter [ECF No. 38-5] 1). Beginning on January 12, 2017, Plaintiff was placed under the supervision of then-Acting Research Leader, Dr. Harmed Abbas. (*See* Second Declaration of Kathleen Hall [ECF No. 50-1] ¶ 3; *see also* PIP Letter 1). On July 2017, Ricardo Goenaga became the Acting Research Leader and Plaintiff's supervisor. (*See* Declaration of Ricardo Goenaga ("Goenaga Declaration") [ECF No. 50-2] ¶ 5).

Plaintiff served as union president of the National Federation of Federal Employees' ("NFFE['s]") Local 1752. (*See* November 9, 2016 Letter [ECF No. 38-8] 1). On April 20, 2017, NFFE Representative, Elizabeth Pittaluga, sent an e-mail to Dr. Abbas stating NFFE no longer "recognize[d] Mr. Gonzale[z] as President of [Local]1752" because he "[wa]s not a dues paying member of this local and as such c[ould] not hold any office" in the union. (April 20, 2017 E-mail from Pittaluga [ECF No. 50-1] 000005 (alterations added)).

### A.    The Climate Assessment Report

In December 2016, ADR Vantage, a consulting firm specializing in organizational

---

[2] Plaintiff states he "requires discovery to be able to respond" to facts the Agency provides in Defendant's SMF. (Pl's SMF ¶¶ 14–15, 17). While Plaintiff includes his Declaration as part of his Response (*see* Resp. 24–26), the Declaration does not address the issue of discovery; explain why he "cannot present facts essential to justify [his] opposition" without discovery, Fed. R. Civ. P. 56(d) (alteration added); or request the Court defer considering the Motion or allow time for further discovery under Rule 56(d). Furthermore, the deadline to complete discovery has long passed. (*See* Order Setting Trial and Pre-Trial Schedule [ECF No. 27] 2). For these reasons, the Court resolves the Motion on the basis of the evidence presented with the parties' statements of material facts and attached exhibits.

CASE NO. 17-24171-CIV-ALTONAGA/Goodman

effectiveness, spent three days on site at the SHRS interviewing staff and managers, including Dr. Abbas and the Agency's Human Resources Specialist Supervisor for Labor Relations, Kathleen Hall. (*See* Def.'s SMF ¶ 2 n.1; *see also* Climate Assessment Report [ECF No. 42-1] 000326). In February 2017, ADR prepared a Climate Assessment Report for the Agency based on the December interviews, questionnaires, and other conversations with Agency staff. (*See id.* 000328–29). On February 2, 2017, ADR provided the Agency with the Climate Assessment Report. (*See* Declaration of Hillary Clark [ECF No. 50-3] ¶ 3).

On February 22, 2017, Ms. Pittaluga visited the SHRS, in Miami, Florida. (*See* Def.'s SMF ¶ 14 (undisputed)). Ms. Hall provided Ms. Pittaluga a copy of the Climate Assessment Report before Ms. Pittaluga's visit. (*See id.* ¶¶ 1, 15 (undisputed)). Upon receiving the Climate Assessment Report, Ms. Pittaluga informed Ms. Hall the Climate Assessment Report was very helpful, and that she would not disclose or discuss the information or content with others. (*See id.* ¶ 16 (undisputed)).

Ms. Hall believed Ms. Pittaluga had a right and duty to know about personnel issues at the SHRS, including the issues set forth in the Climate Assessment Report when she shared it with Ms. Pittaluga. (*See id.* ¶ 17 (citing Declaration of Kathleen Hall ("Hall Declaration") ¶ 9)). Ms. Hall also believed Ms. Pittaluga had a right to view the Climate Assessment Report because of Ms. Pittaluga's position as an NFFE representative of employees at the SHRS, and because she would be representing the interests of those same employees while meeting with Ms. Hall and SHRS management during her February 22, 2017 visit to the facility. (*See id.* ¶¶ 15, 17 (citing Hall Decl. ¶ 9)).

