## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA CIVIL DIVISION

|  |  |
|---|---|
| JOEY D. GONZALEZ RAMOS, ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> ) <br> ADR VANTAGE, INC, ) <br> Defendant. ) <br> ) | Case No.: 1:18-cv-01690-APM <br> JURY TRIAL |

### JOINT STATUS REPORT REGARDING DISCOVERY

According to the Court's order of February 14, 2019 [DE 23], Plaintiff, Joey Gonzalez and Defendant, ADR VANTAGE, INC., ("ADR"), hereby submit this Joint Status Report Regarding Discovery.

**I. Plaintiff's Report**:

Plaintiff will first address Defendant's report and then provide his report regarding discovery. Plaintiff requests that; (1) the Court takes notice of certain uncalled statements or threats made by ADR (or its counsel) in the section entitled "Defendant's Report" and discussed in the following section. These includes that Plaintiff is being "monitored" by ADR and that Plaintiff is in a "pattern of litigation tactics …. against *anyone* who disagrees with or challenges him *in any way*."; and (2) the Court holds a hearing at its earliest convenience to determine these matters.

**A. Plaintiff's Response to Defendant's Report:**

"***Plaintiff's Actions Outside Of This Litigation***"

In this section Defendant threatens that "[Plaintiff's FOIA requests] will be dealt with in accordance with applicable laws and this Defendant is monitoring Plaintiff's actions insofar as

they relate to ADR."

According to ADR's Proposal attached to its Motion to Dismiss, [DE 4-1], "climate assessments have been a part of our core services offerings, and over the past two years, ADR Vantage has conducted multiple climate assessments that included concerns relating to hostile working environment." (*Id*. at 12). ADR claims that it conducted climate assessments for the Department of Energy in October 2016, the Federal Reserve Board in May 2016 and the Equal Employment Opportunity. (*Id*. at 12-13).

After ADR refused to provide these climate assessments through discovery, Plaintiff requested them through the Freedom of Information Act, as a matter of right and because they are relevant to the matters in this action. These documents may reveal the basis for the USDA's contract with ADR or whether there is any similarity between these assessments and the one in question. Defendant's *bravado* and alleged surveillance are an uncalled and ineffective effort to intimidate Plaintiff that should have no place in a court of law.

The threats continue in the next paragraph of this section where ADR claims that Plaintiff has "improper litigation motives" and later proceeds to instigate "judicial intervention." ADR hangs its hat in the statements made by Plaintiff that his goal in this litigation is to redress, reverse and punish ADR. Also, that he intends to expose ADR's actions to labor organization and its customers. Contrary to what ADR believes, these are not improper motives. Plaintiff cannot think of any legal action, civil or criminal, that does not contain an element of punishment, redress or reversal. Additionally, the instant complaint makes it perfectly clear that Plaintiff seeks punitive damages against ADR which is an appropriate remedy for its reckless or intentional actions.

If ADR was as concerned about not publishing, or at least investigating its defamatory

statements and accusations against Plaintiff, as it is concerned about what labor organizations, federal agencies and potential customers think of its actions, this litigation may have not seen the light of day. To its chagrin, ADR has already been exposed through this litigation, not only to its customers or labor organizations, but the public in general as the dockets in this action are public record.  Adding to this, the state of Florida and the District of Columbia have enacted anti-SLAPP[1] statutes that protect its citizen's rights to advocate for matters of public concern.

The fact that ADR charged $30,000, for falsely publishing in a survey that Plaintiff, a person with an unblemished record in the military and the civil service, committed crimes using as support the anonymous statements of employees under a criminal investigation by the Office of Inspector General ("OIG"), is a matter of public concern.

Similarly, the fact that for its lack of ethics, poor business practices and reckless disregard for the truth ADR could expose a federal agency to a potential lawsuit are also matters of public concern. Specially when the funds to foot the litigation for these agencies come directly from the taxpayers.  Accordingly, any attempt by ADR to silence Plaintiff through illegal surveillance or abuse of the judicial system, will be addressed through the proper channels, not through threats and innuendoes as ADR has chosen to do.

Finally, not surprisingly, ADR took the opportunity to smear and attack Plaintiff's character by accusing him of engaging in a "pattern of litigation tactics …. against *anyone* who disagrees with or challenges him *in any way*." (Emphasis added).

