UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

|  |  |  |
|---|---|---|
| JOEY D. GONZALEZ RAMOS, | ) | Case No.: 1:18-cv-01690-APM |
| Plaintiff, | ) | JURY TRIAL |
| vs. | ) | |
|  | ) | |
|  | ) | |
| ADR VANTAGE, INC, | ) | |
| Defendant. | ) | |

## REPLY TO USDA'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Plaintiff, Joey Gonzalez Ramos, submits this reply to *Third-Party Intervenor U.S. Department of Agriculture's Opposition to Plaintiff's Motion to Compel* [DE 34] hereinafter the "USDA's Opp."

## PRELIMINARY STATEMENT

Plaintiff contends that the USDA is wrongfully holding evidence he required to prove his case for defamation against defendant, ADR Vantage, Inc. ("ADR"). Many of these documents have been withheld under unsupported allegations that they contain privileged information.

While Plaintiff accuses ADR of publishing defamatory statements about him, ADR alleges that "it was USDA officials who defamed and/or published ADR's report…." (Joint Meet and Confer Report [DE 22] at 5). By "ADR's report" the defendant is referring to the "Climate Assessment" which it claims was "based on the accumulated results of the employee interviews" (Motion to Dismiss [DE 4-1] at 4).

The USDA opposes release of the employees' names, their responses to the interviews and "working drafts" of the Climate Assessment. It claims that these are protected by the attorney-client and the deliberative process privileges. Clearly, Plaintiff and ADR have a common interest in the disputed information. However, ADR has aligned with the USDA, even

against its best interest, claiming that the same evidence that could prove that the statements in the Climate Assessment came from its participants and not from ADR itself[1].

Indeed, at no time ADR has opposed any of the USDA's attempts to bury this evidence. The reasons for this common front are perfectly clear; create confusion and delay discovery.  As a result, before this Court there is one motion to compel and two oppositions. These oppositions are premised in part on evidence that does not longer exist such as the responses to the interviews conducted by ADR. According to ADR these responses were destroyed. (See Joey Gonzalez Ramos' declaration, Exhibit A ¶ 1).

This did not stop ADR from filling an opposition to Plaintiff's motion to compel on May 13, 2019, [DE 32] (the "ADR's Opp."), where it objects production of these responses. Just like the defendant, the USDA also opposes release of these responses (USDA's Opp. at 7), even though it is aware they were destroyed.  ADR's actions are more egregious in light of Plaintiff's data preservation request sent months prior to this litigation. (Exhibit B). Needless to say, any discovery ruling pertaining to the release of the responses to ADR's interviews would be moot as this evidence is no longer available. Finally, since ADR is simply parroting the USDA's claims of privilege, Plaintiff suggest that any discovery ruling that applies to the USDA should also apply to ADR.

## **INTRODUCTION**

The USDA argues that the information sought is protected by the attorney-client communication and/or deliberative process privilege. (USDA's Opp. at 1). As further explained, this Court should reject these arguments on the basis of the attorney-client privilege because the

---

[1] According to ADR it wants to "avoid waiving the USDA's claimed privilege and being held harmless until the agency (or this Court) decides how best to proceed." (ADR's Opp. at 7).

USDA failed to provide the necessary showing to assert the privilege and the evidence already available in this case demonstrates that Stephanie Masker ("Masker") was not acting as ADR's attorney.

As for the deliberative privilege, it does not apply to the information because the communications between Tucker and ADR are not part of the consultative process the privilege or was waived by some of the participants of the Climate Assessments when they testified about their statements during depositions in Plaintiff's case for wrongful termination against the USDA.

This Court should also deny the USDA's attempts to withhold this information because even if the USDA could demonstrate that the privileges apply, Plaintiff's need for the information outweighs nondisclosure. Finally, Plaintiff requests an *in camera* inspection of each document the USDA refuses to release or is in dispute.

