IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOEY D. GONZALEZ RAMOS, | : |
| Plaintiff | : |
| v. | : Case No.: 18-cv-01690 (APM) |
| ADR VANTAGE, INC., | : Assigned To: Amit P. Mehta |
| Defendant. | : |

**DEFENDANT, ADR VANTAGE, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR ADDITIONAL DISCOVERY**

COMES NOW the Defendant, ADR VANTAGE, INC. (hereinafter "ADR"), by and through its counsel, John J. Murphy, Esq., and Walker, Murphy & Nelson, LLP, and, pursuant to the Federal Rules of Civil Procedure and this Court's January 22, 2021 Minute Order (ECF 81), hereby files this brief Opposition to Plaintiff's Motion for Additional Discovery.

**Introduction**

Plaintiff's pending Motion is now the thirteenth (13th) motion filed by Plaintiff alleging some discovery dispute or nefarious conduct on the part of either ADR or the USDA. *See*, ECF 11, 15, 25, 27, 31, 35, 37, 38, 49, 51, 53, 74 and 82. Plaintiff admits that he has been reinstated with backpay and placed on administrative leave by the USDA, so it is unclear how or why that true statement in ADR's Motion for Summary Judgment has caused him such consternation and/or amounts to "defamation" used to "weaponize information to re-victimize the [Plaintiff]." *ECF 81 at p. 1*. Moreover, the logic for additional discovery is hard to follow.[1]

---

[1] Undersigned has already advised Plaintiff, in writing, that he has never received and/or reviewed Plaintiff's personnel file. Once Plaintiff objected to its production, the USDA never responded to ADR's discovery request and ADR never pursued the matter, relying upon discovery propounded upon the Plaintiff, instead.

**Legal Argument**

The gravamen of Plaintiff's litigation is that he bears no personal responsibility for being terminated from the USDA and, instead, it is somehow ADR's fault. *ECF 1.* When asked to itemize damages, Plaintiff claimed that he "has been unemployed since April 10, 2018 ... has been unable to find a job ... [and] [f]or every month plaintiff is unemployed he loses earning of approximately $6,700 a month plus ... benefits." *See, Answer to Interrogatory No. 21 attached hereto as* **Exhibit 1.** At deposition, Plaintiff disclosed pending litigation against the USDA before the Merit Protection Board for the reinstatement of his job and wages. *See, deposition testimony excerpts at pp. 151-154, attached hereto as* **Exhibit 2.** Once disclosed by Plaintiff, undersigned took an interest in the outcome of the MPB litigation given its impact on the only itemized damages claimed by Plaintiff in this case. After the MPB ordered Plaintiff's job be reinstated with back pay and benefits on September 19, 2019, Plaintiff never supplemented discovery and/or withdrew his claim for damages despite an ongoing obligation to do so. *See, MPB's public Order, attached hereto as* **Exhibit 3.**[2] *See, also, Summers v. Howard Univ.,* 374 F.3d 1188, 1193 (D.C. Cir. 2004) (regarding duty to supplement discovery).

From September 2019 to present, undersigned has received countless e-mails from the Plaintiff; emails sent during normal business hours from his private law firm's e-mail address. Similarly, this Court has received electronic filings from the Plaintiff during normal business hours. Given Plaintiff's self-stated exemplary ethical integrity, surely he wasn't practicing law while at the USDA. This information, combined with confidence that the United States government would comply with a lawful order of the MPB, more than supported the statement in

---

[2] Of note, before the MPB Plaintiff claimed he was fired in retaliation for whistleblowing activities, not because of anything related to ADR. *See, Exhibit 3.*

Defendant's summary judgment motion that Plaintiff was on administrative leave with his salary and benefits restored by the USDA, all while maintaining his own private law practice.

