UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

|  |  |  |
|---|---|---|
| JOEY D. GONZALEZ RAMOS,<br>          Plaintiff,<br>vs.<br><br>ADR VANTAGE, INC,<br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:18-cv-01690-APM<br>JURY TRIAL |

**RESPONSE TO DEFENDANT ADR VANTAGE, INC.'S RENEWED
MOTION FOR RULE 11 SANCTIONS**

Plaintiff Joey D. Gonzalez Ramos responds in opposition to Defendant ADR Vantage Inc.'s ("ADR Vantage") Renewed Motion for Rule 11 Sanctions [ECF No. 87] ("Renewed Motion for Sanctions").

**I. INTRODUCTION**

In its Renewed Motion for Sanctions ADR Vantage reargues matters it raised in its renewed motion for summary judgment [ECF No. 88] ("Renewed Motion for SJ"). The Renewed Motion for Sanctions also follows ADR Vantage's five-year pattern of making outlandish and baseless accusations against me.

Some of the accusations include that this case: (a) is motivated by my "misplaced ill-will towards the USDA and its agents…", *id*. at 6; (b) is devoid of good faith because I knew that the information in the Climate Assessment Report was true, *id*.; and that (c) I staged my termination from the U.S. Department of Agriculture ("USDA"), *id*. at 7. Before explaining to the Court why the Renewed Motion for Sanctions is procedurally defective and frivolous, I will respond to ADR Advantage's accusations.

**a. Whether the instant complaint is motivated by ill will towards the USDA and its agents**

According to the Renewed Motion for Sanctions:

> What the defense did not know at the time, but came to discover during the course of this litigation, is that Plaintiff's litigation was not only devoid of any merit, but motivated by misplaced ill-will toward the USDA and its agents, like Defendant ADR. Accordingly, sanctions are clearly warranted.

*Id.* at 5-6. The allegation that this litigation is motivated by ill will is clearly the result of a deep misunderstanding of the obligations, constitutional rights and protections conferred to employees and union members in the federal sector.

Federal employees are encouraged to report suspected criminal activity, Exhibit A at 1-3, and have the right to file complaints of discrimination against their Agency. *Id.* at 4. Union representatives are charged with filing unfair labor practices against Agencies when there is a violation of 5 USC §7116. All these are protected activities in which an employee or a union member may engage without fear of retaliation. *Id.* at 4-6. My litigation against the USDA has been nothing more than the exercise of those rights, both as an employee and a union representative.

ADR Vantage needs to look in its own direction or in the direction of its co-conspirator to find who acted with ill will. For example, in 2009, the incumbent Secretary admitted that the "USDA has an unfortunate and checkered history with regards to civil rights, with a multi-decade history of discrimination against our customers and our employees." Exhibit B. Secretary Vilsak may be referring to the Pigford[1] farmers, victims of systematic racial discrimination by the USDA, or to the supervisors of the USDA's Forest Service, who for decades sexually

---

[1] *Pigford v. Glickman*, 182 F.R.D. 341 (D.D.C. 1998)

2

assaulted and battered women with impunity and then retaliated against them when they reported these acts[2].

In these situations, the common strategy by those responsible and their enablers is to admit to no responsibility, blame someone else and attempt to *kill the messenger*, just like USDA's Archie Tucker ("Tucker") did when he conspired with ADR Vantage to defame me in retaliation for my protected activities.

The pictures attached in my response to the Renewed Motion for SJ [ECF No. 90-3], are only a few of the dozens that demonstrate the substandard working conditions employees at the Subtropical Horticultural Research Station in Miami, Florida ("SHRS Miami") have endured for decades despite the millions of dollars this location receives every year. These pictures confirm my motivations when I reported these matters.

Only someone, who cannot understand my duties as a federal employee and instead considers reporting these problems a personal afront that justifies retaliation, could say that I was motivated by ill will for exposing long-standing problems at SHRS Miami.

