**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JOEY D. GONZALEZ RAMOS,** | : | |
| **Plaintiff** | : | |
| **v.** | : | **Case No.: 18-cv-01690 (APM)** |
| **ADR VANTAGE, INC.,** | : | **Assigned To: Amit P. Mehta** |
| **Defendant.** | : | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant, ADR VANTAGE, INC. (hereinafter "ADR"), by and through its counsel, John J. Murphy, Esq., and Walker, Murphy & Nelson, LLP, and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby files this Reply to Plaintiff's Opposition To Renewed Motion for Summary Judgment.

## INTRODUCTION

As this Court is no doubt familiar with this case, a lengthy introduction is unnecessary. Plaintiff's latest pleading readily demonstrates the absence of any material factual dispute and the law is clear such that ADR is entitled to summary judgment as a matter of law. With the filing of this Reply and, simultaneously, a Reply to Plaintiff's Opposition to Motion for Sanctions, briefing on the legal issues before this Court is complete; the time has come to end Plaintiff's baseless legal crusade and award Rule 11 sanctions against him.

## LEGAL ARGUMENT

As set forth more fully *infra,* application of the relevant law to the undisputed facts warrants summary judgment in ADR's favor as a matter of law.

### 1. *There Are No Genuine Disputed Facts To Prevent Summary Judgment.*

Federal Rule 55(c) expressly provides that in order to create a factual dispute, an opponent must put forward evidence in the form of an Affidavit or some other demonstrable evidence to create a genuine dispute. Plaintiff's Opposition includes a "Response" to ADR's Statement of Material Facts Not in Dispute which admits some facts and purportedly "denies" others. *See, ECF 90-1.* The undisputed facts "denied" by Plaintiff are not, however, accompanied by any admissible evidence to create an actual disputed material fact. *Id.* To the extent a handful of exhibits are cited, they still do not raise any genuine factual dispute. For example, Plaintiff quibbles with the semantics of whether Dr. Meerow filed a "complaint" against him or "sent a letter" complaining about him. *See, e.g., Plaintiff's Denial of Request No. 5 at ECF 90-1, p. 2.* Whether Dr. Meerow filed a "complaint" or "sent a letter" complaining about the Plaintiff is not a *material* factual dispute – Dr. Meerow complained about the Plaintiff.

The relevance of Plaintiff's exhibits attached to his Opposition are also difficult to comprehend. For example, Plaintiff cites to "Exhibit L" to support the contention referenced above that Dr. Meerow did not file a Complaint against the Plaintiff but, instead, "sent a letter"; however, a review of Exhibit L appears to confirm a final agency decision that Plaintiff's conduct amounted to a *prima facia* case of harassment which supports Defendant's asserted undisputed material fact. *See, ECF 90-14.* How Exhibit L helps Plaintiff's case or otherwise creates some factual dispute to defeat summary judgment is an enigma. Plaintiff's inclusion of "Exhibit C",

which appears to be 69 pages related to his EEOC complaint against the USDA, "Exhibit D", which appears to be a random collection of emails, and "Exhibit E", which appears to be another one of Plaintiff's complaints against the USDA, are additional examples of Plaintiff's confounding use of exhibits which do nothing to create a material factual dispute that would preclude summary judgment (assuming arguendo these documents would even be admissible).

In sum, Plaintiff's Opposition fails to include admissible evidence to create any material factual dispute which would preclude the relief being sought by ADR. Defendant is, therefore, entitled to summary judgment as a matter of law.

### 2. ***District Of Columbia Law Controls And Plaintiff's Defamation Claim Is Barred.***

Plaintiff claims for the first time during the course of this tortured litigation that Florida's two year statute of limitations controls in this case. *ECF 90 at p. 4.* As this Court is no doubt aware, "[u]nlike jurisdictional issues, courts need not address choice of law questions *sua sponte*." *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C.Cir.1991). Furthermore, a party may waive a choice of law argument. *See, CSX Transp., Inc. v. Commercial Union Ins. Co.*, 82 F.3d 478, 482–83 (D.C.Cir.1996). In this case, Plaintiff relies upon the District's law for all legal theories including the applicable elements for his defamation claim. *See, e.g., ECF 90* at p. 23. Assuming arguendo Plaintiff has not waived his choice of law argument by relying upon the District's substantive law and/or waiting until this late juncture to raise a choice of law question, the claim that Florida's procedural two-year statute of limitations is controlling in the case at bar lacks any legal merit.