**B.    Climate Assessment Report FOIA Request**

On April 15, 2017, Plaintiff submitted a Climate Assessment Report FOIA Request to the

CASE NO. 17-24171-CIV-ALTONAGA/Goodman

Agency seeking information regarding the results of the Climate Assessment, among other topics. (*See id.* ¶ 1 (undisputed)). The Agency received the Climate Assessment Report FOIA Request on April 17, 2017 and assigned it a FOIA number — FOIA No. 2017-REE-03716-F. (*See id.* ¶ 2 (undisputed)). On July 14, 2017, the Agency responded to the Climate Assessment Report FOIA Request, providing Plaintiff with a redacted copy of the Climate Assessment Report. (*See id.* ¶ 3 (undisputed)). The Agency informed Plaintiff about the redactions, stating they were made pursuant to FOIA Exemptions 5[3] and 6.[4] (*See id.* (undisputed)). Redactions in the Climate Assessment Report were done using text overlays that indicated the applicable FOIA exemption for each redaction. (*See id.* (undisputed)).

On September 13, 2017, Plaintiff filed an administrative appeal of the Agency's response to the Climate Assessment Report FOIA Request. (*See id.* ¶ 4 (undisputed)). The appeal was assigned FOIA No. 2017-REE-00338-A. (*See id.* (undisputed)). Plaintiff's administrative appeal raised one issue: whether the Climate Assessment Report given to Plaintiff with the Agency's July 14, 2017 response was correctly redacted under Exemptions 5 and 6. (*See id.* (undisputed)). On October 20, 2017, the Agency responded to the administrative appeal, providing Plaintiff a copy of the Climate Assessment Report wherein no information was redacted under Exemption 5, and less information was redacted under Exemption 6. (*See id.* ¶¶ 5–6 (citing Redacted Report [ECF No. 35-7]) (undisputed)). The Agency attaches a *Vaughn*

---

[3] FOIA Exemption 5 covers "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." 5 U.S.C. § 552(b)(5).

[4] FOIA Exemption 6 requires agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6).

index[5] to the present Motion describing the specific information redacted under Exemption 6 from each page of the Climate Assessment Report.  (*See id.* (citing Declaration of Janice Boarman ("Boarman Declaration") [ECF No. 35-2] ¶ 6; *Vaughn* Index [ECF No. 35-8] 000059–69)).

On July 12, 2018, Plaintiff filed a Notice [ECF No. 42] clarifying he obtained an unredacted copy of the Climate Assessment Report as part of a "Report of Investigation for complaints ARS-2016-00961 and ARS-2017-00122 currently before the Equal Employment Opportunity Commission." (*Id.* 1 n.1; *see also* Resp. 2).

### C.   Emails FOIA Request

On June 28, 2017, Plaintiff submitted a FOIA request to the Agency (hereinafter the "Emails FOIA Request"), seeking all emails between Ms. Pittaluga and anyone at the Agency. (*See* Def.'s SMF ¶ 7 (undisputed)).  The Agency received the Emails FOIA Request on June 29, 2017, and assigned it FOIA number 2017-REE-05254-F. (*See id.* (undisputed)).  On August 16, 2017, in response to the Emails FOIA Request, the Agency provided Plaintiff 78 pages of responsive emails. (*See id.* ¶ 8 (undisputed)).  The Agency redacted certain information in the emails pursuant to Exemption 6. (*See id.* (undisputed)).  Exemption 6 was the only FOIA exemption applied to any of the emails. (*See id.* (undisputed)).

On September 15, 2017, Plaintiff filed an administrative appeal to the Agency's response to the Emails FOIA Request. (*See id.* ¶ 9 (undisputed)).  Plaintiff's administrative appeal raised one issue: whether the information in Ms. Pittaluga's emails was properly redacted under Exemption 6. (*See id.* (undisputed)).  On October 20, 2017, the Agency responded to Plaintiff's administrative appeal, withdrawing Exemption 6 redactions from 9 of the 16 pages that had

---

[5] A *Vaughn* index lists the redactions made by an agency along with a detailed justification for the agency's redaction. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

CASE NO. 17-24171-CIV-ALTONAGA/Goodman

previously been redacted. (*See id.* ¶¶ 11–12 (undisputed)). The Agency also informed Plaintiff

that one email exchange — between Ms. Pittaluga in her role as a NFFE union representative

and an ARS employee — was not an Agency record under the FOIA. (*See id.* ¶ 12

(undisputed)). The *Vaughn* index attached to the present Motion describes the specific

information redacted pursuant to Exemption 6 from the emails in question. (*See id.* (citing

Boarman Decl. ¶ 13; *Vaughn* Index 000069–74)).