Plaintiff did not know about ADR's existence before it appeared one day in December 2016 at his place of work claiming that it was conducting a survey. Plaintiff did not participate in this survey, nor he had any idea of the defamatory and unsupported criminal accusations against

---

[1] Strategic Lawsuits Against Public Participation

him that would result from it. In sum, prior to this litigation Plaintiff had not interacted with ADR. Consequently, he could not have any *disagreement* with ADR, or its president Diane Lipsey. For the same reasons Plaintiff never had the opportunity to be *challenged* by ADR.

Although ADR, or its counsel John Murphy[2], are entitled to their opinion, this Court should know that Plaintiff "litigation tactics" are the result of a pattern of harassment and intimidation by the USDA for initiating a criminal investigation in his workplace by OIG. After the USDA learned of this investigation, it requested the assistance of Steven Brammer ("Brammer") and Stephanie Masker ("Masker"), both from the Office of General Counsel, to create a smear campaign against Plaintiff.  In other words, Plaintiff's legal actions against the USDA and its acolytes, such as ADR, are the consequences of the harassment, intimidation and retaliation he experienced from the USDA, not the other way around.

We suggest that this Court should reject ADR's self-victimization attempts. ADR is a corporation that secures millions of dollars a year[3] in federal contracts according the government website USASpending.gov. While Plaintiff has sat partially unemployed at his home for nearly 10 months, ADR has continued to generate government's contracts.

Clearly ADR is not the victims in this litigation. The balance of power remains on ADR which so far has demonstrated that it has enough resources to litigate this action and enough influence over the Government to prevent the truth from coming out.

### *"Plaintiff's Tax Returns"*

According to ADR, Plaintiff's "income, both past and present, is germane to Plaintiff's

---

[2] Plaintiff is unaware if it was ADR or Murphy who made the comment about Plaintiff's "litigation tactics."
[3] $3.5 million in 2015; $4.4 million in 2016 and 3.5 million in 2017. See
https://www.usaspending.gov/#/search/e30fbde9c6e4ac00541a638455f4ed56

claim for past and future lost wages." ADR requested Plaintiff's tax returns for 2015-2018. However, it does not explain to Plaintiff or this Court how Plaintiff's taxes from before and after the events in the instant complaint are relevant.

Plaintiff contend that his tax returns contain information regarding his spouse and daughter that is wholly irrelevant to the matters in the instant complaint. Any such information outside the scope of this lawsuit is irrelevant because there is no dispute that Plaintiff continued to work for the USDA until August 10, 2018, almost two years after the publication of the Climate Assessment. Plaintiff is also concerned by the continuing and secretive relationship between ADR and the USDA and the misrepresentations made by ADR's counsel throughout this litigation. Given the foregoing facts, including the showing of disdain against Plaintiff by the part of ADR, he is certain that even a protective order will not deter his information from being shared between ADR and the USDA, the same entities responsible for retaliating and defaming Plaintiff.

ADR already has access to Plaintiff's income without the need for Plaintiff's taxes, as this is public record. On the alternative Plaintiff offers to provide his W-2 for 2016 which equally reflects Plaintiff's income.

### "*Plaintiff's Health History / Personal Injury Claim*"

According to ADR "Plaintiff has refused to identify any of his prior / current treating health care providers, despite claiming mental and emotional distress in his Complaint."

Paragraph 65 in of the instant complaint states in relevant part:

> ADR intended to cause disturbance in the emotional tranquility of Plaintiff, so acute that harmful physical consequences might result, and were such that a reasonable person would find that they are reasonably likely to cause disturbance in the emotional tranquility of Plaintiff so acute and harmful physical consequence might result.

As shown in the preceding paragraph, ADR is attempting to justify its request by

mistakenly stating that Plaintiff has claimed *mental* distress. Should ADR conferred with Plaintiff about this request instead of involving this Court unnecessarily, it would have learned that Plaintiff did not visit any medical professional as a result of ADR's defamatory comments and accusations, therefore there is no medical documentation to provide.

Plaintiff expects to prove his damages regarding IIED through witness' testimony, and obviously without the need of medical documentation. See *Harris v. United States VA*, 414 U.S. App. D.C. 72, 82, 776 F.3d 907, 917 (2015) ("[w]hile tort law historically required some physical manifestation or symptom of the alleged emotional distress as a condition for recovery, current D.C. law allows an action for intentional infliction [of emotional distress to] be made out even in the absence of physical injury or impact."). (Internal quotations omitted).

Finally, and as previously stated, Plaintiff is concerned by the continuing and secretive relationship between ADR and the USDA and believes that a protective order will not detain this information from being shared between ADR and the USDA.