## ARGUMENT

In general Plaintiff seeks disclosure of three categories of documents: (1) documents containing the names of actual or potential participants in the Climate Assessment; (2) documents containing the statements by participants of the Climate Assessment; and (3) communications between the USDA and ADR, including emails, attachments and working drafts of the Climate Assessment. .

## I. ATTORNEY CLIENT PRIVILEGE

### A. The USDA Failed to Provide the Necessary Showing to Assert the Attorney-Client Privilege

[I]t is essential that communications between client and attorney deal with legal assistance and advice in order to be privileged, it is not essential that such requests by the client

for legal advice be expressed. . . . [Rather,] there must be a finding that each document is involved in the rendition of legal assistance. *Banks v. Office of the S. Sergeant-At-Arms & Doorkeeper*, 228 F.R.D. 24, 27 (D.D.C. 2005) (emphasis added).

The USDA claims that the drafts with markups and editorial comments from Masker, or the so called "working drafts", and the drafts of the questionnaire used to conduct the Climate Assessment, contain "legal counseling". (USDA's Opp. at 5).  Also, that the emails dated January 25, 2017 and February 3-6, 2017 between Masker and ADR contain "privileged communications." None of these characterizations are accompanied by a description of the purported legal advice or the basis for considering them privileged communication.

The recitation of the phrase "confidential and privileged attorney-client communication" is not dispositive in determining whether a document is protected. *Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 295 (D.D.C. 2000). This generalization is wholly insufficient to allow this Court to conclude whether the privilege applies.  The USDA must provide more than the "talismanic adjective 'legal' and the conclusory phase 'attorney client privileged'" to establish that the communications between Masker and ADR were sent for the purpose of conveying legal advice. See *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 309 (D.D.C. 2013).

At the very least the USDA must describe with some level of detail "the nature of the legal issue for which the advice was sought and whether the communications seek legal advice, convey legal advice or both." The USDA "must also provide some evidence from which the Court could conclude that the alleged privileged communications were confidential." *Id*.

The USDA's opposition is devoid of any explanation of the legal issue that ADR purportedly sought advice for, or that was provided. Similarly, there is nothing that leads to the conclusion that these communications were intended as confidential. Accordingly, the USDA

has failed to carry its burden and this information must be produced.

**B. The Evidence Does Not Demonstrate That Masker Acted as ADR's Attorney**

Assuming that this Court finds that the USDA has properly asserted the privilege, a comparison of the communications between ADR and Masker and the justification for withholding the documents, demonstrate that the privilege has been broadly asserted. The justification offered rest entirely upon the false notion that Masker acted as an attorney for ADR. A close examination of these communications demonstrate that the purported "legal" advice was no more than edits to the Climate Assessment and suggestions of whose comments should be included. See for example the following timeline (Exhibit C):

**December 30, 2016**

Lipsey writes to Tucker and Masker that ADR has finished a "rough Draft" of the Climate Assessment. She also invites Masker's "perspective" on ADR's findings and recommendations. (*Id*. at 1).

**January 19, 2017**

**9:19 AM:** Masker writes to Lipsey, "Attached are our comments on the draft reports. Please let us know if you would like to discuss. We would like to review one more draft before the report is finalized.**"** (*Id*. at 2)

**1:22 PM**: Masker writes to Lipsey, "We have one more person reviewing and may have additional comments tomorrow morning. I will send these as soon as I have them. Sorry to send the comments in a piecemeal fashion." (*Id*. at 3).

**January 30, 2017**

**6:05 PM**: Tucker writes; "This report need (sic) to be pulled back." "A number of comments we made on the draft is not (sic) reflected" in the report. Tucker asks that the report be compared to the "last draft that Stephanie [Masker] sent you." (*Id*. at 4).