Black's law dictionary defines fraud as "some deceitful practice or willful device, resorted to with intent to deprive another of his right, or in some manner to do him an injury." https://thelawdictionary.org/fraud/ Webster's dictionary defines waste as to squander or "to spend or use carelessly." https://www.merriam-webster.com/dictionary/waste It also defines abuse as "improper or excessive use or treatment." https://www.merriam-webster.com/dictionary/abuse. Plaintiff's attempt to create a "discovery dispute" when he has failed to meet his own discovery obligations, along with prosecuting a lawsuit for back pay and future wages while collecting them from the United States and working in private practice at the same time, meets the literal and figurative definition of "waste, fraud and abuse." Plaintiff's umbrage with undersigned's characterization of the undisputed facts in this case is misplaced, at best.

Plaintiff cites no legal authority for his pending motion, which seeks to discover information gathered by undersigned counsel and how counsel interpreted that information. This information constitutes quintessential attorney work product. Plaintiff has made zero showing of "substantial need" to invade the privilege. *See, e.g., U.S. v. ISS Marine Services, Inc.*, 905 F.Supp.2d 121 (D.D.C. 2012). Nor could Plaintiff make any such showing since (a) he has admitted he is on paid administrative leave, (b) he had an affirmative duty to disclose that information, and (c) undersigned ability to piece together this information despite Plaintiff's deceptive tactics has no bearing whatsoever on Plaintiff's ability to prove his underlying case.

## CONCLUSION

Archie Tucker was recently deposed pursuant to this Court's Order. ADR will be renewing its Summary Judgment and Rule 11 Motions shortly once his transcript is available and this case can then, finally, be concluded. There is no basis for additional discovery requested by Plaintiff.

Respectfully submitted,

WALKER, MURPHY & NELSON, LLP

/S/ John J. Murphy

John Murphy, Esq. (Bar #14407)
9210 Corporate Boulevard, Suite 320
Rockville, Maryland 20850
(301)-519-9150 (Office)
(301) 519-9152 (Fax)
jmurphy@walkermurphy.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Opposition to Motion for Additional Discovery was electronically mailed on the __29th__ day of January 2021 to:

Joey D. Gonzalez Ramos, Esq.
P.O. Box 145073
Coral Gables, FL 33114-5073
E-service: joey.gonzalez@jdg-lawoffice.com
**Pro Se Plaintiff**

/S/ John J. Murphy

John J. Murphy, Esq.

4

# EXHIBIT 1

Climate Assessment before plaintiff's co-workers and supervisor. This discussion included that plaintiff was not providing timely customer support and that he was deficient in his duties.

The defamatory statements in the survey are similar to the ones in the letter plaintiff received announcing he was placed on a performance improvement plan. See for example:

| Performance Improvement Plan | Climate Assessment |
|---|---|
| **CRITICAL ELEMENT 2**<br>--There have been a number of IT issues that appeared as minimal but have been taking an unreasonable amount of time to be corrected.<br><br>--Does not respond timely to IT related requests in Miami and Fort Lauderdale. | Basic IT Support. Employees provided multiple examples of deficiencies that included slow or no response to even urgent requests … Climate Assessment at 10. |
| **CRITICAL ELEMENT 5**<br>-- You have continued to demonstrate poor communication by being combative, argumentative, and aggressive when contacted.<br><br>--You regularly engage in unprofessional/aggressive behavior towards coworkers and customers severely diminishing teamwork in the work unit and collaboration in the work unit.<br>--Failed to promote a work environment free from discrimination. | A newly hired employee complained that the IT Specialist was particularly aggressive toward him, used racially charged language and, as a result, the IT Specialist has been Instructed to have no contact with this employee. *Id*. at 11.<br><br>Almost all EEO and union actions over recent years have come from the IT Specialist, acting either on his own behalf or representing other bargaining unit employees. There is some likelihood these actions will continue if the USDA and ARS investigate recent allegations against him and/or move to track and improve his performance. *Id*. at 15-16 |

In October 2016, two months prior to defendant conducting its survey, Plaintiff received a performance rating of "Superior" therefore plaintiff was unaware that he needed to make any effort to improve his performance or reduce tensions with the USDA or other federal employees.

INTERROGATORY NO. 21: Give an itemized statement of any past and future charges, expenses, and economic losses claimed by you as a result of the occurrence, including any claim for the reasonable value of medical or other services, any claim for loss of wages or income, and any claim for loss of earning or employment opportunities or detriment to future earning capacity and any economic losses associated with your consortium claim.