### b.  Whether I knew that the statements in the Climate Assessment are true

ADR Vantage offers the following *non sequitur* to justify its accusation that I did not act in good faith:

> Plaintiff knew, before filing the instant litigation, that the information contained with ADR's Climate Assessment Report was true. Plaintiff knew this because he spent years as a USDA employee embroiled in tumultuous cases, claims and complaints against fellow USDA employees.

Renewed Motion for Sanctions at 6.  What ADR Vantage missed is that no one believes that the Climate Assessment is true, not even its president Dianne Lipsey ("Lipsey"). She testified that they were not hired "to establish what was true." Exhibit C at 53. According to Tucker he cannot

---

[2] https://www.pbs.org/newshour/nation/they-reported-sexual-harassment-then-the-retaliation-began

"confirm or deny" that the Climate Assessment is true or false. Exhibit D at 196. Additionally, there is not a single line in the Renewed Motion for SJ dedicated to ADR Vantage's fourth affirmative defense that "Plaintiff's claim is barred by the truth." [ECF No. 24 at 8]. To the contrary, according to Defendant, "[n]owhere in the report does ADR state that the allegations, reports, criticisms etcetera of the Plaintiff are true." [EFC No. 40 at 5]. If ADR Vantage and its co-conspirator cannot confirm that the Climate Assessment is true, to attribute to me knowledge that what it says is true does not make any sense.

### c.    Whether I staged my termination from the USDA

According to the Renewed Motion for Sanctions, after an *unspecified* "lawsuit for retaliation" failed to materialize, I "embarked on an incendiary email campaign against the leadership at the USDA to assure [that I] would be fired". *Id*. at 7.

In making this argument ADR Vantage ignored how statistically low my chances of reversing my termination before the Merit System Protection Board ("MSPB") were. Indeed, according to a summary by the MSPB, from 2005 until 2015, 92% of the Agencies' adverse decisions before the MSPB were affirmed by the Federal Circuit and 80% of those were initially upheld by the MSPB. Exhibit E 1-2. Probabilistically, my chances of winning a case against the USDA were 1.6% (i.e., .08 probability of winning on appeal times 0.20 probability of winning before the MSPB). Being 11 years away from qualifying for full early retirement benefits, I had a lot to lose. Unless I am outlandishly foolish, the allegation that I somehow orchestrated my termination is simply absurd.

## II. PROCEDURAL BACKGROUND

1.   On March 13, 2020, via email ADR Vantage served on me a draft of a rule 11 motion for sanctions and requested that the instant lawsuit be dismissed with prejudice. Exhibit F at 1.

2.   On April 3, 2020, ADR Vantage filed the Rule 11 motion for sanctions with the Court [ECF No. 62] ("Motion for Sanctions").

3.   On December 7, 2020, the Court denied without prejudice ADR Vantage's Motion for Summary Judgment [ECF No. 55] ("Motion for SJ") and the Motion for Sanctions. [ECF No. 78].

4.   On February 22, 2021, ADR Vantage simultaneously filed the Renewed Motion for Sanctions and the Renewed Motion for SJ.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 11 provides in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information. Fed. R. Civ. P. 11.

### IV. ARGUMENT

The Renewed Motion for Sanctions should be denied because: (1) it failed to comply with the *safe harbor* provision of Rule 11; and (2) it failed the objectivity test required by Rule 11.

## 1.   The Renewed Motion For Sanctions Failed To Comply With The Safe Harbor Requirement

"Rule 11 of the Federal Rules of Civil Procedure requires the moving party to follow a two-step process: first, serve the motion on the offending party for a designated period (at least 21 days); and then file the motion with the court." *McKenzie v. Kurt Berggren, P.C.*, 212 F.R.D. 512, 513 (E.D. Mich. 2003). "A motion that fails to comply with this safe harbor provision must be denied." *Adams v. N.Y. State Educ. Dep't*, 2010 U.S. Dist. LEXIS 129510, at *26 (S.D.N.Y. Dec. 8, 2010). *See e.g., Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 159 (2d Cir. 2010):

> That second amended complaint was filed after dismissal of a first amended complaint without an award of Rule 11 sanctions and subject to a grant of leave to replead. In these circumstances, the filing of the second amended complaint reset the clock for seeking sanctions pursuant to Rule 11(c)(2), so that [the plaintiff] was entitled to notice of any defect in the filing and a safe harbor of twenty-one days to correct or withdraw the pleading before a motion for sanctions based on that pleading could be presented to the district court.