Case law in the District of Columbia is clear that rules like the statutes of limitations are procedural in nature and governed by the law of the filing forum. *See Reeves v. Eli Lilly and Co.*,

368 F.Supp.2d 11, 25 (D.D.C.2005) (*citing Kaplan v. Manhattan Life Ins. Co.*, 109 F.2d 463, 465–66 (D.C.Cir.1939); *May Dep't Stores v. Devercelli*, 314 A.2d 767, 773 (D.C.1973); and *Hodge v. S. Ry. Co.*, 415 A.2d 543 (D.C.1980)). Further, federal courts sitting in diversity must apply the conflicts of law rules of the jurisdiction in which they sit. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, to determine what law to apply, this Court must apply the District of Columbia's choice of law analysis. *YWCA v. Allstate Ins. Co.*, 275 F.3d 1145, 1150 (D.C.Cir.2002). Clearly, the District of Columbia's procedural and substantive laws apply, not Florida law as Plaintiff would now have this Court believe.

The death knell for Plaintiff's defamation case is evidenced at page 6 of his Opposition, wherein he concedes that "on April 25, 2017, Plaintiff received an ROI … [that included] an unredacted copy of the Climate Assessment [report] … at page 324." *ECF 90 at p. 6.* "Inquiry notice extends to 'that [knowledge] which a plaintiff would have possessed after due investigation" as measured by an objective standard of reasonable diligence under the circumstances. *BDO Seidman, LLP v. Morgan, Lewis & Bockius LLP*, 89 A.3d 492, 500 (D.C. 2014) (quoting *Diamond,* 680 A.2d at 372); *Doe*, 814 A.2d at 958 ("[T]he standards by which the discovery rule is applied are objective."). "The critical question ... is whether the plaintiff exercised reasonable diligence under the circumstances in acting or failing to act on whatever information was available to him." *Ray v. Queen*, 747 A.2d 1137, 1141-42 (D.C. 2000). The analysis focuses "on the plaintiff's diligence in discovering the cause of action, rather than the defendant's misconduct ... given the purpose of statutes of limitation to protect defendants from stale claims." *BDO Seidman*, 89 A.3d at 501 (quotation marks and alteration omitted).

Plaintiff alleges he was aware of a "conspiracy" against him dating back to at least 2015. *ECF 90 at pp. 17-20.* He alleges that on May 18, 2017, "Brennan made disparaging comments

about Plaintiff's job performance … [and] she based her comments in the findings of the Climate Assessment." *ECF 1 at p. 5, ¶ 31.* The comments were sufficient enough to put Plaintiff on notice to request a copy of the Climate Assessment Report via a FOIA request at that time. *Id. at ¶ 32.* Then, on July 14, 2017, Plaintiff received a "heavily redacted" version of said report in response to his FOIA request. *Id. at ¶ 33.* More than a year later, on July 18, 2018, Plaintiff filed his defamation case, claiming he was "unaware" until much later that he had within his possession the unredacted report back in April 2017. That contention is untenable given that receipt of the redacted version of the report along with the surrounding facts at that time was more than sufficient to put Plaintiff on inquiry notice to start the statute of limitations.

In addition, now that it has been conceded Plaintiff had the unredacted report in his possession before he received the redacted version, under an objective standard any licensed attorney such as the Plaintiff is expected to read that which is provided to him in connection with a legal claim he is asserting. Feigning ignorance is not sufficient under an objective standard and, frankly, given Plaintiff's dodged litigious efforts on so many fronts it is preposterous to think under a subjective standard that he did not review in detail records produced by an opponent in one of his ongoing legal feuds. For good measure, Exhibit C to Plaintiff's own Opposition shows that the unredacted report was separately tabbed, so even a cursory review by Plaintiff of flipping through the first tabbed page of the document production would have revealed the report he was zealously seeking to obtain. *See, ECF 90-5 at p. 2.* Accordingly, under controlling District law Plaintiff's defamation claim is barred by the statute of limitations.[1]

---

[1] Even if not barred by limitations, Plaintiff's defamation claim must fail for the reasons previously set forth in Defendant's renewed Motion for Summary Judgment, which ADR need not reargue given Plaintiff's failure to set forth any new case law to refute Defendant's position.