### D.   Plaintiff's Employment Issues

On November 7, 2017, Dr. Goenaga, Acting Research Leader at the SHRS, proposed to

suspend Plaintiff without pay for 14 calendar days for "conduct prejudicial to the best interests of

the service." (Suspension Letter [ECF No. 38-6] 1 (emphasis omitted)). Plaintiff responded to

the proposed action on December 5, 2017. (*See id.*). Associate Area Director, Ellen Harris, sent

Plaintiff a letter dated January 5, 2018 informing him he would be suspended for 14 calendar

days without pay effective January 14, 2018 through January 27, 2018. (*See id.* 1–3). Ms.

Harris referenced an interaction between Plaintiff and another employee, as well as a formal

investigation determining Plaintiff engaged in discriminatory harassment when he used

inappropriate language in an exchange with that other employee, as the bases for the suspension.

(*See id.* 1–2).

Additionally, on November 29, 2017, Dr. Goenaga notified Plaintiff he was being placed

on a Performance Improvement Plan ("PIP") to improve "critical elements" of his performance

Dr. Goenaga found "unacceptable." (PIP Letter 1; *see also* Goenaga Decl. ¶ 7). Specifically, Dr.

Goenaga found Plaintiff needed to improve in the areas of (1) technical support and customer

service; and (2) teamwork, communication, equal employment and civil rights. (*See* PIP Letter

1–4). Plaintiff was given a list of ways to improve his performance during a 90-day period

beginning November 29, 2017. (*See id.* 1).

### E.     Complaint

On November 14, 2017, Plaintiff filed his Complaint [ECF No. 1] seeking declaratory and injunctive relief under the FOIA and the Privacy Act, as well as actual damages under 5 U.S.C. section 552a(g)(4)(A), attorneys' fees and costs. (*See generally id.*).  In his Complaint, Plaintiff challenges the Agency's refusal to release unredacted documents under Exemption 5 ("Count I"), and Exemption 6 ("Count II").  (*See id.* 7–9).  Plaintiff also alleges the Agency did not follow proper FOIA procedures because it failed to provide sufficient specificity to permit understanding of its rationale for withholding the responsive records for both FOIA requests ("Count III").  (*See id.* 9–10).  Finally, Plaintiff alleges the Agency improperly disclosed information protected by the Privacy Act, and requests the Court enjoin the Agency from further disclosing Plaintiff's private information ("Count IV").[6]  (*See id.* 10–12).

## II.  LEGAL STANDARDS

### A.     Summary Judgment Standard

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See id.*; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[6] In Count IV, Plaintiff also requests the Court recommend criminal prosecution of Ms. Hall.  (*See* Compl. 11).  The prosecution of criminal actions in the federal courts is a matter within the sole discretion of the United States Attorney General and appointed United States Attorneys.

CASE NO. 17-24171-CIV-ALTONAGA/Goodman

At summary judgment, the moving party bears the initial burden of identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations and internal quotation marks omitted)). If "the moving party fails to demonstrate the absence of a genuine issue of material fact, the motion should be denied." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (citations omitted).

### B.   The FOIA

"Congress enacted FOIA to enable the public to have access to government information that is unnecessarily shielded from public view." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1244 (11th Cir. 2008) (internal quotation marks and citation omitted). Accordingly, "the records at issue . . . are presumed to be subject to disclosure unless [the agency] affirmatively establishes that the requested records fall into one of FOIA's exemptions." *Office of Capital Collateral Counsel, N. Region of Fla. ex rel. Mordenti v. Dep't of Justice*, 331 F.3d 799, 802 (11th Cir. 2003) (alteration added; citation omitted); *see also Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 26 (D.D.C. 2013) ("It is clear that 'disclosure, not secrecy, is the dominant objective of the [FOIA].'" (alteration added; citation omitted)).

The Government may invoke nine statutory exemptions to withhold records from public disclosure. *See* 5 U.S.C. §§ 552(b)(1)–(9); *see also Chilivis v. S.E.C.*, 673 F.2d 1205, 1210–11 (11th Cir. 1982) ("[R]ecords and documents held by federal agencies are presumed subject to disclosure unless the agency can establish that the material falls into one of the FOIA's nine exemptions." (alteration added; citations omitted)). The FOIA "vests jurisdiction in federal

district courts to enjoin an 'agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)).