### *"Plaintiff's Identified Fact Witnesses" and the "2016 IT Assessment "*

ADR accuses Plaintiff of refusing to provide David Alexander's ("Alexander") contact information and an IT Assessment conducted at Plaintiff's place of employment in 2015 in retaliation for ADR compliance "with applicable laws regarding the USDA's confidential records."

Alexander was Plaintiff's supervisor and was cooperating with the criminal investigation by OIG at the time ADR conducted its survey. He is referred in the Climate Assessment as the "AO" or "Administrative Officer."  Just like Plaintiff, Alexander was smeared by ADR. Among others, he was accused of being an enabler to Plaintiff. (*See* DE 4-2 at 6). Alexander was retaliated against by the USDA and no longer works for that Agency.

On April 26, 2019, counsel for ADR requested Alexander's information and the IT Assessment from Plaintiff. Given the claims of privilege by the Government, Plaintiff suggested that ADR request this information from the USDA. (*See* Exhibit A). Unfortunately, ADR seems to seek the Government's intervention only when it is convenient. For the past 4 months ADR has communicated with USDA's personnel under Brammer's supervision and possibly the Department of Justice.  During those communications it could have easily requested, and possibly obtained, Alexander's contact information and the IT assessment. But instead it has decided to employ Plaintiff for these searches and consequently involve this Court in a discovery dispute created by its own actions or omissions.

As indicated to ADR, Plaintiff has no authorization from Alexander to provide his contact information.  (*Id*. at 1). Since ADR has represented that it intends to contact Alexander for matters involving the scope of his employment with the USDA, and the IT Assessment is property of the USDA, these matters may involve the same privilege already asserted by the Government in this action. Therefore, to avoid further delays and going in circles, Plaintiff suggest that ADR request this information from the Government.

**B. Plaintiff's Report on Discovery:**

**1. <u>Remaining Discovery</u>**

Plaintiff expects to serve ADR with additional request for productions, interrogatories and request for admissions before the end of May. As to depositions, Plaintiff expects to depose USDA's Alan Meerow and ADR's Dianne Lipsey and Rich Buccheri. Plaintiff has listed other witnesses but at this time he is unaware of the need for deposing them. Since Plaintiff does not have a clear picture of the role each employee of the USDA played in the survey, he depends on the testimony of other deponents to determine who could be his next witness.

**2. <u>Need for Future Motions to Compel</u>**

Plaintiff anticipates filing additional motions to compel because of the lack of

cooperation from ADR and its interplay with the USDA to prevent Plaintiff from completing

discovery. Throughout this litigation ADR has shown a tendency of throwing Plaintiff off track

from this Court's Scheduling Order.  Plaintiff suggest that these actions by ADR may require

Court intervention to streamline who should respond to discovery, whether it is ADR or the

Government. As it is at the present time, objections to discovery are coming from ADR, the

USDA and the DOJ.

**3. <u>Evasive and Contradictory Responses by ADR To Plaintiff's Discovery</u>**

Plaintiff received responses to discovery from ADR approximately on April 9, 2019.

Many of these responses did not address the interrogatories or request for productions or

contradicted each other. For example:

- In its response to Interrogatory 7, ADR omitted that it has been in communication with USDA personnel since the initiation of this litigation. According to ADR it had no communications outside of "privileged interactions with its insurance carrier and counsel." However, as this Court and Plaintiff are aware, ADR has been in communication with personnel from the USDA's Office of General Counsel at least since January 2019.

- ADR refused to provide a response to Request for Production ("RFP") 11, which called for a copy of any non-disclosure or confidentiality agreement. ADR refusal comes despite representing to this Court and Plaintiff that is in possession of said document.

- ADR refused to provide a response to RFP 12, which called for any climate assessment performed since 2013. The refusal comes despite representing to the USDA as part of its proposal for the Climate Assessment that it had performed these assessments for other agencies including the National Reserve Board, the EEOC and the Department of Energy. (DE 4-2 at 12-13).

- ADR refused to provide a response to RFP 13 calling for any notes or minute taken while it met with members of the Climate Assessment Committee. ADR's refusal is in glaring contradiction to its response to Interrogatory 14 were it stated that this meeting was not "recorded or memorialized."

- ADR refused to answer in Interrogatory 2 how it reached to certain conclusions and recommendations in the Climate Assessment. These include that Plaintiff is the source of hostile working environment, that he had committed fraud waste and abuse and that the USDA needed to investigate recent allegations about him. Instead it objected and directing Plaintiff to the Climate Assessment's "methodology" for the response.