> **8:37 PM**: Lipsey responds, "of course Archie – would you
> please resent Stephanie's last comments." (*Id.*)

A communication by an attorney working for a government agency is protected when the communication "elate[s] to some legal strategy, or to the meaning, requirements, allowances, or prohibitions of the law." *A.N.S.W.E.R. Coal. v. Jewell*, 292 F.R.D. 44, 48 (D.D.C. 2013) (internal quotations omitted).  "[W]hen a government attorney 'act[s] more in the nature of a business advisor, legislator, adjudicator, or regulator, the attorney-client privilege generally does not apply.'" *Mannina v. District of Columbia,* 2019 U.S. Dist. LEXIS 76260, *45, 2019 WL 1993780; see also *Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289 at 292 ("Where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected"). Accordingly, "the entity seeking to assert the privilege must make a clear showing that the in-house counsel acted in a professional legal capacity rather than for a purpose outside the lawyer's sphere." *Mannina* at 46.

*Neuder* pertains to a discovery dispute occasioned by the defendant's refusal to produce documents it claimed were protected by the attorney-client privilege. In its analysis, the court determined that the communication was generated by an attorney member of a committee whose primary function was to terminate employees. *Id.* at 295. The court found that although legal review was one function of the attorney, it was only incidental to the primary business function of the committee, that was, to approve proposed terminations. The *Neuder* court concluded that when a committee inquiry about the legal implication of a proposed decision, the *business purpose* predominates over the legal issues discussed and the privilege may not apply. *Id.* at 293.

Applying *Neuder* to the instant matter; the purpose of the Climate Assessment was to "provide analysis, findings, and recommendations to agency management in mak[ing] a plan-of-action" to address complaints about a hostile work environment at USDA's SHRS." (USDA's Opp.

at 6) (modifications in the original). According to the USDA, Masker's role was to provide "legal advice and legal guidance…. regarding the scope and means of conducting the Climate Assessment and the creation of the Climate Assessment report."  (USDA's Opp. at 4).

There is no mentioning of providing legal strategy, preparation in anticipation of litigation, or the meaning, requirements, allowances, or prohibitions of the law. The USDA's description of Masker's role and the evidence of her communications with ADR leads to the conclusion that the purported *legal advice* was to tell ADR what must be included in the Climate Assessment. This role is more consistent with the *business purpose* described in *Neuder*.

Finally, "where a government lawyer acts in multiple capacities, the attorney-client privilege protects *only* confidential communications that are made for the purpose of securing legal advice." See *In re Lindsey*, 158 F.3d 1263, 1267, 1270 (D.C. Cir. 1998) (emphasis in the original). In this case, Masker's involvement stemmed solely for the purpose of providing the "scope and means" of conducting the Climate Assessment and to provide editorial comments, which by consequence, would have been or are part of the end product. Clearly ADR or Masker never intended that their communications be confidential or remain confidential.

Accordingly, the USDA has failed to carry its burden to prove that ADR sought or was provided legal advice and there is no evidence on the record that demonstrates any intention that these communications remain confidential. The information, including emails and respective attachments and "working drafts" is not protected by the attorney-client privilege and must be disclosed.

## II. DELIBERATIVE PROCESS PRIVILEGE

### A. The Deliberative Process Privilege Does Not Protect the Names or Information About the Participants in the Climate Assessment

The USDA urges this Court to withhold the names of the participants in the Climate Assessment claiming that the deliberative process privilege applies. Specifically, an "internal spreadsheet" of ADR consisting of the names of the USDA employees interviewed, emails between ADR and USDA identifying information of interviewees, persons the USDA recommended to be interviewed, including individuals' names, titles, email addresses and phone numbers. (USDA's Opp. at 7). Also, the identity of USDA employees identified by ADR as potential interviewees, and information in the record that identifies individuals whom USDA recommends be interviewed for the Climate Assessment." (*Id*. at 8). In sum, the USDA refuses to disclose the names of the participants or potential participants of the Climate Assessment.

This Court rejected the same argument in *In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150 (D.D.C. 2017) (holding that documents reflecting who attended an audit to determine compliance with federal law, are not protected by the deliberative privilege). In that decision, this Court cited *Macnamara v. City of N.Y.*, 249 F.R.D. 70 (S.D.N.Y. 2008) which held that documents merely listing the individuals in attendance at meetings as well as the broadly-defined issues discussed at the meetings are not protected because the documents do not reflect recommendations or deliberations comprising part of a process by which governmental decisions and policies are formulated.