**RESPONSE 21**: Plaintiff has been unemployed since August 10, 2018. As a result of defendant's publication plaintiff has been unable to find a job or has refrained to apply with other government agencies that could have hired him in his capacity of IT specialist. For every month plaintiff is unemployed he loses earnings of approximately $6,700 a month plus paid vacations, sick leave, medical insurance and pension benefits.

INTERROGATORY NO. 22: If you are claiming as damages in this litigation any past or future lost wages, state the amount reported as earned income in your income tax returns for the last five (5) years up to the present time and the District in which the returns were filed.

# EXHIBIT 2

149

1 on anti-harassment and diversity. Is that something
2 that you disagree with and you think you did complete?
3  A  I did the anti-harassment training. I don't
4 know if that anti-harassment has something with
5 diversity. I don't remember. I think -- I know every
6 year we get emailed that we have to take some training,
7 which pretty much is you read a paper and say that you
8 read it. That's the training, and you do that every
9 year, so I -- as far as I remember, I did it every year.
10  Q  Do you have any documentation now that you
11 completed any sort of anti-harassment or diversity
12 courses in 2017 or 2018?
13  A  No.
14  Q  There are some, for lack of a better word,
15 appellate rights or ways to challenge this in Exhibit
16 No. 8. Did you follow through with any of the ways to
17 challenge this proposed termination?
18  A  Yes. I filed a complaint with the MSPB, an
19 appeal.
20      (Defendant's Exhibit 9 was pre-marked for
21 identification prior to the start of the deposition.)
22  Q  (By Mr. Murphy) Can we take a look at Exhibit

150

1 No. 9. I think you might be confusing, so let's look at
2 Exhibit No. 9.
3      If you take a look at the third paragraph, you
4 see it talks about you requested an extension but then
5 you did not provide any oral or written response?
6  A  Yes.
7  Q  Okay. Is that accurate?
8  A  Not totally accurate. What happens is that,
9 after I requested an extension, I requested for evidence
10 from Dr. Goenaga when I wasn't providing timely customer
11 service, pretty much the things that he accused me of.
12 He did not provide me good evidence about that. So when
13 I -- at that point I decided to do an oral presentation,
14 and -- and the way it works, you have to do this with a
15 deciding officer, which is -- in this case it was Bryan
16 Kaphammer.
17      So when I spoke with Mr. -- with
18 Dr. Kaphammer, we agreed that we were going to do this
19 in a day. I forgot when it was. (Reading) You
20 requested an oral conference, which was scheduled
21 July 31st. But then three or four days after that he
22 said that he was going to have somebody writing my

151

1 statements, and I -- I refused. I said if you want
2 somebody writing my statements, let's get a court
3 reporter, which is a neutral party. He refused, and
4 then he said that unless -- pretty much unless we do it
5 the way he wanted to do it, we will not have the
6 conference. And I said, Well, that's fine, because I
7 don't want -- I don't want a person of your choosing to
8 write what I said, because I don't trust that person.
9      And that's the reason we did not have a
10 conference, or oral presentation.
11  Q  All right. So you don't go forward with the
12 conference and then you get the formal termination
13 letter on August 10, 2018, which is Exhibit No. 9,
14 correct?
15  A  Yes.
16  Q  And then you have a right to appeal to the
17 Merit Protection Board after you get the August 10, 2018
18 letter. Is that when you filed the appeal?
19  A  Yes.
20  Q  And what is the status of that appeal, do you
21 know?
22  A  Well, that appeal, the judge made an -- I

152

1 would say unofficial determination that the agency did
2 not comply with the obligations when they fired me.
3 They requested -- and you can see that in the papers
4 that I -- I provided to you. They requested that the
5 agency and I submit some -- some motions wanting in
6 favor, of course, what the judge was saying, that they
7 did not -- they --
8      What she said is that the agency used an
9 absolute standard in my PIP. That means an
10 all-or-nothing requirement.
11      In other words, if they -- you see that list
12 that I was supposed to accomplish, that list of tasks?
13 Dr. Goenaga wrote in that list that if I failed to
14 provide any -- if I failed to do any of those tasks, I
15 will fail my PIP. And according to case law from the
16 MSPB, that means that that is an absolute standard,
17 which is an all-or-nothing deal, and that violates case
18 law, or the law.
19      So the judge asked the agency and I to submit
20 in favor or against that -- that pre-determination from
21 the judge.
22      After that, the -- the judge was ready to