On March 13, 2020, ADR Vantage served on me a draft of the Motion for Sanctions. Exhibit F at 1. It later filed the same motion with the Court on April 3, 2020 [ECF No. 62]. The Court denied the Motion for Sanctions without prejudice on December 7, 2020, [ECF No. 78]. On February 22, 2021, ADR filed the Renewed Motion for Sanctions without complying with the safe harbor provision. Said motion also contained a new accusation that alleges that I "materially mislead" the Court by not disclosing the date I received an unredacted copy of the Climate Assessment in a report of investigation ("ROI").

Since the Court had already denied the Motion for Sanctions and the Renewed Motion for Sanctions contained a new allegation, ADR Vantage should have provided 21 days as required by the safe harbor prior to filing the Renewed Motion for Sanctions with the Court. Accordingly, said motion should be denied.

## 2. __The Motion for Sanctions Fails The Objectivity Test__

"When making serious charges of unprofessional and criminal conduct against an individual in pleadings filed with the Court, the certitude of suspicion alone is not enough. Exasperation and frustration may serve as explanations, but not acceptable excuses. Rule 11 demands objectively reasonable conduct, including a reasonable inquiry into the facts." *Nault's Auto. Sales, Inc. v. Am. Honda Motor Co., Acura Auto. Div.*, 148 F.R.D. 25, 37 (D.N.H. 1993); *see also Scruggs v. Getinge USA, Inc.*, 258 F.R.D. 177, 180 (D.D.C. 2009) (The test [for sanctions] under Rule 11 is an objective one: that is, whether a reasonable inquiry would have revealed that there was no basis in law or fact for the asserted claim.).

In its obstinate quest to convince this Court of something that only exists in its imagination, ADR Vantage claims that during his deposition Tucker testified that he provided me with an unredacted version of the Climate Assessment. The Renewed Motion for Sanctions implies that as a result of Tucker's testimony, I sent ADR Vantage a document conceding that I received "the unredacted [copy of the Climate Assessment] on April 25, 2017". Renewed Motion for Sanctions at 8.

The record confirms that ADR Vantage took this matter out of context to fit its narrative. During Tucker's deposition, John Murphy III, ADR Vantage's counsel, assumed or apparently wanted Tucker to testify that he gave me an unredacted copy of the Climate Assessment. Tucker instead testified that he gave a copy of the Climate Assessment to an EEO investigator for inclusion into the ROI:

> MR. MURPHY: Mr. Tucker, do you know what the date is when you attached the unredacted report **and turned it over to Mr. Gonzalez?**
>
> THE WITNESS: **I didn't turn it over to him.** It was an affidavit I did in one of his EEO cases, and if I

7

```
recall correctly I think the date would have been
around March of 2017, I believe.
...

[by Gonzalez Ramos] Q. Okay, let me follow up with that,
because I actually don't know what documents you were
talking about, Mr. Tucker. What is it that you attached -
- or –

 A. It was the -- it was one of your EEO complaints, and
when the investigator was interviewing me the issue came
up about the climate assessment and what have you, and
they asked for a copy of it...
```

Exhibit D at 133-134 (emphasis added). Tucker clarified with his testimony that he did not give

me an unredacted copy of the Climate Assessment. Also, the mailing confirmation showing the

date I received the ROI was provided by the USDA, not by me as ADR Vantage tried to imply.

*See* [ECF No. 87-1 at 7].  It follows that there was nothing for me to concede because I was

never asked for the date that I received the ROI and because I did not have confirmation of when

I received it.