**3. *The District Does Not Recognize "Civil Conspiracy" As A Separate Tort.***

Citing *Jackson v. Donovan*, 856 F.Supp.2d 147 (D.D.C. 2012), as far back as February 4, 2019, Defendant's renewed summary judgment motion expressly argues again that under the law of the District of Columbia, an alleged civil conspiracy does not give rise to a separate cause of action. *See, ECF 22 at p. 3.* It is confounding how Plaintiff somehow construes this as the Defendant "effectively abandoned its attack on Count II" but, nevertheless, it is noteworthy that while over the next nine (9) pages he cites a host of cases from the District of Columbia, he never once addresses *Jackson, supra,* which is controlling. *See, ECF 90 at pp. 14-23.*

Plaintiff does, however, cite to *Wiggins v. Dist. Cablevision,* 853 F. Supp. 484 (D.D.C. 1994) in his Opposition and quotes that case as stating "a charge of civil conspiracy is not independently actionable." *ECF 90 at 15.* In fact, the *Wiggins* case explains:

> It is well established that "there is no recognized independent tort action for civil conspiracy in the District of Columbia," *Waldon v. Covington*, 415 A.2d 1070, 1074 n. 14 (D.C.1980); however, District of Columbia law "acknowledges the concept of civil conspiracy." *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C.Cir.1983). "Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather it is a means for establishing vicarious liability for the underlying tort." Id.

Plaintiff's theory is that ADR "conspired" to "defame" him but, as this Court is no doubt aware, Plaintiff has also sued Defendant, albeit untimely, for defamation itself. Assuming arguendo Plaintiff's defamation claim was not barred for the myriad of reasons previously raised, ADR could not be both primarily liable to Plaintiff for defamation and vicariously liable for its own actions. Thus, under clear and consistent case law in the District, summary judgment must be entered on Plaintiff's Count II for civil conspiracy regardless of how the other Counts in Plaintiff's Complaint are resolved by this Court.

**4. *Plaintiff's Lack of Damages Entitles ADR to Summary Judgment.***

Plaintiff cites to *Kalantar v. Lufthansa German Airlines*, 402 F.Supp.2d 130 (D.D.C. 2005) for the proposition that damages are "presumed." *ECF 90 at p. 27.* The remainder of Plaintiff's Opposition is conspicuously devoid of a damages discussion, including the section on intentional infliction of emotional distress which requires specific damages to give rise to such a claim. *Id. at pp. 42-43.*

In addition to the fact that *Kalantar* applied Virginia law which obviously does not apply in this matter, Plaintiff misconstrues that case. The *Kalantar* Court explained that under Virginia law, "[w]hen an alleged defamation is not actionable per se, the plaintiff must prove 'special harm,' such as actual pecuniary loss, to obtain compensatory damages. *Kalantar, 402 F.Supp.2d at 148 (citing Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1558 n. 15 (4th Cir.1994). That Court went on to make clear that "[g]oing forward to trial on his defamation claim, Kalantar will bear this evidentiary burden." *Id.*

The undisputed facts lay bare Plaintiff's vindictive motives as well as his complete and utter failure to generate a triable issue on damages. It is undisputed that the Plaintiff is on paid administrative leave funded by American taxpayers while he simultaneously pursues his personal lawsuits and operates his own separate law practice. It is undisputed that the Plaintiff has no medical expert to support any claim for mental or medical injuries. It is undisputed that the Plaintiff has not itemized any damages during the course of discovery, which closed long ago. It is axiomatic that damages are an element of each of his claims and, having failed to set forth any admissible evidence of damages, or created any material factual dispute as to same, Defendant is

entitled to summary judgment as a matter of law on each of Plaintiff's counts due to the complete and utter lack of compensatory damages.