FOIA cases are generally resolved on motions for summary judgment. *See id.* "The relevant question on summary judgment, viewed in the light most favorable to the person making the FOIA request, is whether an agency conducted a reasonable and adequate search 'calculated to uncover all relevant documents' and whether any withholdings were justified." *Guidry v. Comey*, No. 4:15CV23-RH/CAS, 2016 WL 1068611, at *3 (N.D. Fla. Feb. 4, 2016), *report and recommendation adopted*, No. 4:15CV23-RH/CAS, 2016 WL 1069669 (N.D. Fla. Mar. 17, 2016) (citations omitted).

### C. Privacy Act

The Privacy Act "governs the government's collection and dissemination of information and maintenance of its records and generally allows individuals to gain access to government records on them and to request correction of inaccurate records." *Corbett v. Transp. Sec. Admin.*, 968 F. Supp. 2d 1171, 1186 (S.D. Fla. 2012), *aff'd*, 568 F. App'x 690 (11th Cir. 2014) (alteration, internal quotation marks and citation omitted). "The Privacy Act imposed upon federal agencies an array of record-keeping obligations to prevent unauthorized disclosures of confidential information. It also created a private right of action, enabling citizens to sue when Privacy Act violations occur." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) (citing 5 U.S.C. § 552a(g)(1)). "Specifically, the Privacy Act contains a catch-all provision allowing an individual to bring a civil suit when an agency 'fails to comply' with the Privacy Act 'in such a way as to

CASE NO. 17-24171-CIV-ALTONAGA/Goodman

have an adverse effect on an individual.'" *Id.* (quoting 5 U.S.C. § 522a(g)(1)(D) (footnote call number omitted)).

### III. ANALYSIS

Plaintiff argues the Agency violated the FOIA by improperly redacting the Climate Assessment Report (*see* Resp. 8–10), and violated the Privacy Act by disclosing the Climate Assessment Report (*see id.* 10–23; *see generally* Sur-Reply). The Agency argues summary judgment is appropriate as to all four Counts of the Complaint. (*See generally* Mot.; Reply). The Court addresses the parties' arguments as to each count below.

#### A. Count I

As to Count I, the Agency argues Plaintiff's claim alleging improper invocation of Exemption 5 fails as a matter of law because no Exemption 5 redactions are at issue. (*See* Mot. 2). On October 20, 2017, the Agency withdrew all Exemption 5 redactions of the Climate Assessment Report following Plaintiff's administrative appeal. (*See id.* (citations omitted); Def.'s SMF ¶ 5 (undisputed)). Because the Agency withdrew the Exemption 5 redactions to the Climate Assessment Report on administrative appeal, the issue is indeed moot. *See Ocean Conservancy v. Evans*, 260 F. Supp. 2d 1162, 1189 (M.D. Fla. 2003) ("The Court agrees that Plaintiffs' FOIA claims concerning the records already disclosed are moot."). None of the emails the Agency shared with Plaintiff in response to the Emails FOIA Request contain Exemption 5 redactions. (*See* Mot. 2 (citations omitted); Def.'s SMF ¶ 5 (undisputed)). Plaintiff does not allege any other improper redactions under Exemption 5. (*See* Compl. 7–8). Therefore, Defendant is entitled to summary judgment on Count I.

CASE NO. 17-24171-CIV-ALTONAGA/Goodman

### B. Count II

As to Count II, the Agency argues it properly redacted information in the Climate Assessment Report and the Emails under Exemption 6. (*See* Mot. 3–10). Plaintiff disagrees, asserting the Agency cannot maintain its position that the Exemption 6 redactions are proper, while also arguing the Agency did not violate the Privacy Act by disclosing the Climate Assessment Report to Ms. Pittaluga. (*See* Resp. 8–9). Plaintiff also states the Court must first address whether disclosure of the Climate Assessment Report was a violation of the Privacy Act before assessing whether the redactions under Exemption 6 are proper. (*See id.* 9). Not so.

Because Plaintiff received the unredacted Climate Assessment Report (*see id.* 2; *see generally* Notice), and in Count II requests injunctive and declaratory relief (*see* Compl. 9), Plaintiff's request in Count II is also moot. *See Brown v. U.S. Dep't of Justice*, 169 F. App'x 537, 539–40 (11th Cir. 2006) ("[A]s [plaintiff] has received the documents, the issue has become moot and [plaintiff] is not entitled to injunctive relief under the FOIA." (alterations added; citation omitted; footnote call number omitted)); *see also Lovell v. Alderete*, 630 F.2d 428, 430–31 (5th Cir. 1980). Thus, the Court does not address whether the Agency's redactions to the Climate Assessment Report were properly made under Exemption 6.