- ADR refused to answer Interrogatory 4, calling for its annual revenue in the past 5 years claiming that this information is privileged and confidential. But it failed to identify what recognized privilege protects this information.

- In Interrogatory 5 which calls for ADR's policy manual regarding collection of data and publications of survey, ADR responded that it uses "industry standard" but refused to identify the industry standard it uses.

This list is not inclusive. If past is prologue, Plaintiff does not expect any candor or cooperation from ADR regarding discovery which will force more interventions by this Court.

### 4. <u>ADR's Misrepresentations Regarding Holding "USDA's Property"</u>

For the past four months ADR has represented to the Plaintiff and this Court that it is holding "USDA's property." According to ADR it is in possession of a contract with an alleged confidential agreement and responses from the interviewees to the survey's questionnaire. As of the date there are no signs of the alleged contract with a confidential clause. More important, the Government has not mentioned this contract in any of its motions in support of privilege. Plaintiff maintains that there is no such agreement.

ADR has been engaged in conversations with an employee of Brammer, Vanessa Eiseman for at least the last four months. ADR has refused to give any information to Plaintiff about these conversations claiming that they are protected by attorney-client privilege.

On or about March 19, 2019, Plaintiff conferred with ADR's counsel who stated that he was in possession of the responses from the interviewees to the survey's questionnaires. Through testimony elicited from Raymond Schnell and conversations with his ex-coworkers, Plaintiff has

learned that these response were all written by ADR's personnel and not the interviewees. On

April 26, 2019, Plaintiff conferred with ADR and suggested that since the responses were all

written by ADR, there was no risk for the interviewees to be identified if their names are

redacted. ADR's counsel then implied that the notes were destroyed. Thereafter Plaintiff sent

various emails on April 30, May 1 and 8, requesting clarification. These emails were ignored.

(Exhibit B).  As of the date Plaintiff still unsure of what property of the USDA ADR is holding

and the whereabouts of this property.

Plaintiff reminds this Court that Defendant's fourth affirmative defenses is the "truth."

*See* Defendant's Amended Answer to Complaint dated February 19, 2019. [DE 24 at 8].

However, for the past four months ADR has walked backwards from this defense. It has not

opposed any of the Government's claim of privilege, to the contrary it appeared to work

laboriously in concert with the USDA to bury this evidence.  It is impossible for ADR to prove

its affirmative defense without supporting evidence such as the responses to the survey's

questionnaire. For the foregoing reason, Plaintiff anticipates filing a motion to strike ADR's

fourth affirmative defense.

### 5. <u>Claims of Privilege by ADR or the Government</u>

Plaintiff filed motions to compel on November 25, 2019 [DE 11], January 3, 2019 [DE

15] and April 15, 2019, [DE 25]. These motions address the claim of privilege asserted by ADR

and/or the Government. The Court has not ruled on these motions.

Plaintiff deposed various USDA's employees that are also participants in the Climate

Assessment as part of his case before the Merit System Protection Board for wrongful and

retaliatory termination.  During the depositions, these employees were given a document

containing a list of recommendations and some of the quotes in the Climate Assessment. From

that list, the witnesses were asked to identify their statements. They did without any objection

from the USDA. There is currently a protective order covering the transcript and video of these

deposition. On May 5, 2019, Plaintiff filed a motion to modify the protective order and release

these depositions and videos to ADR. The Administrative Judge has not ruled on this motion.

With this evidence Plaintiff expects to demonstrate that the claims of privilege asserted by ADR

and/or the Government were waived by the USDA.

Plaintiff believes that the answers in the questionnaires of the interviews conducted by

ADR do not align with ADR's recommendations in the Climate Assessment. This belief has

been reinforced by the Government's Motion to Intervene where it identified Stephanie Masker

as a possible editor of the Climate Assessment. (See DE 30-2 at ¶23) (mentioning "working drafts

[that] contain Ms. Masker's legal counseling on what information should be included in the Climate

Assessment Report.)