The USDA explains that the participants "agreed to be interviewed on a voluntary basis" and that they "did so with the express promise of confidentiality" (USDA's Opp. at 8). This however is insufficient as a matter of law to withhold this information. The privilege "protects the decisionmaking processes of government agencies." *Id*.  The names of the participants or

potential participants does not reveal anything about the agency's decisionmaking. Accordingly, the privilege does not apply and this information must be disclosed.

**B. The Deliberative Process Privilege Does Not Protect an "Internal Excel Spreadsheet" Purportedly Containing the Responses to ADR's Interviews**

According to the USDA, an "internal Excel spreadsheet" containing the USDA employees' responses to specific question ADR asked in conjunction with the Climate Assessment is also protected. (USDA's Opp. at 7). Plaintiff would agree that the privilege applies to the Excel spreadsheet if in fact it is established that it contains the employees' responses. See *Hardy v. Bureau of Alcohol*, 243 F. Supp. 3d 155 (D.D.C. 2017) (holding that a spreadsheet analyzing interview responses fell within the deliberative process privilege). But the origin and the legitimacy of this spreadsheet is questionable.

The employees' responses, as previously explained, were destroyed.  Aware of this, the USDA fails to explain when and why these responses were destroyed. It does not even explain when this spreadsheet was created and by whom. This leaves this Court to assume that the content of the Spreadsheet and the employees' responses are identical. As it is, this Spreadsheet could have been created at any time before or after this lawsuit, for the purpose of this case or in lieu of the destroyed responses to the interviews.

Since the USDA has failed to meet its burden of proving that the spreadsheet is subject to the protection of the privilege, the Excel spreadsheet must be disclosed. See *Mapother v. Dep't of Justice*, 303 U.S. App. D.C. 249, 3 F.3d 1533, 1537 (1993) ("the privilege serves to protect the deliberative process itself, not merely documents containing deliberative material").

**C. The USDA Waived Its Privilege as It Pertains to the Statements by the "Anonymous Participants"**

Waiver is the voluntary relinquishment of a known right or privilege. *Fla. H.R. v. United*

*States Dep't of Com.*, 961 F.2d 941, 946 (11th Cir. 1992) quoting In *Shell Oil Co. v.*

*IRS,* 772 F. Supp. 202 (D.Del.1991). Where an authorized disclosure is *voluntarily* made

to a non-federal party, the government waives any claim that the information is exempt

from disclosure under the deliberative process privilege. *Id.*

Some of the employees interviewed by ADR testified in depositions about their

statements in the Climate Assessment. These depositions were conducted in connection with

Plaintiff's case against the USDA for wrongful termination and violation of the Whistleblower

Protection Act currently before the Merit System Protection Board.

During the depositions these employees were presented with a list of comments in the

Climate Assessments (Exhibit D) and asked to identify their statements. Each one of these

employees identified their respective statement and their participation in the Climate

Assessment. (*See* Declaration of Joey Gonzalez Ramos). Since these employees testified

voluntarily regarding their statements to ADR in the Climate Assessment, any similar statements

pertaining to their testimony in ADR or the USDA's possession have been waived and are not

subject to the deliberative privilege.

**D. The Deliberative Process Privilege Does Not Protect the Drafts of the Climate
Assessment or the "Working Drafts" Containing Markups and Editorial Comments**

According to the USDA drafts containing markups and editorial comments of the Climate

Assessment and the draft of the questionnaire used by ADR to conduct the survey are protected

by the deliberative privilege. (USDA's Opp. at 7). These are described as containing "opinions,

assessments and recommendations". (*Id*. at 8).