153

1 rule, and I think she was going to rule in my favor, and
2 the agency refused to allow her to rule, and they agreed
3 to go to mediation.
4     We went to mediation. There was no result.
5 So the case is back with the MSPB since I think May 1st
6 or May 5th, and I'm just waiting for the judge to make
7 a -- a ruling, or -- or to decide whether we're going to
8 go -- we're going to have a trial.
9   Q  That case -- so right now it's still pending;
10 fair to say?
11   A  Yeah. In short, it's still pending.
12   Q  Okay. If you ultimately win, what happens?
13 Does your job get reinstated?
14   A  Yes.
15   Q  Do you get all of the backpay?
16   A  I'm supposed to, yes.
17   Q  And your challenge to the termination to the
18 Merit Protection Board, is it that the PIP plan was
19 improper, or there are other challenges to it?
20   A  There are some affirmative defenses which had
21 to do with retaliation for union activity, for filing
22 EEOs, EEO complaints.

154

1     So that might be something that the judge --
2 I'm not sure if the judge is going to make a
3 determination about that or we're going to have to have
4 a -- they call it a hearing, but it's a trial on
5 those -- those matters.
6   Q  So I'm just -- and forgive me, because I don't
7 do Merit Protection Board work. Is it fair to say that
8 your challenge to your termination is on two broad
9 grounds: One, that the Performance Improvement Plan was
10 improper because it was an all-or-nothing proposition;
11 and, two, there are some affirmative defenses you're
12 raising, like discrimination and things of that nature?
13   A  Yes.
14     Not discrimination. Retaliation.
15   Q  Retaliation.
16   A  Yes.
17   Q  Do you have any understanding as to what the
18 timeline is for resolving the Merit Protection Board
19 case?
20   A  I wish I do. I don't.
21   Q  All right. Almost done.
22     Do you have any social media, Facebook

155

1 Instagram, anything like that?
2   A  I do.
3   Q  I'll tell you what. To make it easy, can you
4 email me the links to them so that I can view them?
5   A  Yes. I told you to send me a friend
6 invitation and I would give you access of everything you
7 need.
8     There's actually nothing in there, but --
9 there's some old pictures. I'm not an active Facebook
10 person, so you won't find anything in there anyway. But
11 if you send me a friend request, I'll let you go in and
12 find everything. Otherwise, I think I have it blocked
13 so nobody who's not my friend can see it.
14   Q  Okay. I actually don't have a social media
15 account, so I probably couldn't do it. So why don't you
16 just try sending me the links to your social media and
17 then I'll see what I can see.
18   A  I'll open it for you to see it. There's
19 nothing there.
20   Q  Excellent.
21     How about for your law firm? Other than the
22 website that you have, do you have any other social

156

1 media presence for your law firm?
2   A  No.
3   Q  And I think you answered this, but you don't
4 have any current social media or websites for anything
5 related to the USDA or trying to publicize what they
6 have done in this case, do you?
7   A  No.
8   Q  You have to say, "No," for the record.
9   A  No.
10   Q  I'm just reviewing your Answers to
11 Interrogatories, see if I have any follow-up questions
12 with that.
13     In your Answers to Interrogatories, you talk
14 about having not yet identified an expert witness. I
15 forget when these were submitted. Have you identified
16 any expert witnesses at this time?
17   A  I'm waiting for an answer of what -- I think
18 one of my questions in your interrogatory was what
19 methodology, or something to that effect, and the answer
20 was we use industry standards. If I'm told what
21 industry standards are used to do surveys, because I
22 don't know, I plan to get an expert witness.