ADR Vantage and its counsel "are of course free to believe whatever they choose to

believe. They are not free to indiscriminately bludgeon the professional reputations of opposing

counsel out of frustration, or in angry overreaction, or on mere suspicion alone." *Nault's Auto.*

*Sales, Inc. v. Am. Honda Motor Co., Acura Auto. Div.*, 148 F.R.D. at 36.

### a. Bad Faith

Additionally, ADR Vantage takes umbrage with my statement that I wanted to "redress,

reverse and punish" the Defendant for the damage its defamatory publication has done to me and

to "publicly expose its practices to labor organizations and its current or potential clients."

Renewed Motion for Sanctions at 7. In Defendant's view, this statement "exhibits actual bad

faith on the part of the Plaintiff, in addition to a lack of substantial justification". *Id*.

8

"Typically, there are three categories of conduct that constitute bad faith: (1) bad faith occurring during the course of the litigation; (2) bad faith in bringing an action or in causing an action to be brought; and (3) bad faith in the acts giving rise to the substantive claim. The second variety of bad faith is demonstrated by findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *First Bank v. Hartford Underwriters Ins. Co.*, 115 F. Supp. 2d 898, 907 (S.D. Ohio 2000), (internal quotations omitted). "[T]he finding of bad faith must be supported by clear and convincing evidence". *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 337 U.S. App. D.C. 394, 187 F.3d 655, 660 (1999), (internal quotations omitted).

The statement in question only appeared in the Joint Meet and Confer Report dated February 6, 2019 [ECF No. 48 at 7]. There is no explanation why it took ADR Vantage two years to raise the issue. Not only should the Court deem this allegation untimely for the purpose of a Rule 11 motion, ADR Vantage has failed to demonstrate how this statement "exhibits" bad faith. That is because it does not.

First, ADR Vantage should have known that because of this litigation, its business practices have already been publicly exposed and will continue to be exposed to everyone through the Court's dockets. Second, there is nothing inappropriate in asking for punitive damages. *See Grossman v. Goemans*, 631 F. Supp. 972, 974 (D.D.C. 1986) ("In libel cases, presumed and punitive damages are permitted when it is shown that the defendant acted with knowledge of falsity or reckless disregard for the truth."); *see also Davis v. Schuchat*, 166 U.S. App. D.C. 351, 510 F.2d 731, 737 (1975) (recognizing that the purpose of punitive damages is the protection of the libeled individual's reputation and the protection against like abuse of all other persons similarly situated).

Third, as in any other lawsuit, the plaintiff's purpose is normally to redress and reverse the actions of the defendant. That is precisely what I am attempting to do in this case. Finally, though I have not spoken to the press or otherwise publicize the instant Complaint, I suggest that the opinion of the Second District Court of Appeals in *Sussman by & Through Guilden v. Bank of Isr.*, 56 F.3d 450 (2d Cir. 1995) is particularly on point:

> It is not the role of Rule 11 to safeguard a defendant from public criticism that may result from the assertion of nonfrivolous claims. Further, unless such measures are needed to protect the integrity of the judicial system or a criminal defendant's right to a fair trial, a court's steps to deter attorneys from, or to punish them for, speaking to the press have serious First Amendment implications. Mere warnings by a party of its intention to assert nonfrivolous claims, with predictions of those claims' likely public reception, are not improper.

*Id*. 459. Based on the foregoing, ADR Vantage has failed to show how this statement constitute bad faith, much less by clear and convincing evidence.

As to the claim of the instant Complaint's "lack of substantial justification", from the onset of this litigation this Court asserted that there was a colorable cause of action for defamation. *See* order denying ADR Vantage's motion to dismiss [ECF No. 13]: "a defamation claim, as here, which does *not* involve publication through the media, begins to accrue when the plaintiff "first saw or became aware of the contents of the [publication]"", *id*. at 1; "the alleged defamatory statements are plausibly "of and concerning" Plaintiff" *id*. at 2; "[t]he allegation that Defendant published the report to the union, may constitute "excessive publication" that defeats the privilege" *id*. at 3; "Plaintiff claims that Defendant should have known that the sources it relied on in the report were biased against him thereby suggesting possible bad faith", *id*; "the report contains at least one statement that is arguably libel per se in that it accuses Plaintiff of possible criminal misconduct (alleging improper access to "data, email and telephones")", *id*. at 4.