### 5. ***Defendant ADR's Unchallenged Derivative Sovereign Immunity Defense***

As this Court will no doubt recall, Plaintiff narrowly avoided summary judgment last year by claiming he had to depose Archie Tucker to determine whether ADR complied with the terms of its contract when preparing its Climate Assessment Report. *ECF 78 at p. 5.* Indeed, this Court found that "[g]iven the centrality of Tucker's existing declarations to dispositive issues in this litigation, the need for Tucker's deposition testimony [wa]s "self-evident." *Id.*

At deposition, Plaintiff asked Mr. Tucker about his declarations submitted to this Court and, specifically, about whether ADR complied with its contractual allegations. Mr. Tucker's response, quoted verbatim, was as follows:

> "That meant that as far as we were concerned [ADR] was complying with all of the things that had been agreed to that they do for ARS as part of this contract." *See, Exhibit 11 attached to Defendant's Renewed Motion for Summary Judgment at deposition transcript page 191.*

Nonplused by Mr. Tucker's affirmation of his declarations, and unable to cite any controlling law to otherwise refute ADR's derivative sovereign immunity defense, Plaintiff now argues that "Tucker could not determine compliance with government contracts." *ECF 90 at p. 28.* This latest pivot / contention by the Plaintiff is comical.

More important for this Court's consideration is the fact that Plaintiff has not produced one scintilla of admissible evidence from *any* USDA official that ADR materially breached its

contract.[2] Counsel for the USDA, which has been involved in this case to deal with the plethora of discovery disputes fabricated by Plaintiff, has submitted to this Court declarations on behalf of the USDA that ADR *has* complied with its contractual obligations. *See, ECF 30-2.* Mr. Tucker has been deposed to confirm same. Plaintiff's failure to produce testimony from any USDA official claiming ADR failed to comply with its contractual obligations to the United States leads to the inescapable conclusion that this Defendant is entitled to derivative sovereign immunity as a matter of law.

## **CONCLUSION**

Plaintiff's Opposition to ADR's renewed summary judgment motion confirms what was obvious last year (and, at least to undersigned, from the outset of this litigation); ADR is entitled to summary judgment as a matter of law. This Court has gone above and beyond to afford Plaintiff every opportunity imaginable to make his case and he cannot – because there is no case to be made. The simple truth is that ADR was never part of some grand conspiracy to defame the Plaintiff and, conspiracy theories aside, Plaintiff is better off today than he was back in 2017; maintaining his paid administrative leave through a global pandemic all while operating his own law practice and relentlessly wasting judicial resources with a rash of claims in his pro se capacity. At this point, judgment against the Plaintiff and sanctions are the only inevitable options left for this Court.

---

2 Assuming arguendo Plaintiff (as opposed to the USDA) could claim breach of contract and he had evidence of same (which he does not), the assertions of minor data preservation issues and the like would not amount to a *material* breach of contract between ADR and the USDA. *See, e.g., George Washington University v. Weintraub,* 458 A.2d 43 (D.C. 1983) (*explaining material v. non-material breach of contract).* This is self-evident by the fact that the USDA has made no such breach of contract claim.

Respectfully submitted,

WALKER, MURPHY & NELSON, LLP

/S/ John J. Murphy

John Murphy, Esq. (Bar #14407)
9210 Corporate Boulevard, Suite 320
Rockville, Maryland 20850
(301)-519-9150 (Office)
(301) 519-9152 (Fax)
jmurphy@walkermurphy.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Motion For Summary Judgment was electronically mailed and/or mailed on the _5th_ day of April 2021 to:

Joey D. Gonzalez Ramos, Esq.
P.O. Box 145073
Coral Gables, FL 33114-5073
E-service: joey.gonzalez@jdg-lawoffice.com
***Pro Se Plaintiff***

/S/ John J. Murphy

John J. Murphy, Esq.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JOEY D. GONZALEZ RAMOS,** | : | |
| **Plaintiff** | : | |
| **v.** | : | **Case No.: 18-cv-01690 (APM)** |
| **ADR VANTAGE, INC.,** | : | **Assigned To: Amit P. Mehta** |
| **Defendant.** | : | |

**ORDER**

UPON CONSIDERATION of Defendant, ADR VANTAGE, INC.'s Motion for Summary Judgment, and any Opposition thereto, it is hereby this _______ day of ______________, 2021, ORDERED:

1. That Defendant ADR's Motion for Summary Judgment be and hereby is GRANTED.

______________________________

JUDGE Amit P. Mehta