While Plaintiff makes arguments in his Response as to the redactions of the Climate Assessment Report under Exemption 6 (*see* Resp. 8–10), he does not address the redaction of the Emails pursuant to Exemption 6 (*see generally id.*; Sur-Reply). The Court therefore treats Count II, as it relates to the Emails FOIA Request, as abandoned. *See Cavicchi v. Chertoff ex rel. U.S. Bureau of Customs and Border Prot.*, No. 06-21406-CIV, 2008 WL 239157, at *10 (S.D. Fla. Jan. 28, 2008), *aff'd sub nom.*, *Cavicchi v. Sec'y of Homeland Sec.*, 316 F. App'x 873 (11th Cir. 2008); *see also Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d

CASE NO. 17-24171-CIV-ALTONAGA/Goodman

1563, 1568 (11th Cir. 1994) (citation omitted) (holding claims not raised in summary judgment or pressed in opposition to summary judgment are properly treated as abandoned). Consequently, summary judgment as to Count II is granted.

### C. Count III

With regard to Count III, the Agency argues Plaintiff fails to provide sufficient information to state a claim for failure to follow FOIA procedures. (*See* Mot. 10–11 (citing Compl. 9)). The Court agrees. Under the FOIA, an agency's response is sufficient when it contains "the agency's determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse." *Sauer, Inc. v. Nat'l Aeronautics & Space Admin.*, No. 6:11-cv-926-Orl-31DAB, 2011 WL 3687862, at *2 (M.D. Fla. Aug. 23, 2011) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 65 (D.C. Cir. 1990)).

The Agency responded to both the Climate Assessment Report FOIA Request and the Emails FOIA Request (*see* Def.'s SMF ¶¶ 3, 8 (undisputed)); the response letters provided Plaintiff notice of his right to appeal (*see* Response to Climate Assessment Report FOIA Request [ECF No. 35-4]; *see also* Response to Emails FOIA Request [ECF No. 35-10]), and set forth the applicable FOIA exemptions that applied to the redacted information (*see* Def.'s SMF ¶¶ 3, 8 (undisputed)). Furthermore, Plaintiff was able to appeal the Agency's determinations upon receiving the response letters (*see* Climate Assessment Report FOIA Administrative Appeal [ECF No. 35-5]; *see also* Emails FOIA Request Administrative Appeal [ECF No. 35-11]); had his administrative appeals granted in part (*see* Response to Climate Assessment Report FOIA Administrative Appeal [ECF No. 35-6]; *see also* Response to Emails FOIA Administrative Appeal [ECF No. 35-12]); and received explanations for the Agency's remaining redactions

CASE NO. 17-24171-CIV-ALTONAGA/Goodman

under Exemption 6 (*see* Resp. to Climate Assessment Report FOIA Administrative Appeal; *see also* Resp. to Emails FOIA Administrative Appeal).

Nothing in Plaintiff's Response, Plaintiff's SMF, or Sur-Reply indicates the Agency failed to follow proper FOIA procedures. (*See generally* Resp; Pl's SMF; Sur-Reply). Finally, Plaintiff does not address the Agency's arguments as to Count III (*see generally* Resp.), effectively abandoning Count III. *See Clark v. City of Atlanta, Ga.*, 544 F. App'x 848, 855 (11th Cir. 2013) (citation omitted). Thus, summary judgment as to Count III is granted.

### D. Count IV

With regard to Count IV, the Agency argues Plaintiff fails to establish a case under the Privacy Act as it relates to Ms. Hall's disclosure of the Climate Assessment Report to Ms. Pittaluga in February 2017 (*see* Mot. 11–16), and Dr. Deborah Brennan's alleged disclosure of information in the Climate Assessment Report at a May 2017 ARS staff meeting (*see generally* Reply). Plaintiff disagrees, arguing the evidence raises genuine issues of fact as to whether Ms. Hall's and Dr. Brennan's disclosures constitute Privacy Act violations. (*See* Resp. 10–22; Sur-Reply 6–9). To show an agency violated the Privacy Act, a plaintiff must demonstrate: "(1) the government failed to fulfill its record-keeping obligation; (2) the agency acted intentionally or willfully in failing to perform its obligation; (3) the failure proximately caused an adverse effect on an individual; and (4) that individual suffered actual damages." *Speaker*, 623 F.3d at 1381 (citation omitted).