To that end Plaintiff anticipates asking this Court to determine the competing interest of

the parties in order to release this evidence. See *Friedman v. Bache Halsey Stuart Shields, Inc.*,

238 U.S. App. D.C. 190, 738 F.2d 1336, 1341 (1984). ("When the existence of the [deliberative

privilege] is established, there is a need to balance the public interest in nondisclosure against the

need of the particular litigant for access to the privileged information") (modification by the

undersigned).  See also *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 139 F.R.D. 244, 246

(D.D.C. 1991) ("Under *Friedman* this Court must weigh the interest in confidentiality against

Mitsui's need to obtain discovery from the DOC in the context of this particular lawsuit."); 

*Collins v. Shearson/American Express, Inc.*, 112 F.R.D. 227, 229 (D.D.C. 1986) ("To be sure,

the Commission's determination of privilege does not bind the Court. Rather, the Court must

examine the Commission's reasons for nondisclosure and weigh them against plaintiffs' need for

the documents.").

II. **Defendant's Report**:

The parties have exchanged written discovery responses and exchanged documents.  As this Court is aware, a discovery dispute has arisen regarding privileges asserted by the USDA to the production of certain documents within Defendant's possession.  An Opposition to Plaintiff's Motion to Compel will be filed by ADR on May 13, 2019, as allowed by this Court.  In addition, the USDA has filed a Motion to Intervene to be heard on the privilege issue.  *ECF 30.*  The issue of the privileges asserted by the USDA will require judicial resolution.  Other issues as set forth *infra* may require judicial resolution in the near future, as well, if not amicably resolved amongst the parties.

*Plaintiff's Health History / Personal Injury Claim*

Plaintiff has refused to identify any of his prior / current treating health care providers, despite claiming mental and emotional distress in his Complaint.  The defense's position with respect to obtaining a complete health history for the Plaintiff was summarized in a recent email to Plaintiff as follows:

> I am in response of Plaintiff's Answers to Interrogatories and thank you for same. The questions regarding your medical history reference a protective order.  Please provide proposed language.  I am happy to enter into an agreement which limits use of your medical information to defending the claims asserted in this litigation, only.  We have no interest in your medical history / records beyond defending this case.
>
> If you are not claiming any health condition(s) related to this case, then we do not need the records.  If you are, then kindly advise as to your position in this regard.

To date, Plaintiff has not provided a proposed "protective order" and/or otherwise responded to this request, except as set forth above. If Plaintiff does not identify his health care providers and sign HIPAA authorizations to obtain his out-of-state medical records, the defense seeks leave of Court to file a Motion to Compel Or, In The Alternative, In Limine To Preclude

Plaintiff's Personal Injury Claim.

*USDA Deposition Transcripts*

Plaintiff currently has pending before the United States of American Merit Systems Protection Board case number AT-1221-17-0503-W-1 against the USDA, involving the same or similar issues in the case at bar, albeit against the USDA instead of Defendant ADR.  In connection with that case, Plaintiff has purportedly secured deposition transcripts from David Kuhn, Chavonda Jacobs-Young, Ricardo Goenaga, and Alan Meerow.  Upon information and belief, all are / were USDA employees who interacted with the Plaintiff and/or Defendant ADR.  Apparently, there is a Protective Order in that case and Plaintiff has filed a motion to amend the Protective Order, so as to allow the production of the deposition transcripts in the case at bar.  Obviously, Defendant ADR needs to obtain copies of those deposition transcripts insofar as these witnesses have relevant information and it would be a waste of time to redepose them if that can be avoided.  Hopefully this issue can be amicably resolved without judicial intervention but a Court Order to compel production may be necessary so that Plaintiff does not otherwise violate the existing Protective Order in his case against the USDA.

*Plaintiff's Tax Returns*

Given the economic damages alleged by the Plaintiff, the defense has requested copies of his recent tax returns.  Obviously, his income, both past and present, is germane to Plaintiff's claim for past and future lost wages.  Originally, Plaintiff claimed not to have access to his tax returns so defense counsel recently provided Plaintiff with the appropriate IRS form to authorize the defense to obtain them.  Thereafter, Plaintiff refused to sign the forms, claiming that his income was confidential and, since he filed joint tax returns with his wife, contained the financial information of a third party.  If Plaintiff does not provide executed IRS form 4506 within the next

two weeks, the defense seeks leave of Court to file a Motion to Compel Or, In The Alternative, In Limine To Preclude Plaintiff's Economic Damages Claim.