To fall within the scope of the privilege a document must meet two requirements: (1) the

material must be predecisional and (2) it must be deliberative.  A document is predecisional if it

was generated before the adoption of an agency policy and it is deliberative if it reflects the give-and-take of the consultative process. *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 83 (D.D.C. 2018) (internal citations and quotations omitted).

Here the documents alluded are not deliberative because they do not reflect the *give-and-take of the consultative process*. The evidence provided by the USDA shows that on December 30, 2016, ADR provided a "rough draft" of the Climate Assessment to Tucker and Masker. (Exhibit C). Beginning on January 13, 2017 and for the next 7 days, Masker and ADR exchanged emails containing suggestions to the draft.  Apparently, these exchanges reached a boiling point on January 30, 2017 when Tucker demanded; "**This report need (sic) to be pulled back. A number of comments we made on the draft is not (sic) reflected in this report.**" (Exhibit C at 4).

These actions are reminiscent of a political candidate who, not happy with the results of the latest poll, is allowed access to the polling data to make changes at his convenience. But they do not demonstrate the *weighing in of competing policy alternatives* characteristic of the consultative process. See, e.g*., Edmonds Inst. v. Dep't of Interior*, 460 F. Supp. 2d 63, 70 (D.D.C. 2006). Instead these exchanges appear to be an effort to manipulate the results of ADR's findings. Clearly these working drafts were not created as part of the process of formulating governmental policy, these were discussions about editing the content of the Climate Assessment.

"The need to describe each withheld document ….. is particularly acute because the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process. The agency must establish what deliberative process is involved, and the role played by the documents in issue in the course of that process. In addition to explaining the function and significance of the document[s] in the agency's decisionmaking

process, the agency must describe the nature of the decisionmaking authority vested in the office or person issuing the disputed document[s], and the positions in the chain of command of the parties to the documents". *Id*. at 305 (internal quotations and citations omitted).

Accordingly, simply stating that the drafts contain "opinions, assessments and recommendations" is insufficient to claim the privilege. Since the USDA has failed to meet its burden of showing that these working drafts are based on the *give-and-take* of the consultative process, and has also failed to provide the required description, they are not protected by the privilege and must be produced.

### III. PLAINTIFF'S NEED OUTWEIGHTS NONDISCLOSURE

Even if the USDA could plausibly assert a deliberative process privilege, Plaintiff is still entitled to the documents if his need for the evidence outweighs the interests underlying the privilege. See *United States v. Philip Morris USA, Inc.*, 218 F.R.D. 312, 322 (D.D.C. 2003) (The deliberative process privilege "is qualified and can be overcome by a sufficient showing of need").

To determine whether a party has made such showing, courts "will balance the competing interests of the parties by considering factors such as (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *In re Subpoena Served upon Comptroller of Currency*, 296 U.S. App. D.C. 263, 967 F.2d 630, 634 (1992).

In this case, Plaintiff's need for the materials clearly outweighs the USDA's desire for secrecy:

### i. The Relevance of the Evidence

The relevance of the evidence sought goes to the heart of the controversy. That is, whether ADR published defamatory statements by employees of the USDA motivated to retaliate against Plaintiff for cooperating in criminal investigation by the Office of Inspector General ("OIG"), filing complaints of discrimination, and union activities.

The evidence withheld by the USDA is relevant to demonstrate that the defamatory statements about Plaintiff have no foundation in the truth. These came from Tucker and other employees, at the time subjects of a criminal investigation initiated by Plaintiff for travel fraud, abuse, mismanagement of funds, improper relationships and conflict of interest. (Exhibit E) These employees included Hamed Abbas and Ricardo Goenaga, Plaintiff's former supervisors and Tucker's subordinates.

In sum the evidence sought will reveal that the USDA and ADR conspired to create a smear campaign against Plaintiff in retaliation for blowing the whistle on personnel under Tucker's supervision. This evidence will demonstrate that the statements about Plaintiff are false and were published by ADR with full knowledge of their falsity or with reckless disregard for the truth.