# EXHIBIT 3

2019 WL 4745179 (PERSONNET)

Merit Systems Protection Board - Initial Decisions

GONZALEZ, JOEY D.
V.
DEPARTMENT OF AGRICULTURE

No. AT-0432-18-0700-I-1
September 23, 2019

Before: JACKSON, PAMELA B., AJ

```
+---------------------------------------------+
| CAUTION! |
| MSPB INITIAL DECISIONS ARE NOT PRECEDENTIAL |
| AND CANNOT BE CITED AS SUCH IN SUBMISSIONS  |
| TO THE BOARD OR THE FEDERAL COURTS.         |
+---------------------------------------------+
UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
ATLANTA REGIONAL OFFICE
_____
)
)
JOEY D. GONZALEZ, ) DOCKET NUMBER
APPELLANT, ) AT-0432-18-0700-I-1
)
V. )
)
DEPARTMENT OF AGRICULTURE, ) DATE: SEPTEMBER 23, 2019
AGENCY. )
)
_____)
```

Leo Bueno, Miami, Florida, for the appellant.

Leila J. Levi, Esq., and Stephanie Ramjohn Moore, Esq., Washington, D.C., for the agency.

**BEFORE**

Pamela B. Jackson
Administrative Judge

**INITIAL DECISION**

On August 20, 2018, Joey D. Gonzalez, the appellant, timely filed an appeal of the agency's decision to remove him, effective August 10, 2018, for unacceptable performance, pursuant to 5 U.S.C. Chapter 43. The appellant held the position of Information Technology Specialist, GS-11, at the Agriculture Research Service, Miami, Florida. The Board has jurisdiction over this appeal. 5 U.S.C. §§ 4303(e) and 7701; 5 C.F.R. § 432.106.

The hearing the appellant requested was held by video conference July 10-12, 2019. For the reasons stated below, the agency action is REVERSED.[1]

## ANALYSIS AND FINDINGS

Issues and Burdens of Proof regarding the performance action

In order for a Chapter 43 performance-based removal action to be sustained, the agency must establish by substantial evidence[2] that 1) the appellant's performance fails to meet the established performance standards in one or more critical elements of his position; 2) the agency established performance standards and critical elements and communicated them to the appellant at the beginning of the performance appraisal period; 3) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him an adequate opportunity to improve, and 4) after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element. *Gonzalez v. Department of Transportation,* 109 M.S.P.R. 250, ; 6 (2008).

In addition to the above-cited elements, historically, the Board required agencies in performance based actions to show in every case that it had taken the action pursuant to a performance appraisal system approved by the Office of Personnel Management (OPM). In *Daigle v. Department of Veterans Affairs,* 84 M.S.P.R. 625 (1999), however, the Board ended that requirement, and held that agencies would be required to show OPM approval only if the employee alleges that 'there is reason to believe' that OPM had not approved the performance appraisal system. *Id.*

In the instant matter, the appellant has alleged that there is reason to believe that OPM has not approved the performance appraisal system under which the action was taken because the appraisal system was implemented in 2013, after OPM's 2007 approval of a different performance appraisal system. The agency must, therefore, establish that the performance appraisal system under which it took the action was approved by OPM.[3] *See Summary of Telephonic Prehearing Conference,* Appeal File, Tab 81.

The agency has failed to establish that the performance appraisal system under which the action was taken was approved by the Office of Personnel Management.

The agency has presented evidence that its performance appraisal system, Departmental Regulation Number 4040-430, which was applicable to all agency non-SES employees, other than those excluded by 5 U.S.C. § 4301(2) or excepted service employees excluded by OPM regulation, was approved by OPM on August 21, 2007. Appeal File, Tab 27, p. 331 of 426. On September 30, 2013, however, the agency created a new performance appraisal system which by its terms superseded Departmental Regulation 4040-430. The agency did not present any evidence that it sought approval for the appraisal system issued in 2013.

The Board has previously held that where an agency regulation contains language that the agency has complied with 5 U.S.C. Chapter 43, the Civil Service Reform Act, or other relevant statutes and or plan, the agency will be deemed to have met its burden of proving that it has an OPM-approved performance appraisal plan, except where rebuttal evidence casts doubt on the accuracy or authenticity of the agency's submission. *Shorter v. Department of the Air Force,* 28 M.S.P.R. 622, 625 (1985). In the instant matter, the evidence does not reflect, and the agency has made no claim, that its 2013 performance appraisal plan includes such language. Appeal File, Tab 27, p. 165 of 426.