ADR Vantage's defense has been incapable of undermining any of these findings. To the contrary, the additional evidence in this case has made the case against Defendant even stronger. In sum, in the Motion for Sanctions ADR Vantage failed to reconcile its imaginative narrative with the record. Far from demonstrating that it conducted a reasonable inquiry into the allegations supporting its request for sanction, it has made clear that these allegations are fueled by a misplaced disdain and the uncontrollable urge to continue to defame me, not by objectivity.

### b. Award of $35,000

According to the Motion for Sanctions "this case would have been dismissed back in 2019 and Defendant's damages greatly mitigated" if I would have *confessed* to having the unredacted copy of the Climate Assessment that was inside the ROI. Not so. ADR Vantage was on notice in 2018 from the instant Complaint that I found an unredacted copy of the Climate Assessment in the ROI but it never asked anything about it until January 2021. Also, as early as April 2019, at the request of ADR Vantage I made an offer of settlement which Lipsey admits she did not receive:

> Q. How many settlement offers have you received from me in this case?
>
> A. To my knowledge, none.
>
> Q. So, your attorney didn't bring you an offer of $[redacted]?
>
> MR. MURPHY: Objection. That would be attorney-client communications.
>
> MR. GONZALEZ RAMOS: This is a fact, Mr. Murphy.
>
> MR. MURPHY: It doesn't matter. What I told her or didn't tell her is attorney-client communications. Don't answer that question.

Lipsey's testimony undermines ADR Vantage's defense that it tried to mitigate its damages. If the defense's intention was to end this case as early as 2019, it could have accomplished so through settlement or by dispositive motion. ADR Vantage's counsel should have discharged his ethical duty to convey my settlement offer to Defendant and possibly engage in settlement negotiations. Alternatively, counsel could have asked me for the evidence he believed would dispose of this litigation, *e.g.*, the date I received the ROI.

All things considered, ADR Vantage's counsel did the opposite: he did not take the offer of settlement to his client, engaged in a series of personal attacks, threats and accusations, and waited two years to request the information that he believed will dispose of this litigation. When he finally did request the evidence, he did so in the middle of the deposition of a witness he vehemently opposed that I deposed and in the eve of filing a renewed motion for summary judgment.

"Although the "American Rule" prohibits the shifting of attorney's fees in most cases, an exception allows federal courts to exercise their inherent power to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as when the party practices a fraud upon the court or delays or disrupts the litigation or hampers a court order's enforcement." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 35, 111 S. Ct. 2123, 2128 (1991). "[Sanctions under Rule 11 do not] shift the entire cost of litigation; they shift only the cost of a discrete event". *Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 553, 111 S. Ct. 922, 934 (1991).

ADR Vantage's subjective sanctions argument does not make the case that my conduct constitutes bad faith. Additionally, the Motion for Sanctions failed to explain how my "prolific"

litigation against a *third party*, the USDA, justifies an award of $35,000 to ADR Vantage for *its* costs and attorney's fees. Accordingly, the Motion for Sanction should be denied.

## V. CONCLUSION

ADR Vantage's cavalier use of Rule 11 to obtain a windfall of $35,000 through baseless allegations is improper and is itself sanctionable. The Court should, sua sponte, sanction ADR Vantage and its counsel for making me waste the time I spent defending their vindictive and frivolous motion.

Submitted on April 1, 2021 by:

/s/ <u>Joey D. Gonzalez</u>
Joey D. Gonzalez Ramos
Florida Bar No. 127554
P.O. Box 145073
Coral Gables, FL 33114-5073
E-service: joey@joeygonzalezlaw.com
***Pro Se Plaintiff***