As to the February 2017 disclosure, it is undisputed Ms. Hall disclosed the Climate Assessment Report to Ms. Pittaluga. (*See* Def.'s SMF ¶ 15 (undisputed)). The Agency states the disclosure did not violate the Privacy Act because: (1) the Climate Assessment Report is not a record under the Privacy Act (*see* Mot. 12–13); (2) Ms. Hall did not act intentionally or willfully

CASE NO. 17-24171-CIV-ALTONAGA/Goodman

(*see id.* 13–15); (3) there is no causal connection between Ms. Hall's disclosure and any adverse effect on Plaintiff (*see id.* 15–16); and (4) Plaintiff fails to show he suffered actual damages (*see id.* 16). Plaintiff disagrees, arguing: (1) the Climate Assessment Report is part of the Agency's system of records (*see* Resp. 10–14); (2) Ms. Hall acted willfully (*see id.* 15–19); (3) her disclosure of the Climate Assessment Report resulted in Plaintiff being dismissed as Local 1752's union president (*see id.* 21–22); and Plaintiff suffered actual damages (*see id.* 22).

The Court considers whether Plaintiff adequately establishes he suffered actual damages as a result of Ms. Hall's disclosure of the Climate Assessment Report to Ms. Pittaluga. *See Corbett*, 568 F. App'x at 702 ("We need not evaluate whether [plaintiff] stated a Privacy Act violation because he alleged no pecuniary loss or actual damages as a result of a Privacy Act violation." (alteration added)). A claim under the Privacy Act requires a plaintiff plead and prove actual damages, that is, pecuniary loss, as opposed to "generalized mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries." *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 872–73 (11th Cir. 2009) (internal quotation marks and citation omitted)); *see also F.A.A. v. Cooper*, 566 U.S. 284, 299 (2012) ("adopt[ing] an interpretation of 'actual damages' limited to proven pecuniary or economic harm" (alteration added)).

Plaintiff contends Ms. Hall's disclosure caused NFFE to remove him as the NFFE's Local 1752 union president in April 2017. (*See* Resp. 21). Plaintiff does not show, however, that his removal from the NFFE caused him to suffer actual damages. (*See generally* Compl.; Resp.; Sur-Reply). The only argument Plaintiff makes as to actual damages refers to "the imposition of personnel and disciplinary actions by his supervisor in November 2017 and January 2018" (Resp. 22), which he states was caused by Dr. Brennan's alleged disclosure — not Ms. Hall's (*see id.* 21; Sur-Reply 3–9). Because Plaintiff fails to present any evidence of

pecuniary loss as it relates to Ms. Hall's disclosure of the Climate Assessment Report and his removal as NFFE's Local 1752 president, Count IV fails as a matter of law. *See Fanin*, 572 F.3d at 875. As such, the Court does not address the parties' arguments regarding the other Privacy Act elements.

With respect to Dr. Brennan's alleged May 2017 disclosure, Plaintiff fails to establish the disclosure even occurred. The Court does not consider Plaintiff's assertions that Dr. Brennan disclosed the Climate Assessment Report at a May 2017 ARS staff meeting (*see* Resp. 15–16, 20–22; Sur-Reply 4), or Dr. Goenaga's brief mention of the May 2017 meeting he did not attend (*see* Goenaga Decl. ¶¶ 6, 8), because neither party provides admissible evidence related to the meeting or the alleged disclosure. *See* Fed. R. Civ. P. 56(e); *see also Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 857 (11th Cir. 2006) ("Rule 56(e) requires affidavits, supporting or opposing summary judgment, to be made on personal knowledge and to set forth facts that would be admissible evidence." (citation omitted)). Because there is no evidence Dr. Brennan disclosed any information in the Climate Assessment Report, Plaintiff cannot establish the Agency failed to fulfill its record-keeping obligation. *See Speaker*, 623 F.3d at 1381. Thus, the Court grants summary judgment as to Count IV.

## IV. CONCLUSION

In accordance with the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant, the U.S. Department of Agriculture's Motion for Summary Judgment **[ECF No. 35]** is **GRANTED**. Final judgment will be entered by separate order. The Clerk of Court is instructed to **CLOSE** the case, and any pending motions are **DENIED** as moot.

CASE NO. 17-24171-CIV-ALTONAGA/Goodman

**DONE AND ORDERED** in Miami, Florida, this 28th day of August, 2018.

CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE

cc:    counsel of record