*Plaintiff's Identified Fact Witnesses*

Plaintiff has "identified" over twenty (20) individuals with alleged relevant information to this litigation, but to date has not provided any contact information for said witnesses.  The defense has requested contact information for one individual in particular, David Alexander, and the Plaintiff has yet to provide it.  It is important for the parties, and this Court, for Plaintiff to identify who he realistically intends to call as a witness at trial so that the defense can have an opportunity to depose those individuals, if necessary (at this time, the defense does not intend to depose all of the witnesses identified, unless they have particularly relevant information and/or the Plaintiff intends to call them to testify at trial).  As for Mr. Alexander, a former USDA employee, the defense does want to contact him and, potentially, secure his deposition testimony. If Plaintiff does not provide Mr. Alexander's contact information, then the defense seeks leave of Court to file a Motion to Compel Or, In The Alternative, In Limine To Preclude Mr. Alexander From Testifying At Trial.

*2016 USDA IT Assessment*

During the course of discovery, the defense has learned about the existence of a 2016 IT Assessment report for the USDA.   This report apparently discusses matters involving the Plaintiff's job performance, which are at issue in the case at bar.  Plaintiff has the report but has, to date, refused to produce it, claiming it is privileged for the same reason the USDA is claiming privilege to attorney-client and deliberative process materials which is the subject of Plaintiff's current Motion to Compel.  At this time, it is unclear whether the USDA has actually instructed Plaintiff not to produce the report in question, but it is hard to understand how a published report

in Plaintiff's position would be subject to an attorney-client and/or deliberative process privilege. It seems, more likely, that Plaintiff's refusal to produce the report is retaliatory for this Defendant's attempt to comply with applicable laws regarding the USDA's confidential records.  Regardless, if Plaintiff does not produce the 2016 IT Assessment Report within two weeks, the defense seeks leave of Court for a Motion to Compel said report.

### *Plaintiff's Actions Outside Of This Litigation*

Recently, Defendant learned that Plaintiff has filed one or more FOIA requests against other entities to obtain unrelated and confidential climate assessment reports prepared by ADR for other clients that have nothing to do with the Plaintiff.  Such FOIA requests will be dealt with in accordance with applicable laws and this Defendant is monitoring Plaintiff's actions insofar as they relate to ADR.  Defendant ADR's concern is heightened by Plaintiff's improper litigation motives, as stated by the Plaintiff himself in his Rule 16.3 Meet and Confer Report, filed with this Court, wherein he wrote:

> Plaintiff does not believe the case will benefit or is likely to be resolved by alternative dispute resolution. ***Plaintiff's goal is to redress, reverse and punish ADR for the damage its defamatory publication has done to him. Also, Plaintiff wants to publicly expose ADR's practices to labor organizations and its current or potential clients, most of them federal agencies.***  (emphasis added).

It is becoming increasingly clear that the instant litigation is part of a pattern of litigation tactics Plaintiff has employed against anyone who disagrees with or challenges him in any way, and the defense wants to alert this Court to the potential need for future judicial intervention.

### *Remaining Discovery*

Plaintiff's deposition is currently scheduled for May 21, 2019.  If the deposition testimony confirms that there is no good-faith basis for Plaintiff's initial complaint, much less the continued

prosecution of this case now that Plaintiff is aware ADR's Climate Report was never "published" by ADR to anyone beyond the USDA pursuant to its contractual obligation, then the Defendant anticipates filing a Motion for Summary Judgment on numerous grounds, as well as seeking other affirmative relief.

Plaintiff is tentatively scheduled to depose two ADR employees on June 21st and June 24th. In addition, as set forth above, the defense requests a realistic list of witnesses Plaintiff anticipates calling to testify at trial, along with their actual contact information, so that the defense can determine who it wants to contact informally and from whom it wants to formally obtain deposition testimony. If this case is not resolved via dispositive motion, such that a trial appears inevitable, then additional time to complete the discovery of Plaintiff's trial witnesses will likely be necessary.

### *Request For Conference Call*

Given the above-stated issues and potential need for various Motions to Compel, the defense requests a conference call with the Court unless Plaintiff agrees to produce the information requested above.

Submitted on May 13, 2019

/s/ John Murphy
John Murphy, Esq. (Bar #14407)
9210 Corporate Boulevard, Suite 320
Rockville, Maryland 20850
(301)-519-9150 (Office)
(301) 519-9152 (Fax)
jmurphy@walkermurphy.com
*Attorney for Defendant*

/s/ Joey D. Gonzalez
Joey D. Gonzalez Ramos
Florida Bar No. 127554
P.O. Box 145073
Coral Gables, FL 33114-5073
Telephone: 305-720-3114
joey@joeygonzalezlaw.com
*Plaintiff*