### ii. Availability of Other Evidence

As previously explained, ADR has already destroyed crucial evidence under its exclusive control. There is no other evidence that could supplement or substitute this evidence or the one withheld by the USDA.

### iii. The Seriousness of the litigation and the Issues Involved

The seriousness of this litigation is beyond question. Plaintiff's personal and professional reputation rest on the resolution of this case. In addition to the issues presented in this lawsuit

there are underlying issues of mismanagement of funds, fraud, abuse, retaliation for whistleblowing activity and intimidation of witnesses by government actors with the assistance of ADR, a private corporation.

### iv. The Role of the Government

The Government plays a substantial role in this litigation. The individuals that commissioned the Climate Assessment as well as its participants are USDA's employees. Most, if not all, of ADR's co-conspirator are also USDA's employees.

### v. The Possibility of Future Timidity by Government Employees

Plaintiff does not believe that disclosure of information sought will discourage future discussion between Government employees for at least three reasons. *First*, the Climate Assessment was created under the false premise that it would assist USDA's management in "making a plan of action to address complaints about hostile work environment." (USDA's Opp. at 6). But the USDA already had mechanisms to address complaints of hostile working environment. That is to contact the Office of Diversity and Equal Opportunity ("ODEO"). (*See* Exhibit F). Neither Tucker nor OGC are responsible for investigating or creating a plan of action for complaints of hostile working environment or override the functions of ODEO, much less through a survey.

The Climate Assessment was an exercise in futility. No realistic policy or plan of action could come from the opinion of twenty-six employees of one of the twenty-seven research locations spanned over eight states comprising the USDA's Southeast Area[2]. These employees represent only a .02% of the entire workforce under Tucker's responsibility.

---

[2] https://www.ars.usda.gov/southeast-area/docs/aboutus/

*Second*, the employees that made the defamatory statements about Plaintiff were not concerned with having a "open and frank discussion." These were the subjects of a criminal investigation and their purpose was to defame and intimidate Plaintiff for his cooperation with OIG.

Finally, in comparison with the Federal Viewpoint Survey ("FEVS"), a governmentwide survey administered since 2002 by the Office of Personnel Management, ADR's survey is unprecedented. At least for the USDA location in Miami. In the past fourteen years not a single survey involving face-to-face interview has been conducted at that location. (See Joey Gonzalez Ramos' declaration).

The FEVS, for example, is conducted online and does not involve interaction with a person. Contrary to the Climate Assessment, the FEVS does not target particular employees, including questioning participants who they believe is the source of hostile working environment or who is intercepting data and phone communication. The opportunity for USDA's employees to participate in a subsequent survey using ADR's *methodology* seems unlikely.

## IV. REQUEST FOR IN CAMERA REVIEW

Circumstances that suggest *in camera* review is particularly appropriate include that (1) the number of withheld documents is manageably small, (2) the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims, and (3) the record contains evidence of bad faith on the part of the Agency. *Hall v. CIA*, 668 F. Supp. 2d 172 at 196 (internal quotations omitted, enumeration by the undersigned).

All three prongs fit squarely here. First, the number of documents withheld or in dispute appear relatively small according to the USDA's opposition. Second the USDA has provided insufficient information to assist this Court in determining that either privilege applies. Finally,

there is plenty of bad faith; beginning with the destruction of evidence and subsequent

misrepresentations by ADR and the USDA that they are in possession of this evidence. Plaintiff

request *in camera* review to determine whether the documents in dispute are privileged at all,

and if so, whether all segregable non-privileged material has been produced.

## CONCLUSION

For the foregoing reasons Plaintiff ask that this Court denies the USDA's Opposition

entirely and issue an order compelling disclosure of the withheld information by the USDA

and/or ADR.

Dated: July 3, 2019

By /s/ Joey D. Gonzalez
Joey D. Gonzalez Ramos
Florida Bar No. 127554
P.O. Box 145073, Coral Gables, FL 33114-5073
Telephone: 305-720-3114
E-service: joey@joeygonzalezlaw.com
Plaintiff