The Board has observed that there is no statutory requirement for renewing approval of an agency's performance appraisal system once in place. *Daigle v. Department of Veterans Affairs,* 84 M.S.P.R. at 630. As reflected above, however, the Board has also held that where, as here, an appellant alleges that there is reason to believe that an agency is not in compliance with the law, the Board may require an agency to submit evidence that it has received OPM approval of its performance appraisal system. *Id.* at 631.

In *Adamsen v. Department of Agriculture*, 563 F.3d 1326 (Fed. Cir. 2009), the Federal Circuit clarified the standards and procedures governing when OPM approval of performance appraisal systems is required. The court noted that OPM's regulations require that agencies submit to OPM 'for approval' both 'a description of its appraisal system[s] ... and any subsequent changes that modify any element of the agency's system(s) that is subject to a regulatory requirement in this part.' 5 C.F.R. 430.209(a); *Id.* at 1331. The court went on to find, in agreement with the Board's decision in *Brown v. Department of Labor*, 27 M.S.P.R. 255 (1985), that when an agency makes changes to a performance appraisal system after OPM approval, whether the changes must be resubmitted to OPM depends upon the nature of the changes. If an agency makes changes to previously-OPM-approved performance appraisal systems that significantly alter an employee's performance standards and obligations, OPM review of those changes is necessary to achieve compliance with the basic purpose underlying the OPM-approval requirement. *Id.*

In the instant case, one notable difference in the two appraisal systems was the agency's modification of the manner in which critical elements were weighted. The 2007 performance appraisal system assigned two appraisal units[4] to each critical element and one appraisal unit to non-critical elements. Appeal File, Tab 27, pp. 346, 352 of 426. The 2013 appraisal system required a 'Mission Results' critical element worth four appraisal units, Appeal File, Tab 27, pp. 175 and 186 of 426, with the remaining critical elements weighted two appraisal units, and non-critical elements weighted one appraisal unit.

Although having a result-oriented performance element was not new, I find requiring one critical element that had twice the weight of others, which necessarily impacted the manner in which an employee's overall rating is calculated, significantly altered an employee's performance standards and obligations. *See Adamsen v. Department of Agriculture*, 116 M.S.P.R. 331, ; 10 (2011) (expanding the class of employees covered by the appraisal system and permitting the agency to change the summary rating system from five tiers to three or four tiers were significant changes in the performance system warranting OPM approval). I, therefore, find OPM review of the change to have been necessary. Given the evidence does not reflect that such occurred, I find that the agency has failed to establish by substantial evidence it obtained OPM approval for the significant changes it made to its 2013 performance appraisal system under 5 U.S.C. § 4302. Accordingly, its removal action must be reversed.[5]

The appellant has failed to establish that his removal was retaliation for whistleblower activity.

The appellant alleges that the agency's decision to remove him is the result of retaliation for whistleblowing activity. The appellant alleges that he disclosed that his supervisor, Ricardo Goenaga, committed travel fraud and had an improper relationship with another employee. He further alleges that he disclosed that Goenaga had a conflict of interest with a certain company (Mars, Inc.) because Goenaga improperly allowed that company to install an internet server at the agency's Miami location. The appellant alleges that he reported these matters to the agency's Office of Inspector General (OIG) and many others. *See Prehearing Conference Summary;* Appeal File, Tab 81, p. 4 of 7.

In order to establish a prima facie case of retaliation for whistleblower activity based upon a disclosure, the appellant must prove by preponderant evidence that 1) he made a disclosure protected by 5 U.S.C. 2302(b)(8), and 2) the disclosure was a contributing factor in the personnel action being appeal. If the appellant meets this burden, the agency must prove by clear and convincing evidence that it would have taken the same action even absent the disclosure or other protected activity. *See Horton v. Department of the Navy*, 66 F.3d 279, 283-84 (Fed. Cir. 1995), *superseded by statute on other grounds*.

In order to establish that an appellant has made a protected whistleblower disclosure, an appellant need not prove that the matter he disclosed actually established one of the categories of wrongdoing under section 2302(b)(8)[6]; rather, he must show that the matter disclosed was one which a reasonable person in his position would believe evidenced any of the situations specified therein. *See Webb v. Department of the Interior*, 122 M.S.P.R. 248, ; 6 (2015).

In the instant matter, the appellant did not during his testimony describe on what he based his belief that Goenaga committed travel fraud or had an improper relationship with another employee. Neither has he pointed to, nor do I find, any document admitted into the record which describes the basis of the appellant's belief that his supervisor engaged in wrongdoing. The appellant did not state what information he had which caused him to conclude that Goenaga had an improper relationship with

another employee. Nor did he identify any law, rule, or regulation or other provision of § 2302(b)(8) the alleged improper relationship violated. Furthermore, he did not indicate what information he had available to him which caused him to conclude that Goenaga had committed travel fraud. Finally, he did not describe the information available to him which caused him to believe that Goenaga allowed Mars, Inc. to install an internet server and that Goenaga's alleged actions created a conflict of interest. It is, therefore, not possible for me to assess whether the appellant had a reasonable belief that the information he disclosed evidenced a violation of any of the provisions set forth in 5 U.S.C. § 2302(b)(8)(A)(i)-(ii). I, therefore, must find that the appellant has failed to establish that he made a protected disclosure. Accordingly, I find that he has failed to establish a prima facie case of retaliation based upon whistleblowing activity.

## DECISION

The agency's action is REVERSED.

## ORDER

I ORDER the agency to cancel the removal and to retroactively restore appellant effective August 10, 2018. This action must be accomplished no later than 20 calendar days after the date this initial decision becomes final.

I ORDER the agency to pay appellant by check or through electronic funds transfer for the appropriate amount of back pay, with interest and to adjust benefits with appropriate credits and deductions in accordance with the Office of Personnel Management's regulations no later than 60 calendar days after the date this initial decision becomes final. I ORDER the appellant to cooperate in good faith with the agency's efforts to compute the amount of back pay and benefits due and to provide all necessary information requested by the agency to help it comply.

If there is a dispute about the amount of back pay due, I ORDER the agency to pay appellant by check or through electronic funds transfer for the undisputed amount no later than 60 calendar days after the date this initial decision becomes final. Appellant may then file a petition for enforcement with this office to resolve the disputed amount.

I ORDER the agency to inform appellant in writing of all actions taken to comply with the Board's Order and the date on which it believes it has fully complied. If not notified, appellant must ask the agency about its efforts to comply before filing a petition for enforcement with this office.

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. I ORDER the agency to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## INTERIM RELIEF

If a petition for review is filed by either party, I ORDER the agency to provide interim relief to the appellant in accordance with 5 U.S.C. § 7701(b)(2)(A). The relief shall be effective as of the date of this decision and will remain in effect until the decision of the Board becomes final.

Any petition for review or cross petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order, either by providing the required interim relief or by satisfying the requirements of

5 U.S.C. § 7701(b)(2)(A)(ii) and (B). If the appellant challenges this certification, the Board will issue an order affording the agency the opportunity to submit evidence of its compliance. If an agency petition or cross petition for review does not include this certification, or if the agency does not provide evidence of compliance in response to the Board's order, the Board may dismiss the agency's petition or cross petition for review on that basis.

FOR THE BOARD _____
Pamela B. Jackson
Administrative Judge

## ENFORCEMENT

If, after the agency has informed you that it has fully complied with this decision, you believe that there has not been full compliance, you may ask the Board to enforce its decision by filing a petition for enforcement with this office, describing specifically the reasons why you believe there is noncompliance. Your petition must include the date and results of any communications regarding compliance, and a statement showing that a copy of the petition was either mailed or hand-delivered to the agency.

Any petition for enforcement must be filed no more than 30 days after the date of service of the agency's notice that it has complied with the decision. If you believe that your petition is filed late, you should include a statement and evidence showing good cause for the delay and a request for an extension of time for filing.

## NOTICE TO PARTIES CONCERNING SETTLEMENT

The date that this initial decision becomes final, which is set forth below, is the last day that the parties may file a settlement agreement, but the administrative judge may vacate the initial decision in order to accept such an agreement into the record after that date. *See* 5 C.F.R. § 1201.112(a)(4).

## NOTICE TO APPELLANT

This initial decision will become final on October 28, 2019, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the 'Notice of Appeal Rights' section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

```
The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419
```

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

## NOTICE OF LACK OF QUORUM

The Merit Systems Protection Board ordinarily is composed of three members, 5 U.S.C. § 1201, but currently there are no members in place. Because a majority vote of the Board is required to decide a case, *see* 5 C.F.R. § 1200.3(a), (e), the Board is unable to issue decisions on petitions for review filed with it at this time. See 5 U.S.C. § 1203. Thus, while parties may continue to file petitions for review during this period, no decisions will be issued until at least two members are appointed by the President and confirmed by the Senate. The lack of a quorum does not serve to extend the time limit for filing a petition or cross petition. Any party who files such a petition must comply with the time limits specified herein.

For alternative review options, please consult the section below titled 'Notice of Appeal Rights,' which sets forth other review options.

Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3

days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## ATTORNEY FEES

If no petition for review is filed, you may ask for the payment of attorney fees (plus costs, expert witness fees, and litigation expenses, where applicable) by filing a motion with this office as soon as possible, but no later than 60 calendar days after the date this initial decision becomes final. Any such motion must be prepared in accordance with the provisions of 5 C.F.R. Part 1201, Subpart H, and applicable case law.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the 'Notice to Appellant' section above. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general.** As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within 60 calendar days of the date this decision becomes final. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals for the Federal Circuit 717 Madison Place, N.W. Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's 'Guide for Pro Se Petitioners and Appellants,' which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination.** This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision-including a disposition of your discrimination claims-by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within 30 calendar days after this decision becomes final under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(2); see *Perry v. Merit Systems Protection Board*, 582 U.S. ____, 137 S. Ct. 1975 (2017). If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within 30 calendar days after this decision becomes final as explained above. 5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

**Office of Federal Operations Equal Employment Opportunity Commission P.O. Box 77960 Washington, D.C. 20013**

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations Equal Employment Opportunity
Commission 131 M Street, N.E. Suite 5SW12G Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012.** This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and you wish to challenge the Board's rulings on your whistleblower claims only, excluding all other issues, then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days of the date this decision becomes final under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

**U.S. Court of Appeals for the Federal Circuit 717 Madison Place, N.W. Washington, D.C. 20439**

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's 'Guide for Pro Se Petitioners and Appellants,' which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx

Footnotes

1   The agency's motion to strike the appellant's second post-hearing brief is hereby GRANTED, and the second brief has not been considered herein .
2   'Substantial evidence' is that degree of relevant evidence which a reasonable mind, considering the record as a whole, might accept as a conclusion that the matter asserted is true. 5 C.F.R. § 1201.4(p); See also Parker v. Defense Logistics Agency, 1 M.S.P.R. 505, 529 (1980).
3   Although this issue was identified in the prehearing conference, the agency presented no argument on the issue in its post-hearing brief. Appeal File, Tab 88.
4   An 'appraisal unit' is defined in the 2007 performance appraisal system as, '[t]he unit of measure used to establish the relative weighted value of critical and non-critical elements.' Appeal File, Tab 27, p. 337 of 426.
5   Given reversal is required on this basis, I find it unnecessary to reach the issues of whether the agency violated the appellant's first amendment rights, or whether the agency retaliated against the appellant for filing a grievance or ULP, as there is no further remedy I can grant the appellant based upon a finding in the appellant's favor on these additional issues. See McGahey v. Department of the Air Force, 6 M.S.P.R. 115, 117 (1981).
6   A protected disclosure involves any disclosure of information that he reasonably believes evidences any violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. See 5 U.S.C. § 2302(b)(8)(A)(i)-(ii).

2019 WL 4745179 (PERSONNET)

End of Document © 2020 Thomson Reuters. No claim to original U.S. Government Works.